```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                      NORTHERN DIVISION

 3      UNITED STATES OF AMERICA,)
             Plaintiff ,        )
 4                              )
             vs.                )   CASE NUMBER: GLR 20-0283
 5                              )
        GARY ROCKY JONES,       )
 6           Defendant.         )
        _____)
 7
                     TRANSCRIPT OF PROCEEDINGS
 8            PRETRIAL CONFERENCE/MOTIONS HEARING
          BEFORE THE HONORABLE GEORGE LEVI RUSSELL, III
 9                 UNITED STATES DISTRICT JUDGE
                   TUESDAY, SEPTEMBER 5, 2023
10                    BALTIMORE, MARYLAND
            `              Courtroom 7A
11
                    A P P E A R A N C E S
12
        FOR THE PLAINTIFF:
13           BY: PAUL BUDLOW, ESQUIRE
                 COLLEEN McGUINN, ESQUIRE
14               OFFICE OF THE UNITED STATES ATTORNEY
                 36 S. Charles Street, 4th Floor
15               Baltimore, Maryland  21201

16      FOR THE DEFENDANT:
             BY: COURTNEY FRANCIK, ESQUIRE
17           BY: KATHERINE NEWBERGER, ESQUIRE
                 OFFICE OF THE FEDERAL PUBLIC DEFENDER
18               100 S. Charles Street, Tower II, 9th Floor
                 Baltimore, Maryland  21201
19

20      Also Present:

21      Special Agent Rachel Corn, FBI

22

23      _____

24           ***Proceedings Recorded by Mechanical Stenography***
              Transcript Produced by Computer-Aided Transcription
25
```

```
 1                    P R O C E E D I N G S

 2       (11:10 a.m.)

 3              MR. BUDLOW:  Good morning, Your Honor.  This is

 4       United States of America v. Gary Rocky Jones. Criminal Number

 5       GLR 20-0283. The matter is scheduled before Your Honor this

 6       morning for a pretrial conference. I'm Paul Budlow on behalf

 7       of the Government.  Joining me at counsel table is Assistant

 8       U.S. Attorney Colleen McGuinn, and just behind me is FBI

 9       Special Agent Rachel Corn.

10              THE COURT:  Of course.  Good morning.  Good morning.

11       Counsel?

12              MS. FRANCIK:  Good morning, Your Honor.  Courtney

13       Francik.  I'm here with Katherine Tang Newberger.  We're here

14       on behalf of Gary Rocky Jones, who is standing to my left.

15              THE COURT:  Mr. Jones, good morning to you, sir.

16              THE DEFENDANT:  Good morning.

17              THE COURT:  All right, you can go ahead and have a

18       seat.

19          All right, we are here for the purposes of a pretrial

20       conference and motions hearing. I note at the outset that the

21       motions aren't -- the latest set of motions aren't fully

22       briefed and I note that I gave -- and I'll certainly afford

23       Ms. Francik or Ms. Newberger the opportunity to be able to

24       brief the latest filing in the case by the Government. Am I

25       mistaken?  There was a filing addendum to a motion to admit
```

1    evidence, ECF No. 88 that's dated August 31 of 2023.

2         **MR. BUDLOW:**  Your Honor, right. I probably could

3    have titled that differently, but it's also a reply to the

4    defendant's response to the Government's motion to admit under

5    414.

6         **THE COURT:**  Okay.

7         **MR. BUDLOW:**  It may not have linked in Pacer either.

8         **THE COURT:**  Oh.  And I take it, Ms. Francik, would

9    you have wanted the opportunity to file a written response to

10   whatever this was?

11        **MS. FRANCIK:**  So if I could give a little bit more

12   background, Your Honor. The Government filed its initial

13   motion in limine I think in the fall of 2022.

14        **THE COURT:** Right. Is that the motion to admit

15   evidence pursuant to 414 and 404(b)?

16        **MS. FRANCIK:**  That's correct, Your Honor.

17        **THE COURT:**  Right.

18        **MS. FRANCIK:**  And notwithstanding that no supplement

19   had been filed, we did title and consider our filing at ECF I

20   think 79 to be a response to the Government's motion. We have

21   I think as I wrote to the Court in our letter last Friday, had

22   substantial and meaningful conversations with the Government

23   about the evidence that it specifically intends to introduce

24   at trial.  And so at this point, I don't think there's

25   anything that we need to brief. We are prepared to resolve any

 1    outstanding issues here this morning and any issues that may

 2    arise during the course of the trial we could resolve those

 3    objections.

 4              **THE COURT:**  Well, to be perfectly candid, I did not

 5    have an opportunity to review this latest filing. So it came

 6    in on the 31st. I wasn't here on the 1st and I picked it up

 7    this morning. So I'm going to need some time to digest what

 8    has been submitted.

 9        I take it it's not something that I have to address the

10    morning of trial, but obviously it's important for the

11    purposes of the Government's preparation of its evidence,

12    whether or not it's through their case in chief or through

13    rebuttal, that I issue those rulings fairly quickly so that

14    they can marshal the evidence together.

15        I'm wondering whether or not within a few days of the

16    trial I can take a timeout to be able to discuss this a little

17    bit further, because I know that we're set for jury selection

18    on Monday and we've got this time designated there and I don't

19    want to just haphazardly just say "All right, well tell me

20    what's in the brief."  So I'm wondering -- and I guess it's --

21    Mr. Budlow, is the proponent of the evidence whether or not a

22    delayed ruling on that particular motion based upon the most

23    recent submission would be something that would not hinder the

24    Government's preparedness moving forward?

25              **MR. BUDLOW:**  Your Honor, I guess my answer is

1     hybrid.  I think as to some of the matters that are in there

2     that might be the case. For example, the Facebook chats that

3     the defendant has objected to, that wouldn't need to be

4     mentioned in opening statement or wouldn't necessarily come

5     into evidence in the first day or two. That would be fine.

6          However, the defense has also moved to exclude prior

7     convictions of the defendant that the Government believes are

8     admissible under Rule 414 which would be addressed in some

9     form early on in the case, in part because one of the

10    Government's earlier witnesses is going to be a Baltimore City

11    Police Department detective that works at the Sex Offender

12    Registry unit.  And his testimony is going to be relevant to

13    the case for other reasons, including identifying information

14    that the defendant had provided to him such as phone numbers

15    and addresses.  While and implicit in his testimony would be

16    the fact that the defendant is on the Sex Offender Registry

17    and I've discussed this with the defense.  It would seem that

18    the context of that in light of the defense's motion to

19    preclude any reference to his prior convictions would put us

20    in a situation where at least by that point we would need to

21    know.

22         So that's maybe day one or two of testimony. And because

23    of that, the Government's preference would be to be able to

24    make reference to that in opening. So I acknowledge that my

25    more fulsome filing on this was very recent and I understand

1   why the Court hasn't had an opportunity to dig in, but I

2   would, if possible, like a ruling, be able to discuss that

3   ahead of time. And if there isn't enough time then the

4   Government obviously will make do and we'll move our evidence

5   around and not mention it in opening if we can't.

6        **THE COURT:**  Right, understood. Well, what I will do

7   is we'll see how far we can get here today. I don't know

8   Counsel's availability like on Thursday, for example, that we

9   could do a quick resumption of the case and I would be able to

10  digest the material. I'm not quite sure what my availability

11  is.

12       Maybe we can call back and see what's available in the

13  afternoon on Thursday, Jill, maybe call chambers and see

14  what's available. I didn't know what Counsel's availability

15  is.

16       **MS. FRANCIK:**  Ms. Newberger and I are both available

17  Thursday afternoon.

18       **THE COURT:**  Mr. Budlow, are you available like

19  Thursday afternoon?

20       **MR. BUDLOW:**  Absolutely.

21       **THE COURT:**  Absolutely?

22       **MR. BUDLOW:**  Yes.

23       **THE COURT:**  Okay, good. So what we'll do is I will

24  digest the material, you will digest it, and then we will get

25  a date or a time Thursday afternoon.

1              THE CLERK: Judge, you currently have a 2 o'clock

2     arraignment on Thursday, but Nadine is checking to see any

3     other time you can have.

4              THE COURT:  Yeah, we can do 2:45. That's fine with

5     me.

6              MR. BUDLOW:  Your Honor, may I have a moment with

7     counsel?

8              THE COURT:  Sure.

9              THE CLERK: 3:00, Judge?

10             THE COURT:  3:00 is fine.

11             (Discussion held off the record.)

12             MR. BUDLOW:  Thank you, Your Honor.

13             THE COURT:  Okay, good. So with that in mind what

14     I'm hoping to do is outline some preliminary matters that

15     we'll take care of before we get into the substantive motions,

16     arguments, just regarding technical things like scheduling,

17     formatting, et cetera.

18        First, as far as the length of the trial is concerned,

19     we're currently set for about ten days beginning September

20     11th, looks like through the 14th; September 18th through the

21     21st; and the 25th through the 27th. I will note that there

22     will be no trial in the afternoon on September 14th, at least

23     for the time being.  So you can mark your calendars with that.

24     And also on September 12th we will be ending our court session

25     at 11:00 and not resuming until 2 o'clock. So we're going to

1        be adding in a longer lunch hour on September 12th.

2             The trial schedule generally will be 9:00 until about

3        4:30 or 5:00. We'll take a mid-morning break, a lunch break,

4        and a mid-afternoon break. We might shorten those breaks,

5        including the lunch in the event that we are running a little

6        bit behind.

7             At the conclusion of every trial day I will ask counsel

8        to approach and ask them specifically, most importantly the

9        Government, whether or not they believe the case is on track,

10       ahead of schedule, behind schedule and we will adjust

11       accordingly either by reducing the breaks or otherwise. And I

12       will join and ask for advice from defense counsel as well

13       because of course you know based upon who is going to be

14       testifying how long a particular cross-examination might be.

15       And that's something that I would not necessarily be aware of.

16            Do we -- is ten days a generous estimate, Mr. Budlow, or

17       do I tack on a couple more?  Because I will tell you, the

18       purpose of this, I always like at the end of every trial day

19       is to tell the jury that we are running ahead of schedule. And

20       due to the professionalism and efficiency of counsel we're

21       running ahead of schedule in the case so they're not looking

22       at you funny when I tell them that they're behind schedule. So

23       I typically will add on another day just in the event that

24       we've got a charging conference or there's some other

25       evidentiary issue that comes up. So I would tell them maybe

 1    the 28th of September which is the following Thursday, or the

 2    29th.

 3         Do you think that that's a good idea, Mr. Budlow?

 4         **MR. BUDLOW:**  I do. And I'll tell the Court, that has

 5    been sort of why we mapped it out to three weeks.  So the 28th

 6    and 29th or Thursday, Friday. My current estimate had us

 7    hopefully finishing a little sooner than that. It's such a

 8    wildly arbitrary thing to predict how long it's going to take,

 9    but I've been trying to do it for years. Sometimes it works. I

10    didn't build in the two -- or the one day off, afternoon off

11    that you mentioned.

12         So just in terms of looking at my estimate already I

13    would say that it gets us into another day which would be

14    Wednesday or Thursday where we had hoped to finish earlier.

15    So yeah, I think that ending on the 28th, 29th is absolutely

16    reasonable to expect.

17         **THE COURT:**  Okay, very good.

18         **MR. BUDLOW:**  And hopefully earlier. May I inquire

19    about the 14th?

20         **THE COURT:**  Yes.

21         **MR. BUDLOW:**  You mentioned that we'd be -- I'm

22    sorry, the 12th -- no, the 14th.

23         **THE COURT:**  The 12th we're breaking before lunch and

24    resuming after lunch at 2 o'clock.

25         **MR. BUDLOW:**  Okay. And then on the 14th you said as

1    of now we may not be sitting in the afternoon.

2           **THE COURT:**  After noon.  After 12 noon.

3           **MR. BUDLOW:**  But is there a chance that we might?

4    It sounded like there's some flexibility in what we might do.

5           **THE COURT:**  I tell you what, I can confirm that

6    Thursday when we reconvene.

7           **MR. BUDLOW:**  That would be helpful.

8           **THE COURT:**  Right, absolutely.

9           **MR. BUDLOW:**  I can rejigger.  We have a lot of

10   out-of-town witnesses in this case and in my prediction that

11   was going to be a day of a lot of out-of-town witnesses.  But

12   depending on what the Court says Thursday, we can change that.

13          **THE COURT:**  Perfect. And I will double -- and I've

14   started this or I've prepared this weeks and weeks ago and I

15   didn't look to see whether or not that conflict still exists,

16   to be honest with you. So --

17          **MR. BUDLOW:**  Thank you.

18          **THE COURT:**  So I will be able to let you know

19   probably at the conclusion of this hearing whether or not I

20   still need -- so I'm not even going to wait until Thursday. I

21   will e-mail you or dispatch someone to come out to tell you

22   whether or not the judge still has to break a half-day on

23   Thursday.

24          I've reviewed the proposed voir dire. I've placed on your

25   trial tables a series of bullet points which cover the general

1    questions of voir dire and we'll get to that in a minute. But

2    there are various bullet points which summarize the questions

3    that are going to be proposed to the prospective jurors. I

4    want to thank you very much for sending in your voir dire. I

5    didn't see much that was duplicative, but we can modify these

6    bullet points as it comes along.

7         And just for Mr. Jones's benefit, I wanted to when we go

8    through what is going to be asked of the prospective jurors, I

9    want you to know how I'm going to use this and how your

10    lawyers will use this as a tool.

11         I'm not going to take any of your questions. If you've

12    got a question, you can ask your lawyers if you'd like.

13              **(The Defendant conferred with his counsel off the**

14    **record.)**

15              **THE COURT:**  Ms. Francik, is there something I need

16    to address?

17              **MS. FRANCIK:**  Yes, Your Honor.  Your Honor, after

18    consultation with Mr. Jones, we would like to request a

19    continuance of the trial. And I understand that--

20              **THE COURT:**  Really?

21              **MS. FRANCIK:**  --that this probably seems like a

22    surprise request.

23              **THE COURT:**  It is a surprise request.

24              **MS. FRANCIK:**  Yeah. If I could provide a little bit

25    more background information, and I'm happy to speak with the

1    Government first.

2         **THE COURT:**  Why don't you talk to the Government

3    first because I don't know how the Government will necessarily

4    respond.

5         **MR. BUDLOW:**  I do.

6         **THE COURT:**  I don't know what the circumstances are,

7    and then I will address it.  So I'm going to put the noise

8    button on and let you, as well as the Government, consult.

9    Because I don't want to try this case twice, but I don't know

10   what is going on right now because I was prepared to go

11   forward.

12        So why don't you talk to Mr. Budlow and Ms. McGuinn.

13        **MS. FRANCIK:**  Yes.

14        **(Counsel conferred off the record.)**

15        **THE COURT:**  All right, Ms. Francik.

16        **MS. FRANCIK:**  Yes, Your Honor.  We did have some

17   opportunity to discuss this request with the Government and I

18   understand the Government is objecting to this request.

19        To give a little bit of background information, Mr. Jones

20   would like more time to carefully review the discovery in this

21   case. Obviously this case has been pending for quite some

22   time. The discovery has been voluminous, Your Honor. I think

23   we're up to 28 productions at this point.  And there have been

24   some recent productions that we have not had much opportunity

25   to meet with Mr. Jones and discuss. Obviously he is

1    incarcerated so our ability to review the discovery with him

2    is limited. His ability to have really any materials related

3    to his case is limited, given the stigma attached to his

4    charges.

5        And so, Your Honor, for these reasons, Mr. Jones would

6    like some more time in order to carefully review the discovery

7    before deciding whether to proceed to trial.

8        **THE COURT:**  Mr. Budlow?

9        **MR. BUDLOW:**  Your Honor, the Government objects.

10    This trial is scheduled for Monday. It has been scheduled

11    since roughly October 27, 2022 and had already been scheduled

12    for quite some time then. We were preparing for trial last

13    fall, engaged with counsel, discovery meetings, e-mails being

14    exchanged about the evidence when Judge Blake stepped down

15    from this case and Your Honor took over and we scheduled this

16    out until today.  So we've known about this for a while.

17        What I'm not hearing from the defense, there's no

18    complaint from them about access to discovery. And like every

19    trial, there are fines when the defendant goes to trial and

20    the Government continues to dig into the evidence that has

21    been available to the defendants since day one, we find

22    additional evidence. No complaints from the defense about

23    their ability to review the discovery, no complaints from the

24    defense about their ability to meet with their client for the

25    last nearly three years.

1    Your Honor, I would note that in 2021, I believe, I had a

2    reverse proffer with defense counsel. And at that reverse

3    proffer the Government presented with the defendant present

4    what the Government believed was the overwhelming evidence in

5    this case leading to discussions. Now has there been more

6    evidence since then, some strong evidence since then?

7    Absolutely. But the general nature of this case has not

8    changed since that time.  The level of strength of the

9    circumstantial evidence at the time was quite overwhelming.

10    So the fact that the defendant is incarcerated is the

11    same as in every serious child exploitation case. The fact

12    that he has a stigma and can't hold the superseding indictment

13    is the same as in every child exploitation case that's

14    serious. This one has been around for three years.

15    I would note that in terms of the tremendous amount of

16    resources that the Government has piled into this case

17    recently, there are 16 John Does referenced in the indictment.

18    And as defense counsel knows because we've been in constant

19    communication, every single one of them or a family member is

20    planning on coming to this courthouse next week or the week

21    after to testify about what happened to them; some in person

22    and some online. Some of them are now just barely adults. Some

23    of them are still minors. Some of them regardless of their age

24    are unable to come and a family member will come and attempt

25    to identify them based on their account name and their phone

1    numbers.

2       These victims are from Tennessee, Alabama, Pennsylvania,

3    Virginia, Baltimore County, Ohio, and I'm sure I left one or

4    two out. So the amount of arrangements that have been made to

5    provide them with transportation and travel, witness

6    preparation, the stress involved with all of these victims to

7    know that they're going to come to court and have to sit in

8    the same room as the defendant, this has been going on all

9    summer.

10       And this is not a knock on counsel in this case.  We have

11    been in significant, regular communication, not just about

12    discovery and issues, but in terms of the order of proof, in

13    terms of the witnesses that would be called, would it be a

14    John Doe or would it be the John Doe's mother or sister about

15    the evidence, about the exhibit list. And yes, recently there

16    are exhibits that were found on the defendant's phone that was

17    on his person that was encrypted. And up until a

18    month-and-a-half ago roughly, the Government couldn't get into

19    it. The Government was able to get into that. Forensic

20    examiners got into it and found videos of the defendant

21    engaged in sexual conduct with one of the victims during the

22    period of the indictment and you can see the defendant's face.

23       Now obviously that changes a really, really strong

24    circumstantial case into a case where there's a really strong

25    piece of direct evidence. But the defendant doesn't need a

1    postponement to address that file that he says he hasn't seen

2    when his lawyers were informed of it literally the night that

3    the Government discovered it and invited in for an evidence

4    review and multiple follow-up evidence reviews with additional

5    items in the days that followed. And this was all in early

6    August, at the latest.

7         So the idea that the defendant today after having a

8    Lafler Frye hearing comes literally right next door and says,

9    "I need more time to prepare," but even his lawyers don't say

10   they need more time to prepare would be an injustice. There's

11   been no legitimate basis to wait this long and request a

12   postponement. And the Government believes that he has

13   certainly highly qualified, prepared counsel who have worked

14   on this case extensively for three years -- Ms. Newberger may

15   be a little bit less, maybe well over a year -- who have not

16   indicated any complaints relating to the discovery or their

17   ability to prepare for trial. It's just the defendant just now

18   at the last second making this request.  Regardless of his

19   basis, the record is clear that the defense is ready and this

20   case should proceed to trial on Monday.

21             **THE COURT:**  All right, thanks.

22        Ms. Francik, anything else you'd like to add?

23             **MS. FRANCIK:**  I have nothing further, Your Honor.

24             **THE COURT:**  All right, very well.

25        Pending before the Court is a motion for a continuance

1    that was filed by the defendant.  As indicated by the

2    Government, this case has been around for quite a period of

3    time. It was originally before Judge Blake and it was recently

4    transferred to me and a trial date was put in place. Discovery

5    has been exchanged. We have had -- we've mapped out a trial

6    date. The Court and witnesses are lined up.  Victims are lined

7    up, ready to testify.

8         Counsel has not indicated a lack of preparedness for this

9    case to proceed. Mr. Jones has had more than ample opportunity

10   to review the discovery in this case and, indeed, we still

11   have more time as well as this case proceeds to a September

12   11th trial.

13        I'm going to go ahead and deny the requested postponement

14   and we will proceed.

15        All right, so with regard to the voir dire, I did receive

16   the joint voir dire. We will be going over that in a moment.

17   As far as discovery is concerned, we have had a discussion

18   recently about discovery. There's no indication that discovery

19   has not been provided or is otherwise lacking.

20        As far as exhibits are concerned, they should be

21   premarked.  With any issues -- I note, Mr. Budlow, you

22   indicated that there were some issues regarding -- well, not

23   issues, but you had out-of-state witnesses. And so are there

24   any issues regarding their being able to be available during

25   the course of the trial or somebody getting called out of turn

```
 1    or anything like that?

 2          MR. BUDLOW:  No concerns at this point. Obviously

 3    when it arises, when we have issues with out-of-town witnesses

 4    and travel we would ask the Court for leave to call witnesses

 5    out of turn and maybe even interrupt a witness that's on the

 6    stand.  We certainly would let defense counsel know about that

 7    ahead of time.

 8          THE COURT:  Sure. I would like, if possible, the

 9    night before to share with opposing counsel your batting order

10    so that they can get appropriately prepared, as well as it

11    would be nice to be able to have an extra witness in the event

12    that there's a witness that is -- you didn't anticipate was

13    going to be as lengthy and all of a sudden it's a short

14    witness and we've got a short day.

15          We will go as I indicated to you, the trial day from 9:30

16    to 4:30 or 5:00, et cetera. If we wanted to -- if there was a

17    relatively lengthy witness we could end a little bit earlier;

18    if there's a relatively short witness we can carry it over,

19    just to make sure that the case runs smoothly.

20          We have equipment available, of course counsel are well

21    aware the equipment that the Court has available for --

22    related to the presentation of evidence.

23          I'm certain counsel have discussed any stipulations as to

24    documents or the authenticity of documents to prevent the

25    necessity of having a custodian of records come in and
```

 1        testify.
 2           Are there any -- Ms. Francik, are there any special needs
 3        of Mr. Jones?  In other words, does he have some back problems
 4        or any other physical ailments that would prevent him from
 5        sitting for long periods of time, et cetera?
 6              **MS. FRANCIK:**  If I could have one moment, Your
 7        Honor.
 8              **THE COURT:**  Yup.
 9              **(Defense counsel conferred with the defendant off**
10        **the record.)**
11              **MS. FRANCIK:**  One thing, Your Honor.  Mr. Jones is
12        diabetic and he receives insulin twice a day. He normally
13        receives it in the morning, early morning before trial is
14        scheduled to commence, but then in the afternoon receives it
15        at a trial.  Three times?  If I could have one moment.
16              **(Defense counsel conferred with the defendant off**
17        **the record.)**
18              **MS. FRANCIK:**  Your Honor, I misspoke earlier.  He
19        receives insulin three times a day in shot form, including at
20        lunch and around 4:00 in the afternoon.
21              **THE COURT:**  Okay, I think we can accommodate that. I
22        mean, he'll get it in the morning.  I presume the marshal
23        service will have the appropriate medication and the medical
24        expertise to administer his medication during that period of
25        time.

 1              MS. FRANCIK:   Thank you.

 2              THE COURT:   And I'll just ask Ms. Newberger to make

 3      sure that that's facilitated. For example, today we'll

 4      probably carry over until noon or past noon and that would be

 5      past the deadline for him to take his medicine.

 6          Any issues regarding security that the Court needs to be

 7      concerned about?  And I just say that not because I'm

 8      anticipating anything, but I just say that -- I ask that in

 9      every criminal case that I'm handling. Any issues related to

10      security, Mr. Budlow?

11              MR. BUDLOW:   None that the Government is aware of,

12      Your Honor.  Thank you.

13              THE COURT:   Okay. Is there a motion to sequester

14      witnesses?

15              MS. FRANCIK:   Yes, Your Honor.

16              MR. BUDLOW:   I join in that.

17              THE COURT:   All right, noted and granted.

18          So for Mr. Jones's benefit, I'm going to go through this

19      voir dire very quickly -- not very quickly, but I'll go

20      through the voir dire so that Mr. Jones has an idea of what he

21      can expect in the morning.

22          Mr. Jones, on September 11th, on the morning of trial,

23      the courtroom deputy here will call down to the jury assembly

24      room. We will have probably about 80 or so jurors that are

25      going to end up coming here to the court pursuant to a

1    summons. On each summons there will be a number. That will be
2    the juror number. They'll call in. They'll be lined up in the
3    back of that courtroom in the gallery according to -- and
4    hopefully in numerical order. I will then introduce myself,
5    let them know why they are here, and then give them an idea of
6    the process for jury selection.
7        The first thing that will happen is that there's going to
8    be roll taken to make sure that all jurors that were summonsed
9    to come here in the court are present in this courtroom.  Once
10   roll is taken, they're going to be asked to stand and raise
11   their right hand.  They're going to be placed under oath.
12   They're then going to be seated and I'm going to reintroduce
13   myself. And according to the voir dire, I'm going to follow
14   this script.
15       My name is George Russell, III.  I'm a judge in the U.S.
16   District Court for the District of Maryland. The case now
17   under consideration is United States of America v. Gary Rocky
18   Jones. I'm going to identify what you are charged with and let
19   them know that this case is expected to last three weeks
20   excluding -- three weeks excluding Fridays and Monday --
21   Monday -- what's happening September 25th?
22           **MS. NEWBERGER:**  It's Yom Kippur, Your Honor.
23           **THE COURT:**  Oh, okay.  Very good. So I'm going to
24   add in the 28th and 29th, add those days in.
25       I'm now going to ask you some questions in order to

 1    obtain certain information that's going to be helpful to the

 2    lawyers in the selection of a jury in this case. I'm going to

 3    remind the jury that their legal requirement is to respond to

 4    the questions in the same way that they would have responded

 5    individually, but I'm going to be asking those questions of

 6    them as a group. And it's an important part of the judicial

 7    process. I'll go into when I'm asking you questions, I'm doing

 8    so to ensure that they're able to participate as a juror. For

 9    example, if they're family or friends with the lawyers or the

10    parties, that's an important fact that should be known. I also

11    will question them that if they answer "yes," they're going to

12    stand up and then when they're called upon by me, they're

13    going to give their juror number only.

14         And then at the second set of the second part of voir

15    dire, they're going to be coming up individually and

16    responding in more depth to the questions that they said yes

17    to and they're going to do so under the cover of the noise

18    button which is this. **{White Noise was put on.}**  You're going

19    to have the opportunity seated at that table to listen to

20    everything that's going on up here at the bench as I continue

21    with the voir dire and examination of the individual jurors.

22    If for some reason your earpiece stops working, you just raise

23    your hand and get the attention of the courtroom deputy or any

24    of the other courtroom staff here and we'll make sure that you

25    end up getting a working earpiece before we continue again.

 1          The first set of questions that I'm going to ask which

 2     will correspond to the bullet points that I have provided you

 3     is other than what I've just told you, do you know anything at

 4     all about this case either through your own personal knowledge

 5     or discussion with anyone else?  If someone stands up under

 6     their juror number I will write the numerical number one. That

 7     will signal to me, as well as the attorneys, that the person,

 8     the prospective juror indicates that they know something about

 9     the case.

10          I'll move onto the next question which is you, Mr. Jones.

11     I'll say, ladies and gentlemen, Mr. Jones, if you could please

12     stand. Does anyone know Gary Jones?  Has anyone had any

13     business or personal relationships either in the past or the

14     present with Mr. Jones?  If so, please stand. I'll then do the

15     same with your lawyer. I'll do the same for the Government.

16     The Government is going to provide -- and your counsel are

17     going to provide me with a witness list that lists all the

18     names of individuals who will be called to testify or whom

19     might otherwise be mentioned during the course of the trial.

20     I'll ask whether or not they know, believe they know any of

21     those individuals.

22          Then I move onto do you know the public defender in this

23     case, James Wyda or any of the Assistant Public Defenders or

24     employees of the Public Defender's Office. I'll do the same

25     for the U.S. Attorneys or employees of the U.S. Attorney's

 1    Office. Do you know anyone who is employed in the courthouse

 2    in any capacity?  Do you know one another?  Do you happen to

 3    be familiar with one another?  And you'll see they'll sort of

 4    look around to one another to see if they sort of recognize

 5    anybody.

 6         The next question 11 talks about immediate family or

 7    close friend ever been employed with the United States

 8    Department of Justice. Again, close friends connected with any

 9    law enforcement agency, police, fire department, sheriff's

10    office, et cetera.

11         The case is being investigated by the FBI and the

12    Baltimore County Police Department. My question 13 talks about

13    you or any immediate family or close friends ever been

14    employed by or been involved in any dispute with any of these

15    law enforcement agencies. If so, then I'm going to have you

16    stand -- I'm going to have them stand up.

17         Ms. Francik and Ms. Newberger, I'm not going to go into

18    "Well, what was the nature of your dispute?"  I'm going to

19    save those kinds of in-depth specific questions for when we're

20    up here privately at the bench.

21         I note that both it looks like (c) and (d) are both

22    duplicative. Do you agree, Ms. Francik?

23              **MS. FRANCIK:**  If I could have one moment, Your

24    Honor.

25              **THE COURT:**  Sure.

1     **MS. FRANCIK:**  So I think, Your Honor, the only
2 distinction between the two is that one references a law
3 enforcement officer employee whereas -- that's (c), whereas
4 (d) references an agency. I think those could all be combined.

5     **THE COURT:**  Okay, so right. So I'm going to combine
6 those. And so now the bullet point will go -- combined. So I'm
7 going to combine it with 15. Experience with any type of law
8 enforcement officer, employee, including but not limited to
9 FBI agent or employee, Baltimore County Police Officer or
10 employee, Baltimore City Police Officer or employee, or an
11 agent or employee with the Department of Justice, or any
12 agency, any law enforcement agency. Is that okay?

13     **MS. FRANCIK:**  That's fine, Your Honor.

14     **THE COURT:**  No objection, Mr. Budlow?

15     **MR. BUDLOW:**  None, Your Honor.

16     **THE COURT:**  Okay, so I'm going to take that one out.
17 So now we're going to adjust all of our numbers. More or less
18 weight to the testimony of a police officer than to any other
19 witness merely because he or she is a police officer. The next
20 deals with law enforcement searches. The next one deals with
21 victim of a crime, pending charges, ever been arrested or
22 convicted of a crime. Have you or immediate family member or
23 anyone else or any close friends been subject to criminal
24 investigation.

25     I took out (e), have you or any member of your immediate

1    family or close friends ever been a witness to a crime. I

2    found that to be completely vague. I don't know what -- you

3    can be a witness to a crime and not necessarily -- it might

4    not be any crime that's committed. So I was going to leave it

5    with witness in a prosecution or defense.

6         No objection, Ms. Francik?

7              **MS. FRANCIK:**  No, Your Honor.

8              **MR. BUDLOW:**  None from the Government.

9              **THE COURT:**  Are you currently a plaintiff or

10   defendant in the court in any federal or state case?  Is 18(a)

11   duplicative of what we said at the outset of this case whether

12   or not you have any knowledge of this case?  Because I've

13   asked -- I ask at the outset whether or not you have any

14   knowledge of the case, knowledge of the defendant.

15             **MS. FRANCIK:**  Yes, Your Honor.  If I could have one

16   moment. Your Honor, we agree that question number one covers.

17             **THE COURT:**  18(a), right.

18        No objection; is that correct?

19             **MR. BUDLOW:**  None from the Government, Your Honor.

20             **MS. FRANCIK:**  None from the defense.

21             **THE COURT:**  Okay. Grand jury returned a superseding

22   indictment. An indictment is a formal way of presenting

23   charges against a person. An indictment is not evidence.

24   Belief that a person is guilty because they have been charged

25   with a criminal offense.

1      Mr. Jones, the next question deals with you can't accept

2   the principle of presumption of innocence. The next set

3   belongs to your right to remain silent and any difficulty

4   handling that proposition.

5      22.   Now 22, instructions of the law and not being able

6   to follow the law. Do you agree that (f) is duplicative?  It

7   seems to me it is.

8            **MS. FRANCIK:**  We agree, Your Honor.

9            **THE COURT:**  All right, it's out. No objection, Mr.

10   Budlow?

11            **MR. BUDLOW:**  No objection.

12            **THE COURT:**  All right. The next one deals with

13   punishment and federal laws punish too harshly or too

14   leniently.

15      The next set of questions deals with child --

16   specifically child pornography charges, the nature of the

17   charges, et cetera. That will be bullet point 24 and 25

18   dealing with the graphic nature.

19      Belief that laws should not be enforced at all or

20   enforced more vigorously than other law or enforced less

21   vigorously than other laws. Talking about the child

22   pornography laws. That would be 26.

23      27, give more or less weight to the testimony of a minor

24   merely because he or she was a minor.

25      28, again, the graphic nature of the images themselves

1    prevent you from being fair and impartial.

2        29, strong feelings about people required to register on

3    the Sex Offender Registry that you couldn't be fair and

4    impartial.

5        30, talking about the internet and computers and whether

6    or not they consider themselves an expert, or don't use

7    computers, or are familiar with computer technology or whether

8    or not they would rely upon their own expertise and disregard

9    the evidence.

10       I put down on (e), 20(e), have you ever heard of computer

11   forensic examiner analysis?  If so, what do those terms mean

12   to you?  I took that question out, but I'm willing to read "Do

13   you have any education or background, experience in computer

14   forensics?"  And that way when we get them up here, if they

15   answer "yes" to that question I can go into what their

16   experience is.

17            **MS. FRANCIK:**  No objection from the defense.

18            **THE COURT:**  All right. 31, I'm just going to read

19   (a).  Let's see, I'm just going to read (a), the first

20   question and then ask them further questions that are outlined

21   in bullet points 1, 2, 3 and 4 up here at the bench. No

22   objection?

23            **MS. FRANCIK:**  No, no objection from the defense.

24            **THE COURT:**  Right. And I will read them all

25   collectively together, (a), (b), (c) and (d). But I'm not

 1    going to go into the subcategory of (a). I'll just do that up

 2    here at the bench.

 3         I combined -- we've got 32, attended law school, law

 4    training.

 5         33, I added in grand or petit jury and I just put a

 6    parens, 12 person jury. No objection?

 7              **MS. FRANCIK:**  No objection.

 8              **THE COURT:**  So that would eliminate what was

 9    previously 24; is that correct?

10              **MR. BUDLOW:**  I agree with that, Your Honor.

11              **MS. FRANCIK:**  We agree as well, Your Honor.

12              **THE COURT:**  Okay, very good. This is all about the

13    scheduling in the case, 35.

14         And then the last question that I will ask is about

15    citizenship, residency, age, and comprehension of the English

16    language question. No objection to that; is that correct?

17              **MS. FRANCIK:**  That's correct.

18              **THE COURT:**  All right. The way -- any strikes that

19    we have for cause or hardship we'll do -- if I hear, for

20    example, one of our prospective jurors is going to have brain

21    surgery the next week, they're responding to the impossibility

22    question, I normally start out with those questions first, the

23    ones clearly for cause, and then clearly for hardship. I don't

24    see a need to go through the victim questions and all the

25    other questions if it's clear that they're going to be struck

 1   for cause or for hardship. So when we get a response that

 2   seems to really telegraph and will telegraph it in my mind, I

 3   will look to the attorneys and I'll say, "Ms. Newberger, do

 4   you have any questions?"  Mr. Budlow, do you have any

 5   questions?"  And if you just shake your head, no, I don't have

 6   any questions, that triggers to me that you agree that there's

 7   a hardship or a cause and I can just send the juror back to

 8   their seat.

 9        If, for example, you believe that somehow it doesn't

10   demonstrate a hardship or cause, then you can point out to me,

11   "Well, he answered the victim question." He or she answered

12   the victim question.  And that will trigger in my mind that

13   you A) think that you can rehabilitate the particular juror or

14   B) it's not cause. And I might just on my own if I think it's

15   a closer call just continue to go through the voir dire and

16   receive any motions to strike for hardship or cause as we go

17   along. All right?

18            **MR. BUDLOW:**  Your Honor, may I ask a question about

19   that?

20            **THE COURT:** Yes.

21            **MR. BUDLOW:** Talking about the sort of process. First

22   one is do you bring the jurors up for all of the individual

23   jurors' questions or responses at one time or is there a back

24   and forth?  In other words, when the juror comes up to the

25   bench.

1       **THE COURT:**  We're asking everything that they've

2    responded to, unless we don't have to.

3       **MR. BUDLOW:**  Right, right. And then in the scenario

4    that you described where we don't have to and the juror steps

5    back, will you make a record of that time while it's just

6    counsel saying that juror is struck for cause?

7       **THE COURT:**  Yes, I will say "Counsel, I hear 'I'm

8    having brain surgery' or, you know, "My father is a cop, my

9    dad is a cop, my uncle is a cop, I believe cops.' Or 'I don't

10   believe cops. I never believe cops.'" That triggers in my mind

11   that they can't be fair and impartial. So I will entertain a

12   motion at that point in time. I'll ask whether or not counsel

13   object. Typically if it's that clear-cut of a case there

14   wouldn't be an objection, but if there is, I'll hear it out.

15      But I would expect -- if you believe -- if you're going

16   to object, if you anticipate an objection to a strike for

17   cause, then I'm just going to go through all of the voir dire.

18   I'm not going to send the witness back. It's only in those

19   really clear cases where you're saying to yourself this person

20   clearly can't be fair and impartial for either side that I

21   will send them back down.

22      **MR. BUDLOW:**  Right. And my last question hopefully

23   on this topic is when we are at the bench, what is the Court's

24   preference in terms of follow-up questions by attorneys,

25   either directly to the juror or through Your Honor?

1          **THE COURT:**  I typically will do the voir dire. You

2     should ask me whether or not I can ask the witness, the

3     prospective juror, the question. But I promise you that I will

4     -- if a juror says "Well, I'm not sure," you know, I'll say,

5     "Well, let me ask you this:  Are you capable of listening to

6     the evidence and making a determination exclusively on the

7     evidence whether or not the Government has proven its case

8     beyond a reasonable doubt?  If the Government has done so, you

9     must find the defendant guilty. If the Government hasn't done

10    so, you must find the defendant not guilty. Are you capable of

11    doing that?"  And typically they'll say "Well, yeah, I guess

12    now I can listen to the evidence."

13         If there's still some hesitancy because of the nature and

14    circumstances of the charges, et cetera, that they can't do

15    that, then I'm going to make a judgment call as to whether or

16    not the juror can be fair and impartial. Because I want to

17    make sure Mr. Jones gets a fair and impartial jury. So if

18    there's hesitation on the witness's part -- but if the witness

19    says "Yeah, I think I can do that," then that might convince

20    me just assessing the credibility of the prospective juror

21    that no, although it's slightly qualified, I think that the

22    gist of it is that he can be fair and impartial. Right.

23         And, for example, if he's been a victim of a crime, I'll

24    typically ask a question, "Were you satisfied with the outcome

25    of the case?"  You know, "Is there anything about you being a

 1    victim of that particular crime that would prevent you from

 2    being fair and impartial to the parties in this case?"  It's

 3    very fluid. All right?  Right, so that will go through voir

 4    dire.

 5         And then, of course, after we conclude the second stage

 6    of the jury selection process, counsel will be -- will go over

 7    the strikes that we had for cause. You'll be given your

 8    mark-offs for your peremptory strikes. You'll do those

 9    peremptory strikes and you'll provide those lists to the

10    courtroom deputy. She'll collate them and then we'll get the

11    jury seated.

12              **MS. NEWBERGER:**  Your Honor, is it ten and six?

13              **THE COURT:**  Yes, I think so.

14              **MR. BUDLOW:**  What was the question?  I'm sorry.

15              **MS. FRANCIK:**  Ten and six.

16              **MR. BUDLOW:**  Thank you.

17              **THE COURT:**  And then we'll get our jury seated.

18    Depending on the day, the time of day, I'm hoping, hoping to

19    get this jury picked before lunch. That might be ambitious, I

20    don't know.  But if we get it picked before lunch, even if we

21    have a late lunch, we can go right into openings right after

22    lunch.

23         So we have gone through the voir dire. Any questions

24    regarding voir dire, Mr. Budlow?

25              **MR. BUDLOW:**  Well, it's more about the last comment

1    you made about openings on Monday which the Government will

2    certainly be prepared to do.

3                **THE COURT:**  I just thought after the jury selection.

4                **MR. BUDLOW:**  Do you want the Government to have a

5    witness available for Monday afternoon or can we know that

6    we're not going to start witness testimony until Tuesday?

7                **THE COURT:**  No.  I think since we're going to tack

8    on those other two days, you know, I don't --

9                **MR. BUDLOW:**  For what it's worth, the Government's

10   plan was to start witness testimony on Tuesday.  So my

11   estimates were based on no witnesses on Monday.

12               **THE COURT:**  Okay, that's fine. We can get the jury

13   picked, we can do our opening statement. We can take care of

14   any other matters that we need to take care of.

15               **MR. BUDLOW:**  Great.

16               **THE COURT:**  Clean that up and then we can go right

17   into openings first thing in the morning on Tuesday.

18               **MR. BUDLOW:**  Oh, I'm sorry.  I'm saying we'd be

19   prepared to open on Monday. I was talking about witness

20   testimony.

21               **THE COURT:**  Witness testimony.

22               **MR. BUDLOW:**  Our estimate was a witness would start

23   on Tuesday.

24               **THE COURT:**  Witness testimony will begin on Tuesday,

25   first thing in the morning right out of the box. Ideally I'd

1    like to be able to have the witnesses ready to go, have them

2    in the box the moment the jury comes out because that way I

3    can just say to the jury, "Hey, ladies and gentlemen, we're

4    prepared and ready to begin testimony in this case." I can

5    give them just general admonishments regarding what they do,

6    and what they should do and then we just go right into the

7    testimony, get it taken care of.

8         **MR. BUDLOW:**  Thank you for that.

9         **THE COURT:**  All right. I note it is about -- right

10   now it's 12:08. I think that the next section which we'll get

11   to will be the motions section. If you would like -- and I

12   know that Mr. Jones is due for his medication at noon, we can

13   take a break for about an hour and ten minutes for lunch and

14   then we can come back and we can do the motions and we can

15   wrap up the day.

16        **MS. FRANCIK:**  That's fine with the defense, Your

17   Honor.

18        **MR. BUDLOW:**  That schedule works for us.

19        **THE COURT:**  All right, very good.  I'll see you at

20   about 1:20 p.m.

21        **(Luncheon recess was taken from 12:09 to 1:25 p.m.)**

22        **THE COURT:**  We are ready to resume the pretrial

23   conference in this matter. We're next moving forward with I

24   guess the motion to dismiss the special allegations, and that

25   would be ECF number 50. It's my understanding that the

 1    Government is agreeing or stipulating to, the motion to

 2    dismiss special allegation number 2, at least according to the

 3    footnote; is that correct, Mr. Budlow?

 4            **MR. BUDLOW:**  That is correct, Your Honor.

 5            **THE COURT:**  All right, noted and granted. As a

 6    result, special allegation number 2 will be dismissed and

 7    struck.

 8        Now we move onto special allegation number 1. Ms.

 9    Francik, I want to thank you very much. I've had the

10    opportunity to review your motion related to this. In essence,

11    I think that everyone universally agrees that the categorical

12    approach to analysis of the prior conviction is applicable.

13    And it's a question of whether there is with regard to that

14    prior or the Maryland statute, whether the person or a person

15    charged under that statute could be convicted of an offense

16    that has nothing to do with sexual gratification. In other

17    words, sexual gratification is a critical element of the

18    federal statutory scheme for the three enumerated offenses.

19    And your argument is that sexual gratification is an

20    absolutely essential offense and it doesn't fit as far as a

21    categorical approach because the Maryland statute does not

22    require sexual gratification in order to be convicted of

23    Second Degree Assault.

24        Further, your argument is -- and again, I'm paraphrasing

25    it because I want to be sure I'm getting it right -- is that

     1    since sexual offense second degree doesn't match up
     2    categorically, even with the expanded related to or broader
     3    language categorical plus language, it still doesn't match.
     4    Because again, sexual gratification is an essential element of
     5    the federal offense and it's not present in order to convict
     6    someone of second degree sexual assault and it's not related.
     7    Because, indeed, you point out in some cases that a person can
     8    be convicted of second degree sexual offense and it have
     9    nothing to do with an element of sexual gratification. It
    10    would be just almost purely an assault type of criminal act.
    11    And if I agree with you, then the prior conviction will be
    12    struck. If I have a tendency to agree with the Government,
    13    then it won't be. And that has very significant consequences
    14    to Mr. Jones as far as the ultimate disposition of this case.

    15         And while I understand the Government's argument that it
    16    may not be ripe or it's only ripe to sentencing -- and even
    17    Judge Grimm postponing the decision to make that determination
    18    until at the time of sentencing as opposed to the time of
    19    trial, I think it could be meaningful to have a decision which
    20    could, of course, depending on which way I go, get revisited
    21    depending on the current litigation.

    22         I was disappointed that Mr. Sturtz's conviction was
    23    affirmed on other grounds because those were one of the things
    24    I was looking for. I was like oh, okay, that should be out by
    25    now.  And sure it was, it was out, but it didn't really

1    provide me with any guidance.

2         I will tell you, it's close. I mean, I've read the

3    briefs. I've reviewed a lot of the cases. I've reviewed very

4    carefully Judge Grimm's opinion as well.

5         But with that framework, Ms. Francik, tell me where I've

6    gotten it wrong in my summary of where we are and what I

7    should do.

8         **MS. FRANCIK:**  So Your Honor, thank you. I don't

9    think there's anything necessarily that Your Honor got wrong

10   in your summary. There's just a bit that I would like to

11   expound upon.

12        **THE COURT:**  Yes.

13        **MS. FRANCIK:**  And so obviously, Your Honor, we

14   believe this is a purely legal issue that should be decided at

15   this juncture, particularly given its importance in Mr.

16   Jones's understanding of his exposure in this case and the

17   penalty he faces.

18        And the Court I think very aptly summarized the issue

19   here. The issue we believe is whether or not Mr. Jones's prior

20   conviction relates to the generic federal offenses of

21   aggravated sexual abuse, sexual abuse, or abusive sexual

22   contact of a minor or ward.

23        The Court correctly noted that the categorical approach

24   is the approach that is employed in situations like this.

25   Pursuant to *Hardin*, that was a Fourth Circuit case from 2021

1    at 998 F.3d 582, the Court did write that we use the

2    categorical approach and then some, to determine whether or

3    not a prior conviction relates to a federal generic offense.

4        But employing that approach here, Your Honor, requires

5    the Court to find that Mr. Jones's prior conviction does not,

6    in fact, relate to those federal generic offenses.

7        First of all, Your Honor, as a purely categorical matter,

8    there is a mismatch between Maryland second degree sexual

9    offense and the federal generic offenses.

10       **THE COURT:**  I don't think there is any dispute about

11   that.  Is there a dispute related to that that there is a

12   mismatch?  The real argument is related to, correct?

13       **MR. BUDLOW:**  Yes, the related argument is true and I

14   don't know that I'm prepared to discuss whether there's a

15   perfect match or not, because it's not required.

16       **THE COURT:**  Right.  Okay, understood.

17       I'm sorry, Ms. Francik, I just wanted to see whether or

18   not there was a common ground.

19       **MS. FRANCIK:**  I understand, Your Honor. So Your

20   Honor, we submit that under the Maryland statute of second

21   degree sexual offense, and specifically the definition of a

22   sexual act -- and that's found in § 3-301 of the Criminal Law

23   Article, the Maryland statute actually does not require the

24   defendant to have acted for any purpose at all. That's because

25   the text of the statute specifically references that an act be

1   done -- that can reasonably be construed for sexual arousal or

2   gratification or for the abuse of either party. That language

3   there, "can reasonably be construed to be for purposes of

4   sexual arousal or gratification," means that it's not actually

5   the defendant's intent that matters under the Maryland

6   statute, it's whether a reasonable person could find that the

7   evidence supports that the act was done for sexual arousal or

8   gratification or -- and this is important -- the abuse of

9   either party.

10          Maryland Courts have held, Your Honor, that this statute,

11   the definition here is in the disjunctive, that the Court need

12   not find that a prior act have been done for both. They can

13   find it sufficient that it had been done for the abuse of

14   either party.

15          Under Fourth Circuit case law, it is clear that the

16   sexual gratification purpose is a central element of the

17   generic offenses. The Court held that -- held as much in

18   *Larios-Reyes v. Lynch*, that's 843 F.3d 146.  It's a federal

19   circuit case from 2016. Under the federal generic definition

20   of sexual abuse of a minor, acting for the purpose of sexual

21   gratification is an element of the offense. And the courts

22   have held -- this was in *Alfaro* -- that the intent to gratify

23   sexual urges is central to the offense of sexual abuse of a

24   minor.  It's therefore part of the ordinary meaning of the

25   phrase "sexual abuse."

 1           And so the Fourth Circuit has made clear that a linchpin
 2     element of the federal generic offenses is this sexual
 3     gratification purpose.  And any crime that does not require a
 4     defendant to have a sexual gratification purpose, therefore
 5     does not target the same four criminal conducts that those
 6     federal generic offenses target.  And because a Maryland
 7     second degree sexual offense can be violated for a nonsexual
 8     gratification purpose, in fact, for no purpose at all, it's
 9     too far removed from the federal generic offense in order to
10     relate to those federal generic offenses.
11           **THE COURT:**  Okay, all right. Thanks. I may have some
12     other questions as we engage.
13           **MS. FRANCIK:**  Yes, Your Honor.
14           **THE COURT:**  Mr. Budlow.
15           **MR. BUDLOW:**  Your Honor, with respect to the Fourth
16     Circuit cases, I think they've all been distinguished in the
17     Government's filing at document 51. I would add, I don't want
18     to remake the arguments there, that as the Court pointed out,
19     this categorical approach is within the context of whether or
20     not a statute relates to categorical plus. So it is not about
21     matching statute to statute, it is about matching statute to
22     -- criminal statute for which the defendant was convicted to
23     does it relate to a variety of federal offenses. And it's
24     categorical in that context. It's not matching elements, it's
25     not matching crimes, it's not looking for a mismatch.

```
 1            So when the defense says well, there is a state -- the
 2      state offense for which the defendant has been convicted of
 3      requires what they term a "simple assault," it is an assault
 4      of one's genitals.  And so the Government's view and one that
 5      has not been disagreed with is that that relates to always a
 6      committing sex offense in the second degree under Maryland law
 7      and always a committing sex offense in the third degree, an
 8      even lesser offense, relate to the various crimes listed in
 9      the enhanced section which are in this case, whether or not it
10      relates to the sexual abuse and contact, sexual contact.
11            And Judge Grimm obviously had all of these exact same
12      arguments with almost the -- I will admit -- nearly identical
13      briefing, at least from the Government's perspective, and
14      disagreed. Judge Chasanow had nearly the identical briefing
15      and disagreed and found that second or third degree sex
16      offense under Maryland law does relate to and does act to
17      enhance the sentence.  And I believe my notes say that Judge
18      Bredar in a case that we cited agreed as well, and the Third
19      Circuit agreed.
20            So this defense argument that because a not-so-simple
21      assault of an individual's genitals doesn't have the specific
22      words that relate to -- I forgot the exact terminology from
23      the cases, it just doesn't hold water.  And not one case, not
24      one judge in this district and not the Fourth Circuit have
25      held that it does in the context of the enhancements under
```

1   2252 or 2251.

2        The Government would submit on that issue. I would say

3   that there are -- there's a separate issue and I'm not asking

4   the Court to necessarily revisit your decision to rule today.

5   I do want to point out that regardless of the Court's ruling

6   today, if between now and sentencing there's a case that says

7   otherwise, given the defense's posture which the Government

8   doesn't disagree with which is that this is a purely judicial

9   matter to decide at sentence, given that that's the defense's

10  posture, they are essentially waiving their right or admitting

11  error or however you want to do it if the law ever changes

12  that it is the Court and not the jury that makes this

13  decision. So that's one.

14        But later on down the road when we come to sentencing, if

15  the law has changed from whatever the Court decides today, I

16  don't think there's any dispute that the Court will sentence

17  in accordance with what the law turns out to be.  If, for

18  example, the Fourth -- and I'm not saying that there's

19  something pending like Sturtz, it would have to move really

20  quick or this case would have to move really slow.  But here

21  we are three years later and we haven't had trial, so it could

22  move slow and we could be in that situation.

23        So I just want to point that out.  Because certainly the

24  Court will rule and if there's nothing more solid out of the

25  Fourth Circuit between now and then, I'm sure that's what will

1    happen at sentencing if there is a sentencing.

2         Of course if the Court rules in the Government's favor

3    and there's a ruling out of another district, I'm sure that

4    we're going to hear about it between now and sentencing. And

5    so I just point that out that we still may revisit this at one

6    point down the road.

7         The other thing I just want to point out, I made a

8    reference to it, which is that the parties agree that an

9    exception to the *Apprendi* rule that all facts that affect the

10   mandatory minimum and maximum sentence must be proved to a

11   jury beyond a reasonable doubt. The exception to that rule is

12   *Almendarez-Torres* which says yes, that's true in *Apprendi,*

13   unless it relates to the fact of a prior conviction. I just

14   want to put on the record that the defense in agreeing with

15   the Government or stating on their own pretty strongly in

16   their filings that it is the Court's decision, if that law

17   were to ever change, if the Supreme Court were to revisit the

18   exception to *Apprendi* and overturn the Almendarez-Torres

19   decision, the defendant shouldn't be heard to come back and

20   complain that this issue right here of the prior conviction

21   was not presented to a jury.  Which is not necessarily the

22   point that we are arguing here which is really point one which

23   is whether or not the prior conviction relates to -- the

24   second degree offense conviction relates to in a way that

25   complies with the statute.

 1              **THE COURT:**  Thank you.

 2         Ms. Francik.

 3              **MS. FRANCIK:**  If I could have one moment, Your

 4    Honor.

 5              **THE COURT:**  Yes.

 6              **MS. FRANCIK:**  First, Your Honor, I just want to put

 7    on the record that this morning we had a Lafler hearing, in

 8    essence, and that was at the Government's request, in order to

 9    put on the record that Mr. Jones knows of the possible

10    penalties that he faces, that his decision is to move forward

11    with the trial.

12         This afternoon the Government is asking the Court to hold

13    off on a ruling on this issue that very much bears upon Mr.

14    Jones's ability to understand the penalties he faces at trial.

15         I would submit, Your Honor, that those two requests are

16    at odds with one another, and that it is perfectly appropriate

17    for the Court to make a decision on this issue which the

18    Government has conceded is a purely legal issue at this

19    juncture so that Mr. Jones goes into this trial with a fuller

20    understanding of what his exposure is.

21         As to the Government's response, Your Honor, I would

22    first, again, reiterate that the Fourth Circuit has made clear

23    that a linchpin of the federal generic offenses is the sexual

24    gratification purpose. That is a core and a critical element

25    of the federal generic offenses.

 1          The Maryland statute does not only not require someone to

 2     act for a sexual gratification purpose, it allows someone to

 3     act for the purposes of abuse. It also allows someone to act

 4     for no purpose at all, so long as it could reasonably be

 5     construed as being for a sexual gratification purpose. Those

 6     two truths, Your Honor, are at odds with one another to the

 7     extent that the Maryland sexual -- second degree sexual

 8     offense statute cannot possibly be construed as relating to

 9     the federal generic offenses.

10          If we take a look at the Maryland cases here, Your Honor,

11     *Burkett* and *Dillsworth*, which are both mentioned in our motion

12     and our reply, I think it's a revisionist reading of those

13     cases to find that just because they dealt with someone's

14     genitals, that there was any sort of sexual gratification

15     purpose in those assaults.

16          The reading of those cases, Your Honor, is that those

17     assaults while they took place against the victim's genitals,

18     they had absolutely no sexual gratification purpose

19     whatsoever.

20          And so, Your Honor, our position is that the Fourth

21     Circuit has made it very clear what they consider to be the

22     linchpin of the federal generic offenses. It is very clear

23     from the text of the Maryland statute that that is not a

24     linchpin of the Maryland offense. And for that reason, the

25     Maryland offense simply cannot be found to relate to

1    aggravated sexual abuse --

2            **THE COURT:**  That's a narrow reading of "relate to,"

3    isn't it?  I mean, I'm reading "relate to" a little bit more

4    broadly than that when we're talking about sex offenses and

5    sex acts. I note that the first, one of the first elements in

6    the Maryland statute relates to directly sex and sex acts. I

7    know that one of the purposes behind the statute is to protect

8    minors and others. And my thought process is is that the

9    narrow reading for which you're giving "relate to," and it

10   doesn't have to be a perfect paring and that's where it takes

11   it out of sort of the categorical approach analysis and puts

12   us into a realm that is not quite as clear, even as far as the

13   case law is concerned. And so I'm not quite sure I read the

14   interpretation of "related to" as narrowly as you're doing so.

15           **MS. FRANCIK:**  If I could --

16           **THE COURT:**  I guess that's just a statement, but

17   yeah. Yeah, please.

18           **MS. FRANCIK:**  Yes, Your Honor. So with regards to

19   "relating to," although the courts have held that it is

20   broader than simply a categorical match, in *Hardin* the Court

21   wrote that there needs to be -- the statute of conviction

22   needs to stand in some relation to have bearing or concern, to

23   pertain, refer, to bring into association with or connection

24   with.

25           There must be a limit to this "relating to." And that the

```
 1    logical limit for that, and it's something that the Third
 2    Circuit has noted in its 2020 decision, United States v.
 3    Portanova, is that both statutes must target the same core
 4    criminal conduct such that they are directly analogous. And
 5    that that is not, in fact, a narrow reading of "relating to,"
 6    it's making sure that if we are to find that enhanced
 7    penalties apply, that we are basing those enhanced penalties
 8    on the same core criminal conduct as the federal generic
 9    offenses.
10              THE COURT:  Which in this case certainly as even
11    Judge Grimm pointed out, involves a sexual element to it.
12    There's a sexual element to this. There is relationship to it.
13    The purpose of both statutes is to prevent, among other
14    things, sexual abuse of minors. I mean, that's what the
15    statute was designed to do. And it was to precisely enhance
16    the penalties for repeat offenders who have previously been
17    convicted of sex offenses. And I think a reading of that would
18    go contrary to the entire purpose of the statute.
19         And I get the categorical approach. If we were stuck with
20    the categorical approach only, I'm with you. I'm 100 percent
21    with you.  Because I do agree with you on that point. But the
22    challenge that I've got is the "related to" language.  And
23    then when I even look so far as to look at the purpose behind
24    the statute and the goals behind the statute and the kind of
25    criminality that the statute was designed to prevent and,
```

1    indeed, maximize the punishment against repeat offenders, this

2    all suggests to me that these two offenses are, indeed,

3    related if they don't match up with the categorical approach

4    both in their conduct and nature as indicated by Judge Grimm,

5    but also in the overall purpose behind the two statutes. So I

6    guess that's a longwinded way of saying I disagree.

7              **MS. FRANCIK:**  Understood, Your Honor.

8              **THE COURT:**  And I think the record is noted. So for

9    these reasons and reasons previously stated on the record and

10   contained within the Government's opposition, the defense

11   motion to dismiss at least with regard to the specific

12   allegations contained within paragraph one are denied.

13        What's next?  In light of this, do we have anything else

14   that we can -- and I know that we're -- I did not read the

15   supplemental brief. I didn't get to it.

16        Oh, I did change -- the 14th I am going to have to close

17   at noon. I just have to. It has nothing to do with court, it's

18   a personal matter. And then secondly, I can't extend this on

19   the 29th, but I can extend it, carry it over on the 2nd of

20   October. So we'll go Monday through Thursday, and then carry

21   over until the Monday after. And I am, by the way, open for

22   the 2nd as well. I'm open that whole week. So to the extent

23   that we had to carry it over, I threw those dates out there to

24   the jury, you know, we can accomplish it that way too so that

25   we shouldn't miss any days, we shouldn't lose any days.

 1          Other than what we've already handled and what we need to

 2     take care of at 3:00 on Thursday, is there anything else we

 3     can productively handle before we conclude?

 4          **MR. BUDLOW:**  Your Honor, so I think we're coming

 5     here on Thursday at 3 and I understand that the briefing that

 6     you have that I submitted a little late relating to the 414,

 7     404(b), all of the issues that directly relate to that we'll

 8     deal with then.

 9          There are a few other matters we discussed before the

10     break we could deal with and we could also table them to

11     Thursday.  I guess my view would be to defer to the Court

12     whether or not you want to hear some sort of miscellaneous

13     matters now that might not be 100 percent unrelated to

14     Thursday's proceeding, or wait and do it all.

15          **THE COURT:**  Okay, well let's see what we can

16     accomplish while we're here, if that's okay.

17          Ms. Francik, are you prepared to address these matters?

18          **MS. FRANCIK:**  We are, Your Honor. That's fine, Your

19     Honor.

20          **THE COURT:**  Okay.

21          **(Discussion was held off the record.)**

22          **THE COURT:**  Okay, so where are we?

23          **MS. FRANCIK:**  Yes, Your Honor. So there is one issue

24     that was the subject of our motion in limine that was docketed

25     at I believe ECF number 80. This is a motion to exclude two

1   videos that pertain to John Doe 3. And the basis of our

2   motion, Your Honor, is that these videos should be excluded

3   under Federal Rule of Evidence 403 because they are unfairly

4   prejudicial. The Government is prepared to play the videos for

5   the Court this morning if the Court wishes to view them before

6   making a ruling on this.

7           **THE COURT:**  Sure. Yeah, I'd like to see the videos.

8   That would probably be the best way for me to make that

9   determination, especially given if it's a balancing test.

10          **MS. FRANCIK:**  Yes, Your Honor. And I misspoke

11  earlier.  I believe it's docketed actually at ECF number 79.

12          **THE COURT:**  79. And what's the Government's

13  position, the probative value outweighs the prejudice I take

14  it?

15          **MR. BUDLOW:**  Yes, as to both of those videos.  And

16  there's a third video maybe I guess we're just going to talk

17  about separately. But yes, that is the Government's position.

18  I'm happy to show them now and make the Court -- make an

19  argument based on that and I'm ready to proceed.

20          **THE COURT:**  Okay, very good. Thank you.

21          **MR. BUDLOW:**  Madam Clerk, would you mind switching

22  to this Elmo?  Perfect, thank you.

23      Your Honor, I believe that there's a certain amount of

24  context that's necessary for the arguments that you're going

25  to hear today and these will apply on Thursday.  So hopefully

1    this will save me the time of having to repeat it on Thursday.

2              **THE COURT:**   Thank you.

3              **MR. BUDLOW:**   I hope. Your Honor, the evidence in

4    this case comes from a lot of different places. It's not just

5    going to be from accounts.  There's going to be some witness

6    testimony.  There's going to be a lot of business records.

7    There's going to be a lot of internet electronic service

8    provider accounts.

9         But with respect to the charges relating to the

10   exploitation of John Doe 2 through John Doe 16, the bulk of

11   the evidence is going to come from what you see on the screen

12   here today.

13        And I guess I want to give a little bit of background. I

14   put it in the most recent motion, but I do think it's worth

15   going over. The iCloud account which is in those two e-mail

16   addresses, the Government has circumstantial evidence that the

17   defendant is the owner of that account. It's not necessarily

18   his name in every place, but there's strong evidence that

19   that's his account.

20        In that account after search warrants were obtained were

21   located probably hundreds, but certainly dozens of videos of

22   the victims in this case, John Does 2 through 16. And the

23   videos are typically of them engaging in sexually explicit

24   conduct on a phone through the Instagram app. And they're

25   recorded in one of two ways. And these videos that are in this

1    iCloud account don't show the defendant. They don't show the

2    person who is interacting with the victims. They show the

3    victims and they show a chat communication.  And sometimes

4    there's voices that are heard, sometimes not. But the person

5    exploiting the victims is not seen in those videos and that's

6    one of the points that I want to make.

7         There's a couple of ways that those videos were made. One

8    is phone-to-phone, meaning that literally on the one phone was

9    an Instagram chat or video call that involved sexually

10   explicit conduct, typically through live streaming. And when I

11   say "phone-to-phone," a second phone.  I'm saying

12   "phone-to-phone" as a shortcut.  It could have been a

13   different digital device. But a second phone is recording the

14   first phone and it's obvious to the viewer because you can see

15   the whole outline of the subject phone.  You can see some

16   background sometimes.  There's a little bit of movement

17   sometimes. It's phone-to-phone recording.

18        The second way is through the iPhone screen record

19   feature. And if Your Honor has an iPhone, you might be

20   familiar with that, you might not. I didn't know about it

21   probably until this case.  But the iPhone has a relatively

22   recent feature where whatever is being displayed on the

23   iPhone, the user can typically simply swipe down, push the

24   button for screen record.  There's a quick countdown, 3, 2, 1

25   and then the phone creates a recording of whatever is going on

1    on the phone until the user swipes down and ends that

2    recording. That recording --

3              **THE COURT:**  Is that the same thing if you would do a

4    screenshot, for example, except the video is realtime?

5              **MR. BUDLOW:**  Right.  The term "screenshot" is

6    typically used to refer to a still photo by clicking some

7    feature on the phone that will take a still photo of whatever

8    is on the phone.

9              **THE COURT:**  Right.

10             **MR. BUDLOW:**  And this is sort of the next version of

11   that.

12             **THE COURT:**  A video version instead of a screenshot,

13   you do some function and it records the -- it records what's

14   on the phone.

15             **MR. BUDLOW:**  Yes.

16             **THE COURT:**  Gotcha.

17             **MR. BUDLOW:**  And in either of those circumstances,

18   depending on the user settings, that video is saved to the

19   person's iPhone, iCloud library.  And depending on their

20   settings, it's then saved either automatically or manually to

21   the iCloud. We searched the iCloud and see hundreds of these

22   videos, phone-to-phone recordings and screen recordings of

23   John Does 2 through 16 engaging in chats and doing sexually

24   exploitive behavior.  And sometimes you can see the chat where

25   the person who is talking to them is giving them instructions,

1    sometimes not. Sometimes you can hear a voice. And those

2    victims are as identified in the indictment by their ages.

3         The way that -- and so that's here. That's in the iCloud

4    account. In those videos whether they contained a chat or a

5    screen recording, typically the other users, the John Doe

6    user's Instagram username or profile is seen. Not their real

7    name, usually some name that they use. Investigators were able

8    to take that information and go to Instagram and identify the

9    actual users, the minors who we discussed you would

10   potentially be hearing from in the next couple of weeks.

11        Through that, search warrants were obtained for three

12   primary Instagram accounts.  And the names of those accounts

13   are on the screen:  Lorpee, Lorpeelove and GMCboy. The

14   Government has accumulated evidence that the user of those

15   three accounts is the same and those are the main three

16   accounts that communicated with the various John Does that are

17   depicted in the iCloud accounts.

18        So in the search warrant records from Instagram for

19   Lorpee, Lorpeelove and GMCboy, sometimes in some of these

20   videos but if you recall from my description, those videos

21   weren't actually sent or produced in Instagram.  They were

22   livestreamed.  And Instagram doesn't keep a record of

23   livestreams. But what Instagram does keep a record of if it's

24   not deleted by one of the users are the chats, Meaning the

25   written text communication between the John Does and either

1    Lorpee, or Lorpeelove, or GMCboy. And those chats I'm going to

2    speak generally in this case, make it pretty clear that the

3    user of Lorpee, Lorpeelove, and GMCboy, that Instagram user is

4    clearly exploiting these minors, is paying them or threatening

5    them or otherwise enticing them to be naked, to commit sex

6    acts, do all kinds of things.  And some of these

7    communications go on for just a day or two, some weeks, some

8    months, and a couple over a year.

9         So you have on one hand this Instagram account where the

10   user of the Instagram account whose name does not appear in

11   any of the subscriber information, who is for all intents and

12   purposes anonymous in the records, whose IP address is mobile

13   so it cannot be tied to a residence, that's the person who is

14   creating these videos. That's the person committing the 2251

15   crimes. And then all of the results of that person's conduct

16   do appear in the defendant's iCloud account.

17        But what the Government must prove in this case is not

18   merely that the defendant owns the iCloud account, not merely

19   that he knowingly possessed those images, and really not even

20   that he knowingly possessed those images. Certainly we'll

21   prove that and argue that because it's relevant to a lot of

22   the facts.  But the Government must prove that the person who

23   created those files is the defendant. And one of the ways the

24   Government intends to do that is by showing that the person

25   who controlled that Instagram account was the defendant. But

 1      that evidence, the evidence as to who Lorpee is, and who

 2      Lorpeelove is, and who GMCboy is, comes from a variety of

 3      places. It doesn't come solely from the iCloud videos that are

 4      the subject of the indictment. It comes from other iCloud

 5      videos that contain background, and mail, and the defendant's

 6      furniture. It comes from witness testimony, one victim who met

 7      the defendant. It comes from devices that the defendant

 8      possessed where similar chats with the same and other victims

 9      may have been found and it comes from Facebook.

10          And I'm not trying to go too deep into what we're going

11      to do Thursday, I'm just trying to give the Court an overview

12      of the Government's burden in this case and understanding that

13      the counts of sexual exploitation are here, but the conduct

14      getting to the exploitation, including the coercion,

15      enticement was found here. The iCloud is in the defendant's

16      name or can be more easily proven to be the defendant's. The

17      Instagram is completely anonymous and that's where the

18      Government's focus in this prosecution will be.

19          Now that was a long introduction. I want to talk about

20      the two videos that the defense has objected to and I think

21      that we should do them separately. The first one is identified

22      in the defense pleadings as file 1150. Let me get the right

23      extension. It's Government's Exhibit 12.23.1. And it is

24      img_1150.mov. And I want to give a little context of where

25      this video appears during the offenses.

1    So after Count Five, one day after Count Five is the date

2    of this video. Court's indulgence. I believe it's after Count

3    Ten, Your Honor.  Let me confirm that. Count Ten is four

4    videos that occurred on July the 7th, 2019. And they depict

5    John Doe 3 and John Doe 4, and that's brothers, masturbating.

6    The next day is this video.

7    And in this video which I will summarize and then play is

8    the victim, John Doe 3 essentially saying to Lorpee that he

9    doesn't want to dirty talk, for lack of a better word. He

10   doesn't want to say "give you head" which is what the user of

11   the Instagram account is telling him to do. And during the

12   course of this conversation, the user of the Instagram account

13   who we contend is the defendant, continues to try to get him

14   to say, "Give me head," or something to that effect.

15   And so in general, the Government's view is this is

16   important evidence as to the coercion and enticement of this

17   victim. This is what the defendant was doing or the user was

18   doing.  And the Government has to prove coercion and

19   enticement and this is part of that.

20   As this video continues.  You will see on this video as

21   you will see in other videos that were found both in the

22   iCloud and on the defendant's phone, that in the

23   phone-to-phone recording there's a finger that comes out on

24   the subject phone and touches the screen. Maybe it plays

25   something, maybe it scrolls through some chats, but a finger

1    is seen. And in this video, 1150, a finger is seen. And on

2    that finger is a tattoo. And the tattoo matches the tattoo

3    that the defendant has on his hands. And the Government has

4    done search warrants where photographs of that tattoo were

5    taken. And part of the evidence in this case will be showing

6    this finger tattoo and matching it to the tattoo on the

7    defendant's hand.

8        And what I want to point out if I go back to this chart

9    is that Government's Exhibit 12.23.1, this video that I

10   promise I'm about to play, img_1150.mov is from the

11   defendant's iCloud. So again, the counts of production are in

12   the iCloud. Much of the coercion and enticement is in the

13   Instagram.  And the Government has got to prove that the user

14   of the Instagram account was the defendant.

15       And so now we have this video, this exhibit that we're

16   discussing in the defendant's iCloud account with his

17   communication with a charged victim during a course of the

18   coercion and enticement period right before one count and

19   after another count, with his finger on the screen. It's

20   incredibly powerful evidence of the identity of the defendant.

21   So separate from its relevance to the coercion and enticement.

22       And if we could switch to the podium please and hope that

23   it works and that we get sound.

24              **(Whereupon the videotape was played.)**

25          **MR. BUDLOW:**  Now Your Honor may have seen at the end

1     there was a knuckle that was turned, it was a left hand and

2     there is a tattoo in there.  When we take a still of that it's

3     visible that there is a tattoo and that it's very consistent

4     with the one on the defendant's same finger. That was 61

5     seconds or so and you can tell it was choppy. That original

6     video like many videos in this case was much longer. It was

7     seven minutes and 15 seconds. We've trimmed that and we've

8     made the defense aware of exactly where we've trimmed it to

9     obviously make the trial quicker, to show what the Government

10    thinks is most important. And so that's the version that we

11    plan to play at trial.

12        I want to point out another point of relevance in that

13    video.  And there will be others, but this particular

14    relevance which is that you can see the background. There was

15    a brown piece of furniture. There was some stitching on it.

16    It's something that you'll probably become familiar with as

17    the trial goes on. That furniture -- again, you can't see the

18    defendant in that video.  It's in his iCloud account.  The

19    Government has found other videos in the defendant's iCloud

20    accounts that have nothing to do with the child exploitation

21    where the defendant is clearly making the video where that

22    same piece of furniture is located. So again, tying the

23    defendant as the person who is exploiting John Doe 3 as

24    opposed to just the person who happens to have the videos of

25    John Doe 3's exploitation.

1          For context, though, there's a little bit more.  So the

2    Count Ten was on July 7th.  This video was on July 8th.

3    Following this video on July 11th, as part of the coercion and

4    enticement, the defendant from his account, sent $80 to John

5    Doe 3's Amazon account in some form.

6          **THE COURT:**  Hang on for one second.  I didn't mean

7    to interrupt you.

8          **(Discussion held off the record.)**

9          **THE COURT:**  Excuse me, Mr. Budlow.  I apologize.

10         **MR. BUDLOW:**  Of course.  So again, two or three days

11   after this video the defendant sent $80 to John Doe 3 through

12   Amazon.  And then about a week later, Count Eleven occurred

13   which was on July 22, 2019.  And that consisted of a number of

14   videos of oral sex and other sex acts between John Doe 3 and

15   his brother, John Doe 4.  And so I point that out to provide

16   that context that this discussion of how the defendant wanted

17   the victim to say certain things sexually is relevant

18   independently in terms of the context of these counts and also

19   I think fairly clearly to show that the defendant is -- the

20   identity is the person who is communicating with John Doe 3.

21         That's the argument as to Exhibit 12.23.1 identified in

22   the defense filing as 1150.

23         Your Honor, there's another video that we just -- that

24   Ms. Francik discussed.  Do you want me to move on to that?

25         **THE COURT:**  Please. Please, thank you.

1        **MR. BUDLOW:**  All right. So next is Government's

2   Exhibit 12.27 which is file img_1327.mov. Your Honor, this one

3   I'm going to need Agent Corn's computer, but I think I can

4   just -- I might be able to bring this down.

5        Before we show this one to the Court, Your Honor, this

6   video is charged in Count Eleven. Count Eleven is made up of

7   eight videos. The count is charged for having occurred on or

8   about July 22, 2022. This is the one that I was just

9   discussing that was following by about a week Count Ten, and

10  then the video that you just saw, and then the Amazon payment.

11       Of those eight videos, the first video is 1327. And it's

12  clear that the victim, John Doe 3 again is upset and he

13  doesn't want to continue with the conduct.  And he's telling

14  the defendant that. I have a transcript that I'd like to pass

15  up.

16       **THE COURT:**  Yes, thank you.

17       **MR. BUDLOW:** And it's similar to the first argument

18  relating to 12.23.1.  And the Government's argument with

19  respect to this video is that this communication between the

20  victim and the defendant goes to the method, and the coercion,

21  and the enticement of the defendant, of John Doe 3.

22       And particularly, Your Honor, I would just point out that

23  I don't fully know the defense in this case. The defense might

24  be how do you know it was me. The defense might be -- and I've

25  seen this in similar cases, I've seen no indication that it

```
 1    will be the defense, but it might be well, maybe these victims
 2    were willing participants. Not a legal defense really, but
 3    I've seen it. Maybe it will be that in a more subtle way. And
 4    I think that this victim's communication here to the defendant
 5    that this isn't something that he wants to do makes it clear
 6    that it was the coercion and the enticement that caused the
 7    conduct by the victim. And so that's sort of part of the
 8    Government's relevance here and we'll see if we can get it to
 9    play. It's about three minutes, even though it's a short
10    transcript.
11                  (Whereupon the videotape was played.)
12              MR. BUDLOW:  So Your Honor, that file which is about
13    three minutes, that's the entire file as it was found in the
14    iCloud account.  So the defendant recorded that file as it was
15    happening and kept it. And then if you notice, it's 1327, the
16    next file in succession that will be played relating to that
17    count occurred on the same day, possibly a couple hours later
18    is 1328, 1329.  And those files depict what I mentioned
19    earlier which is -- I'll describe it in a little more detail
20    in the indictment. Count Eleven is described as depicting John
21    Doe 3 masturbating his exposed genitals and ejaculating on
22    John Doe 4; John Doe 4 inserting his penis into the mouth of
23    John Doe 3; John Doe 3 inserting his penis into the mouth of
24    John Doe 4; John Doe 3 touching his penis on John Doe 4's
25    buttocks. So that video helps to explain the coercion and
```

1    enticement and what caused the videos that occurred later that

2    same day.

3          Your Honor, that is the Government's argument on those

4    two videos. I'll ask Ms. Francik if she needs the podium,

5    otherwise I'll leave my stuff here and come back for the next.

6                **THE COURT:**  Ms. Francik.

7                **MS. FRANCIK:**  Yes, Your Honor. Our position is not

8    that these videos are wholly irrelevant to the charges that

9    Mr. Jones faces, it's that they should be excluded pursuant to

10   Federal Rule of Evidence 403 because their probative value is

11   far outweighed by risks of both presenting cumulative

12   evidence, and by risks of presenting unfairly prejudicial

13   evidence.

14         So the Government raised several points for which it

15   finds these videos to be relevant and admissible. The first

16   they argue is that it is proof of Mr. Jones's alleged coercion

17   and enticement. I would point out, Your Honor, that as to the

18   coercion and enticement charges concerning John Doe 3 and his

19   brother, John Doe 4, the Government need not introduce

20   evidence of these videos in order to prove those charges. If

21   the Government proves any of the Count Seven through Fifteen

22   which concern John Doe 3, or any -- or Counts Nine through

23   Fifteen, these are the production counts that concern John Doe

24   3, that's Seven through Fifteen, and Nine through Fifteen is

25   the production counts that concern John Doe 4. If the

1    Government proves any of those counts, it would also prove the

2    coercion and enticement counts in Twenty-Nine and Thirty. And

3    so this evidence is not necessary in order to prove the

4    coercion and enticement charges concerning John Doe 3.

5        It also, Your Honor, is not necessary in order to

6    establish Mr. Jones's identity. As we pointed out in our

7    filing, Your Honor, we assumed that the Government would seek

8    to introduce these videos as proof of Mr. Jones's identity,

9    but the Government has other evidence that Mr. Jones was the

10   person that it plans to introduce, that Mr. Jones was the

11   person who operated the iCloud account.

12       **THE COURT:**  One way to get over it is a stipulation.

13   I mean, you're telling the Government what evidence they don't

14   need and you don't know what evidence you don't need until you

15   present it. Sure they can in their discretion if they think

16   that they've got enough evidence not put it in, but they

17   shouldn't be limited.  The jury should be able to hear

18   whatever evidence is there.

19       And I get it, you're saying they've got ample evidence to

20   prove it in another way. Well, if it's ample then, I mean --

21   and I'm not suggesting the defendant do this, but there's a

22   way to stop the videos from coming in is agree it's his iCloud

23   account.

24       But putting that aside, I'm not quite sure you can say

25   what evidence is cumulative and what is not. I mean, maybe it

1    comes down to when I'm in trial and I see a bunch of evidence

2    that appears to overwhelmingly establish the defendant's

3    identity I might revisit it. But right now I'm not quite sure.

4        **MS. FRANCIK:**  I think another basis though, Your

5    Honor, is the risk of unfair prejudice that's attendant to

6    these videos. This is obviously going to be a highly emotional

7    trial, a difficult trial for everyone to sit through. Whereas

8    the Government has pointed out as Your Honor can see talking

9    about 16 John Does, 46 counts. There is a lot of video

10   evidence that the jury is going to take in.

11       The nature of the charges themselves I think are the

12   sorts of charges where jurors will have to grapple with their

13   emotions and discomfort and distress about sitting on this

14   trial. And so these videos, Your Honor, are highly emotional.

15   They add to that risk and that risk I think overcomes their

16   probative value.

17       There are other ways that the Government or that the

18   Court could rule on these videos. If we take a look at the

19   first video --

20       **THE COURT:**  Unfortunately there's so many John Does.

21   There are a lot of them. Each one of those victims is

22   certainly entitled to have their case and their story told

23   before this jury.

24       **MS. FRANCIK:**  If I could, Your Honor --

25       **THE COURT:**  Sure.

1          **MS. FRANCIK:**   The first video at least, the 1150,

2    the video that the Government says is relevant because it

3    depicts Mr. Jones's finger, that video could be redacted to

4    show only that portion of the video where the finger shows up,

5    without having to show the remainder of the video and John Doe

6    3 in his highly emotional state. And that's, I think, a way of

7    allowing the Government to introduce this evidence that they

8    think is relevant to Mr. Jones's identity, while also

9    mitigating any risk of unfair prejudice by the jury hearing

10   the remainder of the video.

11        As to the second video, Your Honor, again my arguments

12   are the same, that its prejudice far outweighs its probative

13   value because the Government has intentions of admitting other

14   evidence that has the same evidentiary value. And for that

15   reason under 403 they should be excluded.

16          **THE COURT:**   Okay.

17        Mr. Budlow?

18          **MR. BUDLOW:**   Yes, Your Honor. I'm going to start

19   with the unfair prejudice.  Again, you're going to see a lot

20   of this in the filing for Thursday. The 403 analysis in a 414

21   context, the cases naturally recognize that child exploitation

22   cases, particularly sexual exploitation of a child involving

23   hands-on abuse or a facsimile of it which we have both in this

24   case, are extremely serious offenses that involve an inherent

25   degree of emotion and disturbing images. And so when you're

 1    analyzing whether or not something is unfairly prejudicial,

 2    it's in the context of the rest of the case. And so this is a

 3    rhetorical question, but just to make the point not to ask the

 4    Court, but which is worse?  Is the jury going to be disturbed

 5    by the fact that a minor victim was upset while the defendant

 6    was making him have sex acts with his 11-year-old brother or

 7    is it that the defendant was making the victim have sex acts

 8    with his 11-year-old brother?  That's what is arguably

 9    disturbing in this case.  And we're going to make sure we get

10    a jury that's fair and can hear that evidence. But the fact

11    that that conduct made the victim upset doesn't add any other

12    degree of prejudice whatsoever. It is implicit in these

13    charges in general that this is disturbing to the victims. And

14    the manifestation of it in this scenario doesn't really add

15    anything to the unfair prejudice.

16        And I'd also add that the analysis under 414 is that not

17    only is that not unfair prejudice, but the jury will be

18    instructed that they can use this evidence for propensity,

19    these other acts of exploitation.

20        So point one, the prejudice is not unfair. I just want to

21    respond to the -- I'm not going to reiterate.  The Court said

22    more than to say that the defense doesn't tell us when it's

23    enough or what evidence is really good for identification and

24    what evidence they would like out. They're not going to

25    stipulate that it's him. And that would be the equivalent

1   potentially of a guilty plea at some point in this case. If

2   they want to entertain stipulations as to the identity of the

3   person in the video, we'll certainly entertain those.

4        But in this video 1150 that we're talking about, the

5   defense suggests that well, we can redact it and only show the

6   part that shows the defendant.  But I want to go back to my

7   chart of iCloud and Instagram. This is in the iCloud. And the

8   whole idea, one of the critical points is to show who is

9   controlling the Instagram. This is a video in the iCloud of

10  the defendant, clearly, because it's his finger. That's what

11  they're saying that they would allow us to show the finger.

12  That's really important. But by itself it means nothing. It's

13  the defendant communicating with one of the victims. Now

14  that's really critical. But it's more than that. Because this

15  defendant is not admitting his guilt. He's putting the

16  Government to its burden and he will say that if there's a

17  video of him talking to the victim, that that is not the same

18  as him having created these child exploitation videos. And so

19  this is a video that shows the defendant, through his finger,

20  talking to the victim and exploiting the victim. And that's

21  why what they say is prejudicial is the most highly relevant

22  part in conjunction with his finger because this evidence is

23  on his iCloud, it's him exploiting this victim. That's

24  incredibly relevant to ID that no level of redacting would

25  take away the probative value of that evidence.

| | |
|---|---|
| 1 | **THE COURT:**  Thank you. |
| 2 | Pending before the Court is a motion to admit two videos |
| 3 | related to the ownership or use of an Instagram account and |
| 4 | comparing it to the revelation of videos found on an iCloud |
| 5 | account associated with the defendant. The Court reviewed the |
| 6 | videos and in the videos it certainly indicates a male person |
| 7 | upset, being communicated with by a user of an Instagram |
| 8 | account.  Contained within one of the videos is a video of the |
| 9 | finger of a person using the phone making the recordation, |
| 10 | which according to the proffer of the Government, a tattoo on |
| 11 | that finger matches a tattoo found on the defendant. |
| 12 | One of the critical elements that needs to be shown and |
| 13 | proof that needs to be established is ownership of the |
| 14 | Instagram accounts. There is no direct link of the defendant |
| 15 | to the Instagram account via name. However, the Government |
| 16 | intends on putting forth circumstantial evidence establishing |
| 17 | identity of the person who owns that Instagram account which |
| 18 | communicated with purported victims in a coercive manner in |
| 19 | violation of the law. |
| 20 | I do find that this evidence clearly is very probative of |
| 21 | identity. I do not find that it's unduly prejudicial in that |
| 22 | it certainly shows a young person in a state of upset, but the |
| 23 | videos in and of themselves, the probative value which clearly |
| 24 | outweigh any prejudice by showing the videos. |
| 25 | Now in the larger context of this case there is going to |

1      be highly prejudicial information that will be provided to the

2      jury.  But because it's highly prejudicial does not

3      necessarily make it inadmissible, as long as its probative

4      value outweighs the prejudicial nature of the evidence. And

5      these two videos clearly, the probative value outweigh the

6      prejudicial effect, if any.

7           There will be extensive instructions that will be

8      provided to the jury at the conclusion of this case and

9      potentially throughout the trial related to their ability and

10     the ways in which they will examine and interpret various

11     pieces of evidence that will be presented. I'm going to

12     presume subsequent to our voir dire that we have a jury in

13     place that will absolutely follow our instructions and make a

14     decision related to this case exclusively on the facts that

15     they end up hearing at trial and not driven by emotion, public

16     opinion, et cetera.

17          So what's next?

18               **MR. BUDLOW:**  Your Honor, next is Government's

19     Exhibit 5.5 which is a video titled img_1298.

20               **THE COURT:**  What are the exhibit -- what's the

21     previous exhibit numbers?  I'm sorry, Mr. Budlow. Let me get

22     the order.

23               **MR. BUDLOW:**  Yes, Your Honor, 12.23.1.

24               **THE COURT:**  12.23.21.

25               **MR. BUDLOW:**  No, just .1.

1          **THE COURT**   .1.

2          **MR. BUDLOW:**   And 12.27. And these numbers obviously

3     are the numbers that we anticipate using at trial.

4          **THE COURT:**   Gotcha. And now the next set of exhibits

5     which will be admitted or subject to the motion, I'm sorry.

6          **MR. BUDLOW:**   It's one video, 5.8.

7          **THE COURT:**   Okay.

8          **MR. BUDLOW:**   While I'm getting this ready,

9     Government's Exhibit 5.8 is a much reduced video from the

10    defendant's iCloud. It's img_1298.mov. And it was a video that

11    was found on -- actually, Court's indulgence. So this is a

12    video found on the iCloud.  And for context, the Government's

13    position to the relevance of this is that on September the

14    1st, 2020, a search and arrest warrant were executed. The

15    defendant was arrested away from his house. His home was

16    searched. He wasn't there. His bedroom was identified as being

17    in the basement of the residence.  And from his bedroom were

18    seized a number of digital devices, three of which are going

19    to be -- two of which are going to be discussed at trial. One

20    is 1B3 -- and I'm sorry, that's the FBI number that's in my

21    head for it, not the exhibit number.  And the other one is

22    1B7. So it's a phone and an iPad. And without getting into

23    details, but both the phone and the iPad contained evidence

24    that the Government believes is highly relevant to this case.

25         One of the factors that because the defendant wasn't

1    there that the Government will need to prove is that the
2    defendant was the occupant of the -- not just the home, but in
3    the basement. This video is a video where you can hear the
4    defendant's voice as he pans the room. There's some children
5    in the room that he's connected to by way of a good friend. He
6    refers to them as his children. I don't believe they're his
7    children, but the names are the names of his friend's
8    children. And as he pans, the Court -- I'm sorry, the video
9    shows the basement and the walls of the basement in his
10   bedroom that are consistent with the walls from the search
11   warrant. So basically this is being offered to prove that the
12   defendant was in and had access to the room where these
13   devices were found.
14             **(Whereupon the videotape was played.)**
15        **MR. BUDLOW:**  I'm going to let it play one more time,
16   Your Honor.
17             **(Whereupon the videotape was played.)**
18        **MR. BUDLOW:**  The other two matters that I'll point
19   out from that video that are relevant to the facts at issue in
20   this case is one, the defendant is stating the year.  So a lot
21   of the crimes occurred in 2019, so it specifically provides
22   him with access to that room during the time of the
23   indictment.
24        And I mentioned earlier to Your Honor that there's a
25   piece of brown furniture that has some lighter stitching in it

1    that has appeared on a number of the charged files of child

2    exploitation in Counts Three through Twenty-Seven.  And I

3    mentioned how another video that we saw had a brief clip where

4    you could see that piece of brown furniture. That same piece

5    of furniture is shown in this video.  And that has particular

6    relevance because that furniture was not seen in the

7    photographs of the residence on September 1, 2020. So it

8    wasn't there then, but more importantly, it was there in 2019

9    in this video that the defendant shot and it's present in some

10   of the counts of child exploitation.

11            **THE COURT:**  Thank you.

12        Ms. Francik.

13            **MS. FRANCIK:**  Thank you, Your Honor. First, Your

14   Honor, having seen this video, we disagree with the

15   Government's characterization that this video depicts or

16   somehow proves that Mr. Jones lived in the basement. At no

17   point during that video does Mr. Jones say that that is his

18   bedroom, that is where he lived.

19        Our issue with this video though more broadly, Your

20   Honor, is that even if it was relevant to where Mr. Jones

21   lived, it's again, cumulative evidence because the Government

22   will seek to introduce other evidence of where Mr. Jones

23   resided in the Aberdeen Avenue address.

24        We also have concerns, Your Honor, that the introduction

25   of this video is an attempt to disparage the way that Mr.

1    Jones was living or to suggest that he had access to children
2    which is not, in fact, accurate. The portion of the video that
3    the Government played here was Mr. Jones saying that this was
4    his oldest daughter. By the Government's own representation
5    here today they don't actually believe that this was Mr.
6    Jones's daughter.
7         And so first of all, Your Honor, we don't think that this
8    really is highly probative evidence that Mr. Jones lived in
9    the basement.  And secondly what we think it is is cumulative
10   and prejudicial evidence about Mr. Jones's living conditions
11   and his access to children.
12             **THE COURT:**  So would it be your contention that I
13   reserve on that somehow to evaluate whether or not the
14   Government has put forth sufficient evidence regarding Mr.
15   Jones's access to the basement area until such time as -- and
16   if the Government hasn't put forth or believes it needs more
17   evidence of access -- because clearly Mr. Jones is depicted in
18   the video.  Well, at least it's asserted that Mr. Jones is
19   depicted in the video. The Government has proffered that this
20   is the area that was searched that he was living in. The video
21   clearly shows he has access to that particular area, and
22   certainly implies that he was living there because there was
23   some reference to going through hard times so-to-speak in
24   reference to the trash that had accumulated there like hey
25   listen, look around. We've been going through some hard times

1    on this.

2         So I don't know, do you -- I think certainly if his

3    access is being challenged, if one of the defenses is going to

4    be he doesn't live there, then I think it's very probative of

5    his access. But if it's not going to be challenged or the

6    Government feels like they don't need it after establishing

7    more, then it seems to me that then it very well could be

8    cumulative. I just -- I don't have the access to the other

9    information.

10        You say the Government has got a lot of -- well,

11   presumably evidence, additional evidence, certainly sufficient

12   evidence that would make this evidence cumulative. Well, I

13   don't know what that is. And so it's hard for me to make a

14   judgment call as to the cumulative nature of the evidence

15   without seeing it.  Presumably I'm not going to see like five

16   different videos of the same things so it seems to me they're

17   going to try to establish access and control through other

18   means.

19             **MS. FRANCIK:**  If I could have one moment, Your

20   Honor.

21             **THE COURT:**  Sure.

22             **(Discussion held off the record.)**

23             **THE COURT:**  Ms. Francik.

24             **MS. FRANCIK:**  Your Honor, at this point we'd like to

25   reserve a ruling on this issue until the evidence has been

1    introduced. There is an issue that we'd like to discuss with

2    the Government to see if we can't reach some sort of --

3        **THE COURT:**   I'll tell you what, I'm not going to

4    meet you there, but what I will do is I will deny the Motion

5    in Limine to exclude the evidence because I don't think that

6    you demonstrated the cumulativeness. I do believe that based

7    upon the representation as to access it would be relevant. I

8    don't think that any comments or viewpoint regarding the

9    debris that is in the basement is unduly prejudicial, but I do

10   believe that his living in there during the relevant period of

11   time or at least implying that he was going through some hard

12   times looking at the areas and the surroundings is probative.

13   But I certainly will afford you the opportunity to raise it

14   again once you have had that opportunity to see some of the

15   evidence that has been presented.  So upon the presentation of

16   that tape, just bring it to my attention if you object to it

17   and then we will go from there and I'll hear you.

18       **MS. FRANCIK:**   Thank you, Your Honor.

19       **THE COURT:**   All right, thank you.

20   What's Next?

21       **MR. BUDLOW:**   Thank you, Your Honor. We've discussed

22   the remaining issues and to the extent that I think most of

23   them relate to 414 --

24       **THE COURT:**   Okay.

25       **MR. BUDLOW:**   --which we would deal with on Thursday.

 1    A couple other matters have arisen that haven't been briefed

 2    that we're -- just so you know, we're discussing and working

 3    through a lot of these evidentiary issues.

 4         **THE COURT:**  That's fine.  So what we'll do is we'll

 5    deal primarily on the supplement and the 414 motion related to

 6    the prior conviction. I don't think -- do you estimate -- I

 7    don't anticipate that motion being that lengthy, motions

 8    hearing being that lengthy if we covered a lot of the ground

 9    already.

10         **MR. BUDLOW:**  Just to preview, Your Honor, I think

11    there's three issues remaining relating to that. One is the

12    prior convictions; two is the admissibility of the Facebook

13    chats with two other minors; and then three is a single file

14    from the Instagram -- I'm sorry, from the iCloud account that

15    the defense is objecting to. So I think if -- you didn't maybe

16    saw the briefings, but we had a larger portion.  We narrowed

17    it down to roughly nine that involve child exploitation.

18    There's one remaining objection that we have not been able to

19    resolve, so those are the three issues.

20         **THE COURT:**  Okay, fantastic.  So what we'll do is

21    I'll just see you on Thursday at 3:00.

22         **MR. BUDLOW:**  Thank you, Your Honor.

23         **MS. FRANCIK:**  Thank you.

24         **THE COURT:**  Thank you very much.

25         **(Proceeding concluded at 2:49 p.m.)**

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4

5          I, Nadine M. Bachmann, Certified Realtime Reporter

6   and Registered Merit Reporter, in and for the United States

7   District Court for the District of Maryland, do hereby

8   certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

9   true and correct transcript of the stenographically-reported

10  proceedings held in the above-entitled matter and that the

11  transcript page format is in conformance with the regulations

12  of the Judicial Conference of the United States.

13

14                          Dated this 9th day of November, 2023.

15

16                          -S-

17          _____

18                          NADINE M. BACHMANN, CRR, RMR
                            FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25

## $

**$80** [2] - 61:4, 61:11

## 1

**1** [6] - 28:21, 36:8, 53:24, 71:25, 72:1, 74:7
**100** [3] - 1:18, 48:20, 50:13
**11** [1] - 24:6
**11-year-old** [2] - 68:6, 68:8
**1150** [5] - 57:22, 59:1, 61:22, 67:1, 69:4
**11:00** [1] - 7:25
**11:10** [1] - 2:2
**11th** [4] - 7:20, 17:12, 20:22, 61:3
**12** [1] - 10:2, 29:6
**12.23.1** [5] - 57:23, 59:9, 61:21, 62:18, 71:23
**12.23.21** [1] - 71:24
**12.27** [2] - 62:2, 72:2
**12:08** [1] - 35:10
**12:09** [1] - 35:21
**12th** [4] - 7:24, 8:1, 9:22, 9:23
**13** [1] - 24:12
**1327** [2] - 62:11, 63:15
**1328** [1] - 63:18
**1329** [1] - 63:18
**146** [1] - 40:18
**14th** [6] - 7:20, 7:22, 9:19, 9:22, 9:25, 49:16
**15** [2] - 25:7, 60:7
**16** [5] - 14:17, 52:10, 52:22, 54:23, 66:9
**18(a** [2] - 26:10, 26:17
**18th** [1] - 7:20
**1:20** [1] - 35:20
**1:25** [1] - 35:21
**1B3** [1] - 72:20
**1B7** [1] - 72:22
**1st** [2] - 4:6, 72:14

## 2

**2** [10] - 7:1, 7:25, 9:24, 28:21, 36:2, 36:6, 52:10, 52:22, 53:24, 54:23
**20(e** [1] - 28:10
**20-0283** [2] - 1:4, 2:5
**2016** [1] - 40:19
**2019** [4] - 58:4, 61:13, 73:21, 74:8

**2020** [3] - 48:2, 72:14, 74:7
**2021** [2] - 14:1, 38:25
**2022** [3] - 3:13, 13:11, 62:8
**2023** [3] - 1:9, 3:1, 79:14
**21201** [2] - 1:15, 1:18
**21st** [1] - 7:21
**22** [4] - 27:5, 61:13, 62:8
**2251** [2] - 43:1, 56:14
**2252** [1] - 43:1
**24** [2] - 27:17, 29:9
**25** [1] - 27:17
**25th** [2] - 7:21, 21:21
**26** [1] - 27:22
**27** [2] - 13:11, 27:23
**27th** [1] - 7:21
**28** [3] - 12:23, 27:25, 79:8
**28th** [4] - 9:1, 9:5, 9:15, 21:24
**29** [1] - 28:2
**29th** [5] - 9:2, 9:6, 9:15, 21:24, 49:19
**2:45** [1] - 7:4
**2:49** [1] - 78:25
**2nd** [2] - 49:19, 49:22

## 3

**3** [13] - 28:21, 50:5, 51:1, 53:24, 58:5, 58:8, 60:23, 61:11, 61:14, 61:20, 62:12, 62:21, 63:21, 63:23, 63:24, 64:18, 64:22, 64:24, 65:4, 67:6
**3's** [2] - 60:25, 61:5
**3-301** [1] - 39:22
**30** [1] - 28:5
**31** [2] - 3:1, 28:18
**31st** [1] - 4:6
**32** [1] - 29:3
**33** [1] - 29:5
**35** [1] - 29:13
**36** [1] - 1:14
**3:00** [4] - 7:9, 7:10, 50:2, 78:21

## 4

**4** [8] - 28:21, 58:5, 61:15, 63:22, 63:24, 64:19, 64:25
**4's** [1] - 63:24
**403** [4] - 51:3, 64:10, 67:15, 67:20
**404(b** [2] - 3:15, 50:7

**414** [8] - 3:5, 3:15, 5:8, 50:6, 67:20, 68:16, 77:23, 78:5
**46** [1] - 66:9
**4:00** [1] - 19:20
**4:30** [2] - 8:3, 18:16
**4th** [1] - 1:14

## 5

**5** [1] - 1:9
**5.5** [1] - 71:19
**5.8** [2] - 72:6, 72:9
**50** [1] - 35:25
**51** [1] - 41:17
**582** [1] - 39:1
**5:00** [2] - 8:3, 18:16

## 6

**61** [1] - 60:4

## 7

**753** [1] - 79:8
**79** [3] - 3:20, 51:11, 51:12
**7A** [1] - 1:10
**7th** [2] - 58:4, 61:2

## 8

**80** [2] - 20:24, 50:25
**843** [1] - 40:18
**88** [1] - 3:1
**8th** [1] - 61:2

## 9

**998** [1] - 39:1
**9:00** [1] - 8:2
**9:30** [1] - 18:15
**9th** [2] - 1:18, 79:14

## A

**a)** [2] - 28:19, 29:1
**a.m** [1] - 2:2
**Aberdeen** [1] - 74:23
**ability** [7] - 13:1, 13:2, 13:23, 13:24, 16:17, 45:14, 71:9
**able** [16] - 2:23, 4:16, 5:23, 6:2, 6:9, 10:18, 15:19, 17:24, 18:11, 22:8, 27:5, 35:1, 55:7, 62:4, 65:17, 78:18
**above-entitled** [1] - 79:10

**absolutely** [8] - 6:20, 6:21, 9:15, 10:8, 14:7, 36:20, 46:18, 71:13
**abuse** [13] - 38:21, 40:2, 40:8, 40:13, 40:20, 40:23, 40:25, 42:10, 46:3, 47:1, 48:14, 67:23
**abusive** [1] - 38:21
**accept** [1] - 27:1
**access** [13] - 13:18, 73:12, 73:22, 75:1, 75:11, 75:15, 75:17, 75:21, 76:3, 76:5, 76:8, 76:17, 77:7
**accommodate** [1] - 19:21
**accomplish** [2] - 49:24, 50:16
**accordance** [1] - 43:17
**according** [4] - 21:3, 21:13, 36:2, 70:10
**accordingly** [1] - 8:11
**account** [28] - 14:25, 52:15, 52:17, 52:19, 52:20, 53:1, 55:4, 56:9, 56:10, 56:16, 56:18, 56:25, 58:11, 58:12, 59:14, 59:16, 60:18, 61:4, 61:5, 63:14, 65:11, 65:23, 70:3, 70:5, 70:8, 70:15, 70:17, 78:14
**accounts** [2] - 52:5, 52:8, 55:12, 55:15, 55:16, 55:17, 60:20, 70:14
**accumulated** [2] - 55:14, 75:24
**accurate** [1] - 75:2
**acknowledge** [1] - 5:24
**act** [9] - 37:10, 39:22, 39:25, 40:7, 40:12, 42:16, 46:2, 46:3
**acted** [1] - 39:24
**acting** [1] - 40:20
**acts** [7] - 47:5, 47:6, 56:6, 61:14, 68:6, 68:7, 68:19
**actual** [1] - 55:9
**add** [9] - 8:23, 16:22, 21:24, 41:17, 66:15, 68:11, 68:14, 68:16
**added** [1] - 29:5
**addendum** [1] - 2:25
**adding** [1] - 8:1
**additional** [3] - 13:22,

16:4, 76:11
**address** [7] - 4:9, 11:16, 12:7, 16:1, 50:17, 56:12, 74:23
**addressed** [1] - 5:8
**addresses** [2] - 5:15, 52:16
**adjust** [2] - 8:10, 25:17
**administer** [1] - 19:24
**admissibility** [1] - 78:12
**admissible** [2] - 5:8, 64:15
**admit** [5] - 2:25, 3:4, 3:14, 42:12, 70:2
**admitted** [1] - 72:5
**admitting** [3] - 43:10, 67:13, 69:15
**admonishments** [1] - 35:5
**adults** [1] - 14:22
**advice** [1] - 8:12
**affect** [1] - 44:9
**affirmed** [1] - 37:23
**afford** [2] - 2:22, 77:13
**afternoon** [12] - 6:13, 6:17, 6:19, 6:25, 7:22, 8:4, 9:10, 10:1, 19:14, 19:20, 34:5, 45:12
**age** [2] - 14:23, 29:15
**agencies** [1] - 24:15
**agency** [4] - 24:9, 25:4, 25:12
**agent** [2] - 25:9, 25:11
**Agent** [3] - 1:21, 2:9, 62:3
**ages** [1] - 55:2
**aggravated** [2] - 38:21, 47:1
**ago** [2] - 10:14, 15:18
**agree** [4] - 24:22, 26:16, 27:6, 27:8, 29:10, 29:11, 30:6, 37:11, 37:12, 44:8, 48:21, 65:22
**agreed** [2] - 42:18, 42:19
**agreeing** [2] - 36:1, 44:14
**agrees** [1] - 36:11
**ahead** [7] - 2:17, 6:3, 8:10, 8:19, 8:21, 17:13, 18:7
**Aided** [1] - 1:24
**ailments** [1] - 19:4
**Alabama** [1] - 15:2
**Alfaro** [1] - 40:22
**allegation** [3] - 36:2,

36:6, 36:8
**allegations** [2] - 35:24, 49:12
**alleged** [1] - 64:16
**allow** [1] - 69:11
**allowing** [1] - 67:7
**allows** [2] - 46:2, 46:3
**Almendarez** [2] - 44:12, 44:18
**Almendarez-Torres** [2] - 44:12, 44:18
**almost** [2] - 37:10, 42:12
**Amazon** [3] - 61:5, 61:12, 62:10
**ambitious** [1] - 33:19
**AMERICA** [1] - 1:3
**America** [2] - 2:4, 21:17
**amount** [3] - 14:15, 15:4, 51:23
**ample** [3] - 17:9, 65:19, 65:20
**analogous** [1] - 48:4
**analysis** [5] - 28:11, 36:12, 47:11, 67:20, 68:16
**analyzing** [1] - 68:1
**anonymous** [2] - 56:12, 57:17
**answer** [3] - 4:25, 22:11, 28:15
**answered** [2] - 30:11
**anticipate** [4] - 18:12, 31:16, 72:3, 78:7
**anticipating** [1] - 20:8
**apologize** [1] - 61:9
**app** [1] - 52:24
**appear** [2] - 56:10, 56:16
**appeared** [1] - 74:1
**applicable** [1] - 36:12
**apply** [2] - 48:7, 51:25
**Apprendi** [3] - 44:9, 44:12, 44:18
**approach** [12] - 8:8, 36:12, 36:21, 38:23, 38:24, 39:2, 39:4, 41:19, 47:11, 48:19, 48:20, 49:3
**appropriate** [2] - 19:23, 45:16
**appropriately** [1] - 18:10
**aptly** [1] - 38:18
**arbitrary** [1] - 9:8
**area** [3] - 75:15, 75:20, 75:21
**areas** [1] - 77:12
**arguably** [1] - 68:8

**argue** [2] - 56:21, 64:16
**arguing** [1] - 44:22
**argument** [11] - 36:19, 36:24, 37:15, 39:12, 39:13, 42:20, 51:19, 61:21, 62:17, 62:18, 64:3
**arguments** [5] - 7:16, 41:18, 42:12, 51:24, 67:11
**arise** [1] - 4:2
**arisen** [1] - 78:1
**arises** [1] - 18:3
**arousal** [3] - 40:1, 40:4, 40:7
**arraignment** [1] - 7:2
**arrangements** [1] - 15:4
**arrest** [1] - 72:14
**arrested** [2] - 25:21, 72:15
**Article** [1] - 39:23
**aside** [1] - 65:24
**Assault** [1] - 36:23
**assault** [5] - 37:6, 37:10, 42:3, 42:21
**assaults** [2] - 46:15, 46:17
**assembly** [1] - 20:23
**asserted** [1] - 75:18
**assessing** [1] - 32:20
**Assistant** [2] - 2:7, 23:23
**associated** [1] - 70:5
**association** [1] - 47:23
**assumed** [1] - 65:7
**attached** [1] - 13:3
**attempt** [2] - 14:24, 74:25
**attendant** [1] - 66:5
**attended** [1] - 29:3
**attention** [2] - 22:23, 77:16
**ATTORNEY** [1] - 1:14
**Attorney** [1] - 2:8
**Attorney's** [1] - 23:25
**attorneys** [2] - 23:7, 30:3, 31:24
**Attorneys** [1] - 23:25
**August** [2] - 3:1, 16:6
**authenticity** [1] - 18:24
**automatically** [1] - 54:20
**availability** [3] - 6:8, 6:10, 6:14
**available** [9] - 6:12, 6:14, 6:16, 6:18,

13:21, 17:24, 18:20, 18:21, 34:5
**Avenue** [1] - 74:23
**aware** [4] - 8:15, 18:21, 20:11, 60:8

## B

**Bachmann** [1] - 79:5
**BACHMANN** [1] - 79:18
**background** [8] - 3:12, 11:25, 12:19, 28:13, 52:13, 53:16, 57:5, 60:14
**balancing** [1] - 51:9
**BALTIMORE** [1] - 1:10
**Baltimore** [7] - 1:15, 1:18, 5:10, 15:3, 24:12, 25:9, 25:10
**barely** [1] - 14:22
**based** [6] - 4:22, 8:13, 14:25, 34:11, 51:19, 77:6
**basement** [8] - 72:17, 73:3, 73:9, 74:16, 75:9, 75:15, 77:9
**basing** [1] - 48:7
**basis** [4] - 16:11, 16:19, 51:1, 66:4
**batting** [1] - 18:9
**bearing** [1] - 47:22
**bears** [1] - 45:13
**become** [1] - 60:16
**bedroom** [4] - 72:16, 72:17, 73:10, 74:18
**BEFORE** [1] - 1:8
**begin** [2] - 34:24, 35:4
**beginning** [1] - 7:19
**behalf** [2] - 2:6, 2:14
**behavior** [1] - 54:24
**behind** [8] - 2:8, 8:6, 8:10, 8:22, 47:7, 48:23, 48:24, 49:5
**belief** [2] - 26:24, 27:19
**believes** [4] - 5:7, 16:12, 72:24, 75:16
**belongs** [1] - 27:3
**bench** [6] - 22:20, 24:20, 28:21, 29:2, 30:25, 31:23
**benefit** [2] - 11:7, 20:18
**best** [1] - 51:8
**better** [1] - 58:9
**between** [8] - 25:2, 39:8, 43:9, 43:25, 44:4, 55:25, 61:14, 62:19

**beyond** [2] - 32:8, 44:11
**bit** [12] - 3:11, 4:17, 8:6, 11:24, 12:19, 16:15, 18:17, 38:10, 47:3, 52:13, 53:16, 61:1
**Blake** [2] - 13:14, 17:3
**box** [2] - 34:25, 35:2
**brain** [2] - 29:20, 31:8
**break** [6] - 8:3, 8:4, 10:22, 35:13, 50:10
**breaking** [1] - 9:23
**breaks** [2] - 8:4, 8:11
**Bredar** [1] - 42:18
**brief** [5] - 2:24, 3:25, 4:20, 49:15, 74:3
**briefed** [2] - 2:22, 78:1
**briefing** [3] - 42:13, 42:14, 50:5
**briefings** [1] - 78:16
**briefs** [1] - 38:3
**bring** [4] - 30:22, 47:23, 62:4, 77:16
**broader** [2] - 37:2, 47:20
**broadly** [2] - 47:4, 74:19
**brother** [4] - 61:15, 64:19, 68:6, 68:8
**brothers** [1] - 58:5
**brown** [3] - 60:15, 73:25, 74:4
**BUDLOW** [70] - 1:13, 2:3, 3:2, 3:7, 4:25, 6:20, 6:22, 7:6, 7:12, 9:4, 9:18, 9:21, 9:25, 10:3, 10:7, 10:9, 10:17, 12:5, 13:9, 18:2, 20:11, 20:16, 25:15, 26:8, 26:19, 27:11, 29:10, 30:18, 30:21, 31:3, 31:22, 33:14, 33:16, 33:25, 34:4, 34:9, 34:15, 34:18, 34:22, 35:8, 35:18, 36:4, 39:13, 41:15, 50:4, 51:15, 51:21, 52:3, 54:5, 54:10, 54:15, 54:17, 59:25, 61:10, 62:1, 62:17, 63:12, 67:18, 71:18, 71:23, 71:25, 72:2, 72:6, 72:8, 73:15, 73:18, 77:21, 77:25, 78:10, 78:22
**budlow** [1] - 30:4
**Budlow** [17] - 2:6, 4:21, 6:18, 8:16, 9:3, 12:12, 13:8, 17:21,

20:10, 25:14, 27:10, 33:24, 36:3, 41:14, 61:9, 67:17, 71:21
**build** [1] - 9:10
**bulk** [1] - 52:10
**bullet** [7] - 10:25, 11:2, 11:6, 23:2, 25:6, 27:17, 28:21
**bunch** [1] - 66:1
**burden** [2] - 57:12, 69:16
**Burkett** [1] - 46:11
**business** [2] - 23:13, 52:6
**buttocks** [1] - 63:25
**button** [3] - 12:8, 22:18, 53:24
**BY** [3] - 1:13, 1:16, 1:17

## C

**calendars** [1] - 7:23
**candid** [1] - 4:4
**cannot** [3] - 46:8, 46:25, 56:13
**capable** [2] - 32:5, 32:10
**capacity** [1] - 24:2
**care** [5] - 7:15, 34:13, 34:14, 35:7, 50:2
**carefully** [3] - 12:20, 13:6, 38:4
**carry** [5] - 18:18, 20:4, 49:19, 49:20, 49:23
**CASE** [1] - 1:4
**case** [78] - 2:24, 4:12, 5:2, 5:9, 5:13, 6:9, 8:9, 8:21, 10:10, 12:9, 12:21, 13:3, 13:15, 14:5, 14:7, 14:11, 14:13, 14:16, 15:10, 15:24, 16:14, 16:20, 17:2, 17:9, 17:10, 17:11, 18:19, 20:9, 21:16, 21:19, 22:2, 23:4, 23:9, 23:23, 24:11, 26:10, 26:11, 26:12, 26:14, 29:13, 31:13, 32:7, 32:25, 33:2, 35:4, 37:14, 38:16, 38:25, 40:15, 40:19, 42:9, 42:18, 42:23, 43:6, 43:20, 47:13, 48:10, 52:4, 52:22, 53:21, 56:2, 56:17, 57:12, 59:5, 60:6, 62:23, 66:22, 67:24, 68:2, 68:9, 69:1, 70:25,

71:8, 71:14, 72:24,
73:20
**cases** [11] - 31:19,
37:7, 38:3, 41:16,
42:23, 46:10, 46:13,
46:16, 62:25, 67:21,
67:22
**categorical** [14] -
36:11, 36:21, 37:3,
38:23, 39:2, 39:7,
41:19, 41:20, 41:24,
47:11, 47:20, 48:19,
48:20, 49:3
**categorically** [1] -
37:2
**caused** [2] - 63:6, 64:1
**central** [2] - 40:16,
40:23
**certain** [4] - 18:23,
22:1, 51:23, 61:17
**certainly** [16] - 2:22,
16:13, 18:6, 34:2,
42:23, 48:10, 52:21,
56:20, 66:22, 69:3,
70:6, 70:22, 75:22,
76:2, 76:11, 77:13
**CERTIFICATE** [1] -
79:1
**Certified** [1] - 79:5
**certify** [1] - 79:8
**cetera** [7] - 7:17,
18:16, 19:5, 24:10,
27:17, 32:14, 71:16
**challenge** [1] - 48:22
**challenged** [2] - 76:3,
76:5
**chambers** [1] - 6:13
**chance** [1] - 10:3
**change** [3] - 10:12,
44:17, 49:16
**changed** [2] - 14:8,
43:15
**changes** [2] - 15:23,
43:11
**characterization** [1] -
74:15
**charged** [7] - 21:18,
26:24, 36:15, 59:17,
62:6, 62:7, 74:1
**charges** [14] - 13:4,
25:21, 26:23, 27:16,
27:17, 32:14, 52:9,
64:8, 64:18, 64:20,
65:4, 66:11, 66:12,
68:13
**charging** [1] - 8:24
**Charles** [2] - 1:14,
1:18
**chart** [2] - 59:8, 69:7
**Chasanow** [1] - 42:14

**chat** [4] - 53:3, 53:9,
54:24, 55:4
**chats** [7] - 5:2, 54:23,
55:24, 56:1, 57:8,
58:25, 78:13
**checking** [1] - 7:2
**chief** [1] - 4:12
**child** [12] - 14:11,
14:13, 27:15, 27:16,
27:21, 60:20, 67:21,
67:22, 69:18, 74:1,
74:10, 78:17
**children** [8] - 73:4,
73:6, 73:7, 73:8,
75:1, 75:11
**choppy** [1] - 60:5
**circuit** [1] - 40:19
**Circuit** [10] - 38:25,
40:15, 41:1, 41:16,
42:19, 42:24, 43:25,
45:22, 46:21, 48:2
**circumstances** [3] -
12:6, 32:14, 54:17
**circumstantial** [4] -
14:9, 15:24, 52:16,
70:16
**cited** [1] - 42:18
**citizenship** [1] - 29:15
**City** [2] - 5:10, 25:10
**clean** [1] - 34:16
**clear** [13] - 16:19,
29:25, 31:13, 31:19,
40:15, 41:1, 45:22,
46:21, 46:22, 47:12,
56:2, 62:12, 63:5
**clear-cut** [1] - 31:13
**clearly** [12] - 29:23,
31:20, 56:4, 60:21,
61:19, 69:10, 70:20,
70:23, 71:5, 75:17,
75:21
**Clerk** [1] - 51:21
**CLERK** [2] - 7:1, 7:9
**clicking** [1] - 54:6
**client** [1] - 13:24
**clip** [1] - 74:3
**close** [7] - 24:7, 24:8,
24:13, 25:23, 26:1,
38:2, 49:16
**closer** [1] - 30:15
**coercion** [14] - 57:14,
58:16, 58:18, 59:12,
59:18, 59:21, 61:3,
62:20, 63:6, 63:25,
64:16, 64:18, 65:2,
65:4
**coercive** [1] - 70:18
**collate** [1] - 33:10
**collectively** [1] - 28:25
**COLLEEN** [1] - 1:13

**Colleen** [1] - 2:8
**combine** [2] - 25:5,
25:7
**combined** [3] - 25:4,
25:6, 29:3
**coming** [5] - 14:20,
20:25, 22:15, 50:4,
65:22
**commence** [1] - 19:14
**comment** [1] - 33:25
**comments** [1] - 77:8
**commit** [1] - 56:5
**committed** [1] - 26:4
**committing** [3] - 42:6,
42:7, 56:14
**common** [1] - 39:18
**communicated** [3] -
55:16, 70:7, 70:18
**communicating** [2] -
61:20, 69:13
**communication** [7] -
14:19, 15:11, 53:3,
55:25, 59:17, 62:19,
63:4
**communications** [1] -
56:7
**comparing** [1] - 70:4
**complain** [1] - 44:20
**complaint** [1] - 13:18
**complaints** [3] -
13:22, 13:23, 16:16
**completely** [2] - 26:2,
57:17
**complies** [1] - 44:25
**comprehension** [1] -
29:15
**Computer** [1] - 1:24
**computer** [4] - 28:7,
28:10, 28:13, 62:3
**Computer-Aided** [1] -
1:24
**computers** [2] - 28:5,
28:7
**conceded** [1] - 45:18
**concern** [4] - 47:22,
64:22, 64:23, 64:25
**concerned** [5] - 7:18,
17:17, 17:20, 20:7,
47:13
**concerning** [2] -
64:18, 65:4
**concerns** [2] - 18:2,
74:24
**conclude** [2] - 33:5,
50:3
**concluded** [1] - 78:25
**conclusion** [3] - 8:7,
10:19, 71:8
**conditions** [1] - 75:10
**conduct** [11] - 15:21,

48:4, 48:8, 49:4,
52:24, 53:10, 56:15,
57:13, 62:13, 63:7,
68:11
**conducts** [1] - 41:5
**conference** [4] - 2:6,
2:20, 8:24, 35:23
**Conference** [1] -
79:12
**CONFERENCE/
MOTIONS** [1] - 1:8
**conferred** [4] - 11:13,
12:14, 19:9, 19:16
**confirm** [2] - 10:5,
58:3
**conflict** [1] - 10:15
**conformance** [1] -
79:11
**conjunction** [1] -
69:22
**connected** [2] - 24:8,
73:5
**connection** [1] - 47:23
**consequences** [1] -
37:13
**consider** [3] - 3:19,
28:6, 46:21
**consideration** [1] -
21:17
**consisted** [1] - 61:13
**consistent** [2] - 60:3,
73:10
**constant** [1] - 14:18
**construed** [4] - 40:1,
40:3, 46:5, 46:8
**consult** [1] - 12:8
**consultation** [1] -
11:18
**contact** [3] - 38:22,
42:10
**contain** [1] - 57:5
**contained** [5] - 49:10,
49:12, 55:4, 70:8,
72:23
**contend** [1] - 58:13
**contention** [1] - 75:12
**context** [13] - 5:18,
41:19, 41:24, 42:25,
51:24, 57:24, 61:1,
61:16, 61:18, 67:21,
68:2, 70:25, 72:12
**continuance** [2] -
11:19, 16:25
**continue** [4] - 22:20,
22:25, 30:15, 62:13
**continues** [3] - 13:20,
58:13, 58:20
**contrary** [1] - 48:18
**control** [1] - 76:17
**controlled** [1] - 56:25

**controlling** [1] - 69:9
**conversation** [1] -
58:12
**conversations** [1] -
3:22
**convict** [1] - 37:5
**convicted** [7] - 25:22,
36:15, 36:22, 37:8,
41:22, 42:2, 48:17
**conviction** [12] -
36:12, 37:11, 37:22,
38:20, 39:3, 39:5,
44:13, 44:20, 44:23,
44:24, 47:21, 78:6
**convictions** [3] - 5:7,
5:19, 78:12
**convince** [1] - 32:19
**cop** [2] - 31:8, 31:9
**cops** [3] - 31:9, 31:10
**core** [3] - 45:24, 48:3,
48:8
**Corn** [2] - 1:21, 2:9
**Corn's** [1] - 62:3
**correct** [9] - 3:16,
26:18, 29:9, 29:16,
29:17, 36:3, 36:4,
39:12, 79:9
**correctly** [1] - 38:23
**correspond** [1] - 23:2
**counsel** [22] - 2:7, 7:7,
8:7, 8:12, 8:20,
11:13, 13:13, 14:2,
14:18, 15:10, 16:13,
17:8, 18:6, 18:9,
18:20, 18:23, 19:9,
19:16, 23:16, 31:6,
31:12, 33:6
**Counsel** [2] - 2:11,
12:14, 31:7
**Counsel's** [2] - 6:8,
6:14
**Count** [11] - 58:1,
58:2, 58:3, 61:2,
61:12, 62:6, 62:9,
63:20, 64:21
**count** [4] - 59:18,
59:19, 62:7, 63:17
**countdown** [1] - 53:24
**Counts** [2] - 64:22,
74:2
**counts** [9] - 57:13,
59:11, 61:18, 64:23,
64:25, 65:1, 65:2,
66:9, 74:10
**County** [3] - 15:3,
24:12, 25:9
**couple** [6] - 8:17,
53:7, 55:10, 56:8,
63:17, 78:1
**course** [12] - 2:10, 4:2,

8:13, 17:25, 18:20,
23:19, 33:5, 37:20,
44:2, 58:12, 59:17,
61:10
**Court** [40] - 3:21, 6:1,
9:4, 10:12, 16:25,
17:6, 18:4, 18:21,
20:6, 21:16, 38:18,
38:23, 39:1, 39:5,
40:11, 40:17, 41:18,
43:4, 43:12, 43:15,
43:16, 43:24, 44:2,
44:17, 45:12, 45:17,
47:20, 50:11, 51:5,
51:18, 57:11, 62:5,
66:18, 68:4, 68:21,
70:2, 70:5, 73:8,
79:7
**COURT** [119] - 1:1,
2:10, 2:15, 2:17, 3:6,
3:8, 3:14, 3:17, 4:4,
6:6, 6:18, 6:21, 6:23,
7:4, 7:8, 7:10, 7:13,
9:17, 9:20, 9:23,
10:2, 10:5, 10:8,
10:13, 10:18, 11:15,
11:20, 11:23, 12:2,
12:6, 12:15, 13:8,
16:21, 16:24, 18:8,
19:8, 19:21, 20:2,
20:13, 20:17, 21:23,
24:25, 25:5, 25:14,
25:16, 26:9, 26:17,
26:21, 27:9, 27:12,
28:18, 28:24, 29:8,
29:12, 29:18, 30:20,
31:1, 31:7, 32:1,
33:13, 33:17, 34:3,
34:7, 34:12, 34:16,
34:21, 34:24, 35:9,
35:19, 35:22, 36:5,
38:12, 39:10, 39:16,
41:11, 41:14, 45:1,
45:5, 47:2, 47:16,
48:10, 49:8, 50:15,
50:20, 50:22, 51:7,
51:12, 51:20, 52:2,
54:3, 54:9, 54:12,
54:16, 61:6, 61:9,
61:25, 62:16, 64:6,
65:12, 66:20, 66:25,
67:16, 70:1, 71:20,
71:24, 72:1, 72:4,
72:7, 74:11, 75:12,
76:21, 76:23, 77:3,
77:19, 77:24, 78:4,
78:20, 78:24, 79:18
**court** [6] - 7:24, 15:7,
20:25, 21:9, 26:10,
49:17
**Court's** [5] - 31:23,

43:5, 44:16, 58:2,
72:11
**courthouse** [2] -
14:20, 24:1
**Courtney** [1] - 2:12
**COURTNEY** [1] - 1:16
**courtroom** [6] - 20:23,
21:3, 21:9, 22:23,
22:24, 33:10
**Courtroom** [1] - 1:10
**courts** [2] - 40:21,
47:19
**Courts** [1] - 40:10
**cover** [2] - 10:25,
22:17
**covered** [1] - 78:8
**covers** [1] - 26:16
**created** [2] - 56:23,
69:18
**creates** [1] - 53:25
**creating** [1] - 56:14
**credibility** [1] - 32:20
**crime** [8] - 25:21,
25:22, 26:1, 26:3,
26:4, 32:23, 33:1,
41:3
**crimes** [4] - 41:25,
42:8, 56:15, 73:21
**criminal** [8] - 20:9,
25:23, 26:25, 37:10,
41:5, 41:22, 48:4,
48:8
**Criminal** [2] - 2:4,
39:22
**criminality** [1] - 48:25
**critical** [5] - 36:17,
45:24, 69:8, 69:14,
70:12
**cross** [1] - 8:14
**cross-examination** [1]
- 8:14
**CRR** [1] - 79:18
**cumulative** [7] -
64:11, 65:25, 74:21,
75:9, 76:8, 76:12,
76:14
**cumulativeness** [1] -
77:6
**current** [2] - 9:6, 37:21
**custodian** [1] - 18:25
**cut** [1] - 31:13

# D

**d)** [1] - 28:25
**dad** [1] - 31:9
**date** [4] - 6:25, 17:4,
17:6, 58:1
**Dated** [1] - 79:14
**dated** [1] - 3:1

**dates** [1] - 49:23
**daughter** [2] - 75:4,
75:6
**days** [9] - 4:15, 7:19,
8:16, 16:5, 21:24,
34:8, 49:25, 61:10
**deadline** [1] - 20:5
**deal** [4] - 50:8, 50:10,
77:25, 78:5
**dealing** [1] - 27:18
**deals** [5] - 25:20, 27:1,
27:12, 27:15
**dealt** [1] - 46:13
**debris** [1] - 77:9
**decide** [1] - 43:9
**decided** [1] - 38:14
**decides** [1] - 43:15
**deciding** [1] - 13:7
**decision** [10] - 37:17,
37:19, 43:4, 43:13,
44:16, 44:19, 45:10,
45:17, 48:2, 71:14
**deep** [1] - 57:10
**Defendant** [2] - 1:6,
11:13
**defendant** [65] - 5:3,
5:7, 5:14, 5:16,
13:19, 14:3, 14:10,
15:8, 15:20, 15:25,
16:7, 16:17, 17:1,
19:9, 19:16, 26:10,
26:14, 32:9, 32:10,
39:24, 41:4, 41:22,
42:2, 44:19, 52:17,
53:1, 56:18, 56:23,
56:25, 57:7, 58:13,
58:17, 59:3, 59:14,
59:20, 60:18, 60:21,
60:23, 61:4, 61:11,
61:16, 61:19, 62:14,
62:20, 62:21, 63:4,
63:14, 65:21, 68:5,
68:7, 69:6, 69:10,
69:13, 69:15, 69:19,
70:5, 70:11, 70:14,
72:15, 72:25, 73:2,
73:12, 73:20, 74:9
**DEFENDANT** [2] -
1:16, 2:16
**defendant's** [17] - 3:4,
15:16, 15:22, 40:5,
56:16, 57:5, 57:15,
57:16, 58:22, 59:7,
59:11, 59:16, 60:4,
60:19, 66:2, 72:10,
73:4
**defendants** [1] - 13:21
**defender** [1] - 23:22
**Defender** [1] - 1:17
**Defender's** [1] - 23:24

**Defenders** [1] - 23:23
**Defense** [2] - 19:9,
19:16
**defense** [31] - 5:6,
5:17, 8:12, 13:17,
13:22, 13:24, 14:2,
14:18, 16:19, 18:6,
26:5, 26:20, 28:17,
28:23, 35:16, 42:1,
42:20, 44:14, 49:10,
57:20, 57:22, 60:8,
61:22, 62:23, 62:24,
63:1, 63:2, 68:22,
69:5, 78:15
**defense's** [3] - 5:18,
43:7, 43:9
**defenses** [1] - 76:3
**defer** [1] - 50:11
**definition** [3] - 39:21,
40:11, 40:19
**Degree** [1] - 36:23
**degree** [13] - 37:1,
37:6, 37:8, 39:8,
39:21, 41:7, 42:6,
42:7, 42:15, 44:24,
46:7, 67:25, 68:12
**delayed** [1] - 4:22
**deleted** [1] - 55:24
**demonstrate** [1] -
30:10
**demonstrated** [1] -
77:6
**denied** [1] - 49:12
**deny** [2] - 17:13, 77:4
**department** [1] - 24:9
**Department** [4] - 5:11,
24:8, 24:12, 25:11
**depict** [2] - 58:4,
63:18
**depicted** [3] - 55:17,
75:17, 75:19
**depicting** [1] - 63:20
**depicts** [2] - 67:3,
74:15
**depth** [2] - 22:16,
24:19
**deputy** [3] - 20:23,
22:23, 33:10
**describe** [1] - 63:19
**described** [2] - 31:4,
63:20
**description** [1] - 55:20
**designated** [1] - 4:18
**designed** [2] - 48:15,
48:25
**detail** [1] - 63:19
**details** [1] - 72:23
**detective** [1] - 5:11
**determination** [3] -
32:6, 37:17, 51:9

**determine** [1] - 39:2
**device** [1] - 53:13
**devices** [3] - 57:7,
72:18, 73:13
**diabetic** [1] - 19:12
**different** [3] - 52:4,
53:13, 76:16
**differently** [1] - 3:3
**difficult** [1] - 66:7
**difficulty** [1] - 27:3
**dig** [2] - 6:1, 13:20
**digest** [4] - 4:7, 6:10,
6:24
**digital** [2] - 53:13,
72:18
**Dillsworth** [1] - 46:11
**dire** [17] - 10:24, 11:1,
11:4, 17:15, 17:16,
20:19, 20:20, 21:13,
22:15, 22:21, 30:15,
31:17, 32:1, 33:4,
33:23, 33:24, 71:12
**direct** [2] - 15:25,
70:14
**directly** [4] - 31:25,
47:6, 48:4, 50:7
**dirty** [1] - 58:9
**disagree** [3] - 43:8,
49:6, 74:14
**disagreed** [3] - 42:5,
42:14, 42:15
**disappointed** [1] -
37:22
**discomfort** [1] - 66:13
**discovered** [1] - 16:3
**discovery** [14] - 12:20,
12:22, 13:1, 13:6,
13:13, 13:18, 13:23,
15:12, 16:16, 17:4,
17:10, 17:17, 17:18
**discretion** [1] - 65:15
**discuss** [6] - 4:16, 6:2,
12:17, 12:25, 39:14,
77:1
**discussed** [7] - 5:17,
18:23, 50:9, 55:9,
61:24, 72:19, 77:21
**discussing** [1] -
59:16, 62:9, 78:2
**Discussion** [4] - 7:11,
50:21, 61:8, 76:22
**discussion** [3] -
17:17, 23:5, 61:16
**discussions** [1] - 14:5
**disjunctive** [1] - 40:11
**dismiss** [3] - 35:24,
36:2, 49:11
**dismissed** [1] - 36:6
**disparage** [1] - 74:25
**dispatch** [1] - 10:21

displayed [1] - 53:22
disposition [1] - 37:14
dispute [5] - 24:14,
24:18, 39:10, 39:11,
43:16
disregard [1] - 28:8
distinction [1] - 25:2
distinguished [1] -
41:16
distress [1] - 66:13
DISTRICT [3] - 1:1,
1:1, 1:9
district [2] - 42:24,
44:3
District [4] - 21:16,
79:7
disturbed [1] - 68:4
disturbing [3] - 67:25,
68:9, 68:13
DIVISION [1] - 1:2
docketed [2] - 50:24,
51:11
document [1] - 41:17
documents [2] - 18:24
Doe [32] - 15:14, 51:1,
52:10, 55:5, 58:5,
58:8, 60:23, 60:25,
61:5, 61:11, 61:14,
61:15, 61:20, 62:12,
62:21, 63:21, 63:22,
63:23, 63:24, 64:18,
64:19, 64:22, 64:23,
64:25, 65:4, 67:5
Doe's [1] - 15:14
done [7] - 32:8, 32:9,
40:1, 40:7, 40:12,
40:13, 59:4
door [1] - 16:8
double [1] - 10:13
doubt [2] - 32:8, 44:11
down [11] - 13:14,
20:23, 28:10, 31:21,
43:14, 44:6, 53:23,
54:1, 62:4, 66:1,
78:17
dozens [1] - 52:21
driven [1] - 71:15
due [2] - 8:20, 35:12
duplicative [4] - 11:5,
24:22, 26:11, 27:6
during [11] - 4:2,
15:21, 17:24, 19:24,
23:19, 57:25, 58:11,
59:17, 73:22, 74:17,
77:10

E

e-mail [2] - 10:21,
52:15

e-mails [1] - 13:13
early [3] - 5:9, 16:5,
19:13
earpiece [2] - 22:22,
22:25
easily [1] - 57:16
ECF [5] - 3:1, 3:19,
35:25, 50:25, 51:11
education [1] - 28:13
effect [2] - 58:14, 71:6
efficiency [1] - 8:20
eight [2] - 62:7, 62:11
either [12] - 3:7, 8:11,
23:4, 23:13, 31:20,
31:25, 40:2, 40:9,
40:14, 54:17, 54:20,
55:25
ejaculating [1] - 63:21
electronic [1] - 52:7
element [9] - 36:17,
37:4, 37:9, 40:16,
40:21, 41:2, 45:24,
48:11, 48:12
elements [3] - 41:24,
47:5, 70:12
Eleven [4] - 61:12,
62:6, 63:20
eliminate [1] - 29:8
Elmo [1] - 51:22
emotion [2] - 67:25,
71:15
emotional [3] - 66:6,
66:14, 67:6
emotions [1] - 66:13
employed [4] - 24:1,
24:7, 24:14, 38:24
employee [6] - 25:3,
25:8, 25:9, 25:10,
25:11
employees [2] - 23:24,
23:25
employing [1] - 39:4
encrypted [1] - 15:17
end [6] - 8:18, 18:17,
20:25, 22:25, 59:25,
71:15
ending [2] - 7:24, 9:15
ends [1] - 54:1
enforced [3] - 27:19,
27:20
enforcement [6] -
24:9, 24:15, 25:3,
25:8, 25:12, 25:20
engage [1] - 41:12
engaged [2] - 13:13,
15:21
engaging [2] - 52:23,
54:23
English [1] - 29:15
enhance [2] - 42:17,

48:15
enhanced [3] - 42:9,
48:6, 48:7
enhancements [1] -
42:25
ensure [1] - 22:8
entertain [3] - 31:11,
69:2, 69:3
enticement [14] -
57:15, 58:16, 58:19,
59:12, 59:18, 59:21,
61:4, 62:21, 63:6,
64:1, 64:17, 64:18,
65:2, 65:4
enticing [1] - 56:5
entire [2] - 48:18,
63:13
entitled [2] - 66:22,
79:10
enumerated [1] -
36:18
equipment [2] - 18:20,
18:21
equivalent [1] - 68:25
error [1] - 43:11
especially [1] - 51:9
ESQUIRE [4] - 1:13,
1:13, 1:16, 1:17
essence [2] - 36:10,
45:8
essential [2] - 36:20,
37:4
essentially [2] - 43:10,
58:8
establish [3] - 65:6,
66:2, 76:17
established [1] -
70:13
establishing [2] -
70:16, 76:6
estimate [5] - 8:16,
9:6, 9:12, 34:22,
78:6
estimates [1] - 34:11
et [7] - 7:17, 18:16,
19:5, 24:10, 27:17,
32:14, 71:16
evaluate [1] - 75:13
event [3] - 8:5, 8:23,
18:11
evidence [76] - 3:1,
3:15, 3:23, 4:11,
4:14, 4:21, 5:5, 6:4,
13:14, 13:20, 13:22,
14:4, 14:6, 14:9,
15:15, 15:25, 16:3,
16:4, 18:22, 26:23,
28:9, 32:6, 32:7,
32:12, 40:7, 52:3,
52:11, 52:16, 52:18,

55:14, 57:1, 58:16,
59:5, 59:20, 64:12,
64:13, 64:20, 65:3,
65:9, 65:13, 65:14,
65:16, 65:18, 65:19,
65:25, 66:1, 66:10,
67:7, 67:14, 68:10,
68:18, 68:23, 68:24,
69:22, 69:25, 70:16,
70:20, 71:4, 71:11,
72:23, 74:21, 74:22,
75:8, 75:10, 75:14,
75:17, 76:11, 76:12,
76:14, 76:25, 77:5,
77:15
Evidence [2] - 51:3,
64:10
evidentiary [3] - 8:25,
67:14, 78:3
exact [2] - 42:11,
42:22
exactly [1] - 60:8
examination [2] -
8:14, 22:21
examine [1] - 71:10
examiner [1] - 28:11
examiners [1] - 15:20
example [5] - 5:2, 6:8,
20:3, 22:9, 29:20,
30:9, 32:23, 43:18,
54:4
except [1] - 54:4
exception [3] - 44:9,
44:11, 44:18
exchanged [2] -
13:14, 17:5
exclude [3] - 5:6,
50:25, 77:5
excluded [1] - 51:2,
64:9, 67:15
excluding [1] - 21:20
exclusively [2] - 32:6,
71:14
excuse [1] - 61:9
executed [1] - 72:14
exhibit [5] - 15:15,
59:15, 71:20, 71:21,
72:21
Exhibit [6] - 57:23,
59:9, 61:21, 62:2,
71:19, 72:9
exhibits [3] - 15:16,
17:20, 72:4
exists [1] - 10:15
expanded [1] - 37:2
expect [3] - 9:16,
20:21, 31:15
expected [1] - 21:19
experience [3] - 25:7,
28:13, 28:16

expert [1] - 28:6
expertise [2] - 19:24,
28:8
explain [1] - 63:25
explicit [2] - 52:23,
53:10
exploitation [14] -
14:11, 14:13, 52:10,
57:13, 57:14, 60:20,
60:25, 67:21, 67:22,
68:19, 69:18, 74:2,
74:10, 78:17
exploiting [5] - 53:5,
56:4, 60:23, 69:20,
69:23
exploitive [1] - 54:24
exposed [1] - 63:21
exposure [2] - 38:16,
45:20
expound [1] - 38:11
extend [2] - 49:18,
49:19
extension [1] - 57:23
extensive [1] - 71:7
extensively [1] - 16:14
extent [3] - 46:7,
49:22, 77:22
extra [1] - 18:11
extremely [1] - 67:24

F

F.3d [2] - 39:1, 40:18
face [1] - 15:22
Facebook [3] - 5:2,
57:9, 78:12
faces [4] - 38:17,
45:10, 45:14, 64:9
facilitated [1] - 20:3
facsimile [1] - 67:23
fact [11] - 5:16, 14:10,
14:11, 22:10, 39:6,
41:8, 44:13, 48:5,
68:5, 68:10, 75:2
factors [1] - 72:25
facts [4] - 44:9, 56:22,
71:14, 73:19
fair [9] - 28:1, 28:3,
31:11, 31:20, 32:16,
32:17, 32:22, 33:2,
68:10
fairly [2] - 4:13, 61:19
fall [2] - 3:13, 13:13
familiar [4] - 24:3,
28:7, 53:20, 60:16
family [7] - 14:19,
14:24, 22:9, 24:6,
24:13, 25:22, 26:1
fantastic [1] - 78:20
far [11] - 6:7, 7:18,

17:17, 17:20, 36:20, 37:14, 41:9, 47:12, 48:23, 64:11, 67:12
**father** [1] - 31:8
**favor** [1] - 44:2
**FBI** [5] - 1:21, 2:8, 24:11, 25:9, 72:20
**feature** [3] - 53:19, 53:22, 54:7
**federal** [20] - 26:10, 27:13, 36:18, 37:5, 38:20, 39:3, 39:6, 39:9, 40:18, 40:19, 41:2, 41:6, 41:9, 41:10, 41:23, 45:23, 45:25, 46:9, 46:22, 48:8
**Federal** [3] - 1:17, 51:3, 64:10
**FEDERAL** [1] - 79:18
**feelings** [1] - 28:2
**few** [2] - 4:15, 50:9
**Fifteen** [1] - 64:21, 64:23, 64:24
**file** [9] - 3:9, 16:1, 57:22, 62:2, 63:12, 63:13, 63:14, 63:16, 78:13
**filed** [3] - 3:12, 3:19, 17:1
**files** [3] - 56:23, 63:18, 74:1
**filing** [9] - 2:24, 2:25, 3:19, 4:5, 5:25, 41:17, 61:22, 65:7, 67:20
**filings** [1] - 44:16
**fine** [8] - 5:5, 7:4, 7:10, 25:13, 34:12, 35:16, 50:18, 78:4
**fines** [1] - 13:19
**finger** [15] - 58:23, 58:25, 59:1, 59:2, 59:6, 59:19, 60:4, 67:3, 67:4, 69:10, 69:11, 69:19, 69:22, 70:9, 70:11
**finish** [1] - 9:14
**finishing** [1] - 9:7
**fire** [1] - 24:9
**first** [25] - 5:5, 7:18, 12:1, 12:3, 21:7, 23:1, 28:19, 29:22, 30:21, 34:17, 34:25, 39:7, 45:6, 45:22, 47:5, 53:14, 57:21, 62:11, 62:17, 64:15, 66:19, 67:1, 74:13, 75:7
**fit** [1] - 36:20

**five** [1] - 76:15
**Five** [2] - 58:1
**flexibility** [1] - 10:4
**Floor** [2] - 1:14, 1:18
**fluid** [1] - 33:3
**focus** [1] - 57:18
**follow** [5] - 16:4, 21:13, 27:6, 31:24, 71:13
**follow-up** [2] - 16:4, 31:24
**followed** [1] - 16:5
**following** [3] - 9:1, 61:3, 62:9
**footnote** [1] - 36:3
**FOR** [3] - 1:1, 1:12, 1:16
**foregoing** [1] - 79:8
**forensic** [2] - 15:19, 28:11
**forensics** [1] - 28:14
**forgot** [1] - 42:22
**form** [3] - 5:9, 19:19, 61:5
**formal** [1] - 26:22
**format** [1] - 79:11
**formatting** [1] - 7:17
**forth** [4] - 30:24, 70:16, 75:14, 75:16
**forward** [4] - 4:24, 12:11, 35:23, 45:10
**four** [2] - 41:5, 58:3
**Fourth** [9] - 38:25, 40:15, 41:1, 41:15, 42:24, 43:18, 43:25, 45:22, 46:20
**framework** [1] - 38:5
**FRANCIK** [52] - 1:16, 2:12, 3:11, 3:16, 3:18, 6:16, 11:17, 11:21, 11:24, 12:13, 12:16, 16:23, 19:6, 19:11, 19:18, 20:1, 20:15, 24:23, 25:1, 25:13, 26:7, 26:15, 26:20, 27:8, 28:17, 28:23, 29:7, 29:11, 29:17, 33:15, 35:16, 38:8, 38:13, 39:19, 41:13, 45:3, 45:6, 47:15, 47:18, 49:7, 50:18, 50:23, 51:10, 64:7, 66:4, 66:24, 67:1, 74:13, 76:19, 76:24, 77:18, 78:23
**Francik** [20] - 2:13, 2:23, 3:8, 11:15, 12:15, 16:22, 19:2, 24:17, 24:22, 26:6, 36:9, 38:5, 39:17,

45:2, 50:17, 61:24, 64:4, 64:6, 74:12, 76:23
**Friday** [2] - 3:21, 9:6
**Fridays** [1] - 21:20
**friend** [2] - 24:7, 73:5
**friend's** [1] - 73:7
**friends** [5] - 22:9, 24:8, 24:13, 25:23, 26:1
**Frye** [1] - 16:8
**fuller** [1] - 45:19
**fully** [2] - 2:21, 62:23
**fulsome** [1] - 5:25
**function** [1] - 54:13
**funny** [1] - 8:22
**furniture** [8] - 57:6, 60:15, 60:17, 60:22, 73:25, 74:4, 74:5, 74:6

## G

**gallery** [1] - 21:3
**Gary** [4] - 2:4, 2:14, 21:17, 23:12
**GARY** [1] - 1:5
**general** [9] - 10:25, 14:7, 35:5, 58:15, 68:13
**generally** [2] - 8:2, 56:2
**generic** [15] - 38:20, 39:3, 39:6, 39:9, 40:17, 40:19, 41:2, 41:6, 41:9, 41:10, 45:23, 45:25, 46:9, 46:22, 48:8
**generous** [1] - 8:16
**genitals** [5] - 42:4, 42:21, 46:14, 46:17, 63:21
**gentlemen** [2] - 23:11, 35:3
**George** [1] - 21:15
**GEORGE** [1] - 1:8
**gist** [1] - 32:22
**given** [6] - 13:3, 33:7, 38:15, 43:7, 43:9, 51:9
**GLR** [2] - 1:4, 2:5
**GMCboy** [5] - 55:13, 55:19, 56:1, 56:3, 57:2
**goals** [1] - 48:24
**gotcha** [2] - 54:16, 72:4
**Government** [76] - 2:7, 2:24, 3:12, 3:22, 5:7, 6:4, 8:9, 12:1,

12:2, 12:3, 12:8, 12:17, 12:18, 13:9, 13:20, 14:3, 14:4, 14:16, 15:18, 15:19, 16:3, 16:12, 17:2, 20:11, 23:15, 23:16, 26:8, 26:19, 32:7, 32:8, 32:9, 34:1, 34:4, 36:1, 37:12, 43:2, 43:7, 44:15, 45:12, 45:18, 51:4, 52:16, 55:14, 56:17, 56:22, 56:24, 58:18, 59:3, 59:13, 60:9, 60:19, 64:14, 64:19, 64:21, 65:1, 65:7, 65:9, 65:13, 66:8, 66:17, 67:2, 67:7, 67:13, 69:16, 70:10, 70:15, 72:24, 73:1, 74:21, 75:3, 75:14, 75:16, 75:19, 76:6, 76:10, 77:2
**Government's** [31] - 3:4, 3:20, 4:11, 4:24, 5:10, 5:23, 34:9, 37:15, 41:17, 42:4, 42:13, 44:2, 45:8, 45:21, 49:10, 51:12, 51:17, 57:12, 57:18, 57:23, 58:15, 59:9, 62:1, 62:18, 63:8, 64:3, 71:18, 72:9, 72:12, 74:15, 75:4
**grand** [2] - 26:21, 29:5
**granted** [2] - 20:17, 36:5
**graphic** [2] - 27:18, 27:25
**grapple** [1] - 66:12
**gratification** [19] - 36:16, 36:17, 36:19, 36:22, 37:4, 37:9, 40:2, 40:4, 40:8, 40:16, 40:21, 41:3, 41:4, 41:8, 45:24, 46:2, 46:5, 46:14, 46:18
**gratify** [1] - 40:22
**great** [1] - 34:15
**Grimm** [4] - 37:17, 42:11, 48:11, 49:4
**Grimm's** [1] - 38:4
**ground** [2] - 39:18, 78:8
**grounds** [1] - 37:23
**group** [1] - 22:6
**guess** [9] - 4:20, 4:25, 32:11, 35:24, 47:16, 49:6, 50:11, 51:16,

52:13
**guidance** [1] - 38:1
**guilt** [1] - 69:15
**guilty** [4] - 26:24, 32:9, 32:10, 69:1

## H

**half** [2] - 10:22, 15:18
**half-day** [1] - 10:22
**hand** [5] - 21:11, 22:23, 56:9, 59:7, 60:1
**handle** [1] - 50:3
**handled** [1] - 50:1
**handling** [2] - 20:9, 27:4
**hands** [2] - 59:3, 67:23
**hands-on** [1] - 67:23
**hang** [1] - 61:6
**haphazardly** [1] - 4:19
**happy** [2] - 11:25, 51:18
**hard** [4] - 75:23, 75:25, 76:13, 77:11
**Hardin** [2] - 38:25, 47:20
**hardship** [6] - 29:19, 29:23, 30:1, 30:7, 30:10, 30:16
**harshly** [1] - 27:13
**head** [4] - 30:5, 58:10, 58:14, 72:21
**hear** [11] - 29:19, 31:7, 31:14, 44:4, 50:12, 51:25, 55:1, 65:17, 68:10, 73:3, 77:17
**heard** [3] - 28:10, 44:19, 53:4
**hearing** [9] - 2:20, 10:19, 13:17, 16:8, 45:7, 55:10, 67:9, 71:15, 78:8
**HEARING** [1] - 1:8
**held** [11] - 7:11, 40:10, 40:17, 40:22, 42:25, 47:19, 50:21, 61:8, 76:22, 79:10
**helpful** [2] - 10:7, 22:1
**helps** [1] - 63:25
**hereby** [1] - 79:7
**hesitancy** [1] - 32:13
**hesitation** [1] - 32:18
**highly** [9] - 16:13, 66:6, 66:14, 67:6, 69:21, 71:1, 71:2, 72:24, 75:8
**hinder** [1] - 4:23
**hold** [3] - 14:12,

42:23, 45:12
**home** [2] - 72:15, 73:2
**honest** [1] - 10:16
**Honor** [102] - 2:3, 2:5,
2:12, 3:2, 3:12, 3:16,
4:25, 7:6, 7:12,
11:17, 12:16, 12:22,
13:5, 13:9, 13:15,
14:1, 16:23, 19:7,
19:11, 19:18, 20:12,
20:15, 21:22, 24:24,
25:1, 25:13, 25:15,
26:7, 26:15, 26:16,
26:19, 27:8, 29:10,
29:11, 30:18, 31:25,
33:12, 35:17, 36:4,
38:8, 38:9, 38:13,
39:4, 39:7, 39:19,
39:20, 40:10, 41:13,
41:15, 45:4, 45:6,
45:15, 45:21, 46:6,
46:10, 46:16, 46:20,
47:18, 49:7, 50:4,
50:18, 50:19, 50:23,
51:2, 51:10, 51:23,
52:3, 53:19, 58:3,
59:25, 61:23, 62:2,
62:5, 62:22, 63:12,
64:3, 64:7, 64:17,
65:5, 65:7, 66:5,
66:8, 66:14, 66:24,
67:11, 67:18, 71:18,
71:23, 73:16, 73:24,
74:13, 74:14, 74:20,
74:24, 75:7, 76:20,
76:24, 77:18, 77:21,
78:10, 78:22
**HONORABLE** [1] - 1:8
**hope** [2] - 52:3, 59:22
**hoped** [1] - 9:14
**hopefully** [5] - 9:7,
9:18, 21:4, 31:22,
51:25
**hoping** [3] - 7:14,
33:18
**hour** [2] - 8:1, 35:13
**hours** [1] - 63:17
**house** [1] - 72:15
**hundreds** [2] - 52:21,
54:21
**hybrid** [1] - 5:1

**I**

**iCloud** [29] - 52:15,
53:1, 54:19, 54:21,
55:3, 55:17, 56:16,
56:18, 57:3, 57:4,
57:15, 58:22, 59:11,
59:12, 59:16, 60:18,

60:19, 63:14, 65:11,
65:22, 69:7, 69:9,
69:23, 70:4, 72:10,
72:12, 78:14
**ID** [1] - 69:24
**idea** [5] - 9:3, 16:7,
20:20, 21:5, 69:8
**ideally** [1] - 34:25
**identical** [2] - 42:12,
42:14
**identification** [1] -
68:23
**identified** [4] - 55:2,
57:21, 61:21, 72:16
**identify** [3] - 14:25,
21:18, 55:8
**identifying** [1] - 5:13
**identity** [9] - 59:20,
61:20, 65:6, 65:8,
66:3, 67:8, 69:2,
70:17, 70:21
**II** [1] - 1:18
**III** [2] - 1:8, 21:15
**images** [4] - 27:25,
56:19, 56:20, 67:25
**img_1150.mov** [2] -
57:24, 59:10
**img_1298** [1] - 71:19
**img_1298.mov** [1] -
72:10
**img_1327.mov** [1] -
62:2
**immediate** [4] - 24:6,
24:13, 25:22, 25:25
**impartial** [8] - 28:1,
28:4, 31:11, 31:20,
32:16, 32:17, 32:22,
33:2
**implicit** [2] - 5:15,
68:12
**implies** [1] - 75:22
**implying** [1] - 77:11
**importance** [1] - 38:15
**important** [7] - 4:10,
22:6, 22:10, 40:8,
58:16, 60:10, 69:12
**importantly** [2] - 8:8,
74:8
**impossibility** [1] -
29:21
**IN** [1] - 1:1
**in-depth** [1] - 24:19
**inadmissible** [1] -
71:3
**incarcerated** [2] -
13:1, 14:10
**including** [5] - 5:13,
8:5, 19:19, 25:8,
57:14
**incredibly** [2] - 59:20,

69:24
**indeed** [4] - 17:10,
37:7, 49:1, 49:2
**independently** [1] -
61:18
**indicated** [6] - 16:16,
17:1, 17:8, 17:22,
18:15, 49:4
**indicates** [2] - 23:8,
70:6
**indication** [2] - 17:18,
62:25
**indictment** [10] -
14:12, 14:17, 15:22,
26:22, 26:23, 55:2,
57:4, 63:20, 73:23
**individual** [2] - 22:21,
30:22
**individual's** [1] -
42:21
**individually** [2] - 22:5,
22:15
**individuals** [2] -
23:18, 23:21
**indulgence** [2] - 58:2,
72:11
**information** [8] - 5:13,
11:25, 12:19, 22:1,
55:8, 56:11, 71:1,
76:9
**informed** [1] - 16:2
**inherent** [1] - 67:24
**initial** [1] - 3:12
**injustice** [1] - 16:10
**innocence** [1] - 27:2
**inquire** [1] - 9:18
**inserting** [1] - 63:22,
63:23
**Instagram** [26] -
52:24, 53:9, 55:6,
55:8, 55:12, 55:18,
55:21, 55:22, 55:23,
56:3, 56:9, 56:10,
56:25, 57:17, 58:11,
58:12, 59:13, 59:14,
69:7, 69:9, 70:3,
70:7, 70:14, 70:15,
70:17, 78:14
**instead** [1] - 54:12
**instructed** [1] - 68:18
**instructions** [4] -
27:5, 54:25, 71:7,
71:13
**insulin** [2] - 19:12,
19:19
**intends** [3] - 3:23,
56:24, 70:16
**intent** [2] - 40:5, 40:22
**intentions** [1] - 67:13
**intents** [1] - 56:11

**interacting** [1] - 53:2
**internet** [2] - 28:5,
52:7
**interpret** [1] - 71:10
**interpretation** [1] -
47:14
**interrupt** [2] - 18:5,
61:7
**introduce** [7] - 3:23,
21:4, 64:19, 65:8,
65:10, 67:7, 74:22
**introduced** [1] - 77:1
**introduction** [2] -
57:19, 74:24
**investigated** [1] -
24:11
**investigation** [1] -
25:24
**investigators** [1] -
55:7
**invited** [1] - 16:3
**involve** [2] - 67:24,
78:17
**involved** [3] - 15:6,
24:14, 53:9
**involves** [1] - 48:11
**involving** [1] - 67:22
**IP** [1] - 56:12
**iPad** [2] - 72:22, 72:23
**iPhone** [5] - 53:18,
53:19, 53:21, 53:23,
54:19
**irrelevant** [1] - 64:8
**issue** [16] - 4:13, 8:25,
38:14, 38:18, 38:19,
43:2, 43:3, 44:20,
45:13, 45:17, 45:18,
50:23, 73:19, 74:19,
76:25, 77:1
**issues** [15] - 4:1,
15:12, 17:21, 17:22,
17:23, 17:24, 18:3,
20:6, 20:9, 50:7,
77:22, 78:3, 78:11,
78:19
**items** [1] - 16:5
**itself** [1] - 69:12

**J**

**James** [1] - 23:23
**Jill** [1] - 6:13
**John** [40] - 14:17,
15:14, 51:1, 52:10,
52:22, 54:23, 55:5,
55:16, 55:25, 58:5,
58:8, 60:23, 60:25,
61:4, 61:11, 61:14,
61:15, 61:20, 62:12,
62:21, 63:20, 63:22,

63:23, 63:24, 64:18,
64:19, 64:22, 64:23,
64:25, 65:4, 66:9,
66:20, 67:5
**join** [2] - 8:12, 20:16
**joining** [1] - 2:7
**joint** [1] - 17:16
**JONES** [1] - 1:5
**Jones** [35] - 2:4, 2:14,
2:15, 11:18, 12:19,
12:25, 13:5, 17:9,
19:3, 19:11, 20:20,
20:22, 21:18, 23:10,
23:11, 23:12, 23:14,
27:1, 32:17, 35:12,
37:14, 45:9, 45:19,
64:9, 65:9, 65:10,
74:16, 74:17, 74:20,
74:22, 75:1, 75:3,
75:8, 75:17, 75:18
**Jones's** [14] - 11:7,
20:18, 38:16, 38:19,
39:5, 45:14, 64:16,
65:6, 65:8, 67:3,
67:8, 75:6, 75:10,
75:15
**judge** [4] - 7:1, 10:22,
21:15, 42:24
**JUDGE** [1] - 1:9
**Judge** [10] - 7:9,
13:14, 17:3, 37:17,
38:4, 42:11, 42:14,
42:17, 48:11, 49:4
**judgment** [2] - 32:15,
76:14
**judicial** [2] - 22:6, 43:8
**Judicial** [1] - 79:12
**July** [6] - 58:4, 61:2,
61:3, 61:13, 62:8
**juncture** [2] - 38:15,
45:19
**juror** [15] - 21:2, 22:8,
22:13, 23:6, 23:8,
30:7, 30:13, 30:24,
31:4, 31:6, 31:25,
32:3, 32:4, 32:16,
32:20
**jurors** [8] - 11:3, 11:8,
20:24, 21:8, 22:21,
29:20, 30:22, 66:12
**jurors'** [1] - 30:23
**jury** [32] - 4:17, 8:19,
20:23, 21:6, 22:2,
22:3, 26:21, 29:5,
29:6, 32:17, 33:6,
33:11, 33:17, 33:19,
34:3, 34:12, 35:2,
35:3, 43:12, 44:11,
44:21, 49:24, 65:17,
66:10, 66:23, 67:9,

68:4, 68:10, 68:17,
71:2, 71:8, 71:12
**Justice** [2] - 24:8,
25:11

## K

**Katherine** [1] - 2:13
**KATHERINE** [1] - 1:17
**keep** [2] - 55:22, 55:23
**kept** [1] - 63:15
**kind** [1] - 48:24
**kinds** [2] - 24:19, 56:6
**Kippur** [1] - 21:22
**knock** [1] - 15:10
**knowingly** [2] - 56:19,
56:20
**knowledge** [4] - 23:4,
26:12, 26:14
**known** [2] - 13:16,
22:10
**knows** [2] - 14:18,
45:9
**knuckle** [1] - 60:1

## L

**lack** [2] - 17:8, 58:9
**lacking** [1] - 17:19
**ladies** [2] - 23:11, 35:3
**Lafler** [2] - 16:8, 45:7
**language** [5] - 29:16,
37:3, 40:2, 48:22
**larger** [2] - 70:25,
78:16
**Larios** [1] - 40:18
**Larios-Reyes** [1] -
40:18
**last** [8] - 3:21, 13:12,
13:25, 16:18, 21:19,
29:14, 31:22, 33:25
**late** [2] - 33:21, 50:6
**latest** [4] - 2:21, 2:24,
4:5, 16:6
**law** [20] - 24:9, 24:15,
25:2, 25:7, 25:12,
25:20, 27:5, 27:6,
27:20, 29:3, 40:15,
42:6, 42:16, 43:11,
43:15, 43:17, 44:16,
47:13, 70:19
**Law** [1] - 39:22
**laws** [4] - 27:13,
27:19, 27:21, 27:22
**lawyer** [1] - 23:15
**lawyers** [6] - 11:10,
11:12, 16:2, 16:9,
22:2, 22:9
**leading** [1] - 14:5
**least** [8] - 5:20, 7:22,

36:2, 42:13, 49:11,
67:1, 75:18, 77:11
**leave** [3] - 18:4, 26:4,
64:5
**left** [3] - 2:14, 15:3,
60:1
**legal** [4] - 22:3, 38:14,
45:18, 63:2
**legitimate** [1] - 16:11
**length** [1] - 7:18
**lengthy** [4] - 18:13,
18:17, 78:7, 78:8
**leniently** [1] - 27:14
**less** [4] - 16:15, 25:17,
27:20, 27:23
**lesser** [1] - 42:8
**letter** [1] - 3:21
**level** [2] - 14:8, 69:24
**LEVI** [1] - 1:8
**library** [1] - 54:19
**light** [2] - 5:18, 49:13
**lighter** [1] - 73:25
**Limine** [1] - 77:5
**limine** [2] - 3:13, 50:24
**limit** [2] - 47:25, 48:1
**limited** [4] - 13:2,
13:3, 25:8, 65:17
**linchpin** [4] - 41:1,
45:23, 46:22, 46:24
**lined** [3] - 17:6, 21:2
**link** [1] - 70:14
**linked** [1] - 3:7
**list** [2] - 15:15, 23:17
**listed** [1] - 42:8
**listen** [2] - 22:19,
32:12, 75:25
**listening** [1] - 32:5
**lists** [2] - 23:17, 33:9
**literally** [3] - 16:2,
16:8, 53:8
**litigation** [1] - 37:21
**live** [2] - 53:10, 76:4
**lived** [4] - 74:16,
74:18, 74:21, 75:8
**livestreamed** [1] -
55:22
**livestreams** [1] -
55:23
**living** [5] - 75:1, 75:10,
75:20, 75:22, 77:10
**located** [2] - 52:21,
60:22
**logical** [1] - 48:1
**longwinded** [1] - 49:6
**look** [8] - 10:15, 24:4,
30:3, 46:10, 48:23,
66:18, 75:25
**looking** [5] - 8:21,
9:12, 37:24, 41:25,
77:12

**looks** [2] - 7:20, 24:21
**lorpee** [1] - 55:13
**Lorpee** [5] - 55:19,
56:1, 56:3, 57:1,
58:8
**Lorpeelove** [5] -
55:13, 55:19, 56:1,
56:3, 57:2
**lose** [1] - 49:25
**lunch** [11] - 8:1, 8:3,
8:5, 9:23, 9:24,
19:20, 33:19, 33:20,
33:21, 33:22, 35:13
**Luncheon** [1] - 35:21
**Lynch** [1] - 40:18

## M

**Madam** [1] - 51:21
**mail** [3] - 10:21, 52:15,
57:5
**mails** [1] - 13:13
**main** [1] - 55:15
**male** [1] - 70:6
**mandatory** [1] - 44:10
**manifestation** [1] -
68:14
**manner** [1] - 70:18
**manually** [1] - 54:20
**mapped** [2] - 9:5, 17:5
**mark** [2] - 7:23, 33:8
**mark-offs** [1] - 33:8
**marshal** [2] - 4:14,
19:22
**MARYLAND** [2] - 1:1,
1:10
**Maryland** [21] - 1:15,
1:18, 21:16, 36:14,
36:21, 39:8, 39:20,
39:23, 40:5, 40:10,
41:6, 42:6, 42:16,
46:1, 46:7, 46:10,
46:23, 46:24, 46:25,
47:6, 79:7
**masturbating** [2] -
58:5, 63:21
**match** [5] - 37:1, 37:3,
39:15, 47:20, 49:3
**matches** [2] - 59:2,
70:11
**matching** [5] - 41:21,
41:24, 41:25, 59:6
**material** [2] - 6:10,
6:24
**materials** [1] - 13:2
**matter** [6] - 2:5, 35:23,
39:7, 43:9, 49:18,
79:10
**matters** [9] - 5:1, 7:14,
34:14, 40:5, 50:9,

50:13, 50:17, 73:18,
78:1
**maximize** [1] - 49:1
**maximum** [1] - 44:10
**McGuinn** [3] - 1:13,
2:8, 12:12
**mean** [9] - 19:22,
28:11, 38:2, 47:3,
48:14, 61:6, 65:13,
65:20, 65:25
**meaning** [2] - 40:24,
53:8
**Meaning** [1] - 55:24
**meaningful** [2] - 3:22,
37:19
**means** [3] - 40:4,
69:12, 76:18
**Mechanical** [1] - 1:24
**medical** [1] - 19:23
**medication** [3] -
19:23, 19:24, 35:12
**medicine** [1] - 20:5
**meet** [3] - 12:25,
13:24, 77:4
**meetings** [1] - 13:13
**member** [4] - 14:19,
14:24, 25:22, 25:25
**mention** [1] - 6:5
**mentioned** [5] - 5:4,
9:11, 9:21, 23:19,
46:11, 63:18, 73:24,
74:3
**merely** [4] - 25:19,
27:24, 56:18
**Merit** [1] - 79:6
**met** [1] - 57:6
**method** [1] - 62:20
**mid** [2] - 8:3, 8:4
**mid-afternoon** [1] -
8:4
**mid-morning** [1] - 8:3
**might** [18] - 5:2, 8:4,
8:14, 10:3, 10:4,
23:19, 26:3, 30:14,
32:19, 33:19, 50:13,
53:19, 53:20, 62:4,
62:23, 62:24, 63:1,
66:3
**mind** [5] - 7:13, 30:2,
30:12, 31:10, 51:21
**minimum** [1] - 44:10
**minor** [6] - 27:23,
27:24, 38:22, 40:20,
40:24, 68:5
**minors** [6] - 14:23,
47:8, 48:14, 55:9,
56:4, 78:13
**minute** [1] - 11:1
**minutes** [4] - 35:13,
60:7, 63:9, 63:13

**miscellaneous** [1] -
50:12
**mismatch** [3] - 39:8,
39:12, 41:25
**miss** [1] - 49:25
**misspoke** [2] - 19:18,
51:10
**mistaken** [1] - 2:25
**mitigating** [1] - 67:9
**mobile** [1] - 56:12
**modify** [1] - 11:5
**moment** [9] - 7:6,
17:16, 19:6, 19:15,
24:23, 26:16, 35:2,
45:3, 76:19
**Monday** [11] - 4:18,
13:10, 16:20, 21:20,
21:21, 34:1, 34:5,
34:11, 34:19, 49:20,
49:21
**month** [1] - 15:18
**month-and-a-half** [1] -
15:18
**months** [1] - 56:8
**morning** [20] - 2:3,
2:6, 2:10, 2:12, 2:15,
2:16, 4:1, 4:7, 4:10,
8:3, 19:13, 19:22,
20:21, 20:22, 34:17,
34:25, 45:7, 51:5
**most** [8] - 4:22, 8:8,
52:14, 60:10, 69:21,
77:22
**mother** [1] - 15:14
**motion** [23] - 2:25,
3:4, 3:13, 3:14, 3:20,
4:22, 5:18, 16:25,
20:13, 31:12, 35:24,
36:1, 36:10, 46:11,
49:11, 50:24, 50:25,
51:2, 52:14, 70:2,
72:5, 78:5, 78:7
**Motion** [1] - 77:4
**motions** [4] - 2:20,
2:21, 7:15, 30:16,
35:11, 35:14, 78:7
**mouth** [2] - 63:22,
63:23
**move** [9] - 6:4, 23:10,
23:22, 36:8, 43:19,
43:20, 43:22, 45:10,
61:24
**moved** [1] - 5:6
**movement** [1] - 53:16
**moving** [2] - 4:24,
35:23
**MR** [69] - 2:3, 3:2, 3:7,
4:25, 6:20, 6:22, 7:6,
7:12, 9:4, 9:18, 9:21,
9:25, 10:3, 10:7,

10:9, 10:17, 12:5,
13:9, 18:2, 20:11,
20:16, 25:15, 26:8,
26:19, 27:11, 29:10,
30:18, 30:21, 31:3,
31:22, 33:14, 33:16,
33:25, 34:4, 34:9,
34:15, 34:18, 34:22,
35:8, 35:18, 36:4,
39:13, 41:15, 50:4,
51:15, 51:21, 52:3,
54:5, 54:10, 54:15,
54:17, 59:25, 61:10,
62:1, 62:17, 63:12,
67:18, 71:18, 71:23,
71:25, 72:2, 72:6,
72:8, 73:15, 73:18,
77:21, 77:25, 78:10,
78:22
**MS** [53] - 2:12, 3:11,
3:16, 3:18, 6:16,
11:17, 11:21, 11:24,
12:13, 12:16, 16:23,
19:6, 19:11, 19:18,
20:1, 20:15, 21:22,
24:23, 25:1, 25:13,
26:7, 26:15, 26:20,
27:8, 28:17, 28:23,
29:7, 29:11, 29:17,
33:12, 33:15, 35:16,
38:8, 38:13, 39:19,
41:13, 45:3, 45:6,
47:15, 47:18, 49:7,
50:18, 50:23, 51:10,
64:7, 66:4, 66:24,
67:1, 74:13, 76:19,
76:24, 77:18, 78:23
**multiple** [1] - 16:4
**must** [7] - 32:9, 32:10,
44:10, 47:25, 48:3,
56:17, 56:22

## N

**Nadine** [2] - 7:2, 79:5
**NADINE** [1] - 79:18
**naked** [1] - 56:5
**name** [8] - 14:25,
21:15, 52:18, 55:7,
56:10, 57:16, 70:15
**names** [4] - 23:18,
55:12, 73:7
**narrow** [3] - 47:2,
47:9, 48:5
**narrowed** [1] - 78:16
**narrowly** [1] - 47:14
**naturally** [1] - 67:21
**nature** [10] - 14:7,
24:18, 27:16, 27:18,
27:25, 32:13, 49:4,

66:11, 71:4, 76:14
**nearly** [3] - 13:25,
42:12, 42:14
**necessarily** [9] - 5:4,
8:15, 12:3, 26:3,
38:9, 43:4, 44:21,
52:17, 71:3
**necessary** [3] - 51:24,
65:3, 65:5
**necessity** [1] - 18:25
**need** [19] - 3:25, 4:7,
5:3, 5:20, 10:20,
11:15, 15:25, 16:9,
16:10, 29:24, 34:14,
40:11, 50:1, 62:3,
64:19, 65:14, 73:1,
76:6
**needs** [8] - 19:2, 20:6,
47:21, 47:22, 64:4,
70:12, 70:13, 75:16
**never** [1] - 18:11
**Newberger** [7] - 2:13,
2:23, 6:16, 16:14,
20:2, 24:17, 30:3
**NEWBERGER** [3] -
1:17, 21:22, 33:12
**Next** [1] - 77:20
**next** [23] - 14:20, 16:8,
23:10, 24:6, 25:19,
25:20, 27:1, 27:2,
27:12, 27:15, 29:21,
35:10, 35:23, 49:13,
54:10, 55:10, 58:6,
62:1, 63:16, 64:5,
71:17, 71:18, 72:4
**nice** [1] - 18:11
**night** [2] - 16:2, 18:9
**Nine** [3] - 64:22,
64:24, 65:2
**nine** [1] - 78:17
**noise** [2] - 12:7, 22:17
**Noise** [1] - 22:18
**none** [5] - 20:11,
25:15, 26:8, 26:19,
26:20
**nonsexual** [1] - 41:7
**noon** [6] - 10:2, 20:4,
35:12, 49:17
**normally** [2] - 19:12,
29:22
**NORTHERN** [1] - 1:2
**not-so-simple** [1] -
42:20
**note** [9] - 2:20, 2:22,
7:21, 14:1, 14:15,
17:21, 24:21, 35:9,
47:5
**noted** [5] - 20:17,
36:5, 38:23, 48:2,
49:8

notes [1] - 42:17
**nothing** [7] - 16:23,
36:16, 37:9, 43:24,
49:17, 60:20, 69:12
**notice** [1] - 63:15
**notwithstanding** [1] -
3:18
**November** [1] - 79:14
**number** [17] - 21:1,
21:2, 22:13, 23:6,
26:16, 35:25, 36:2,
36:6, 36:8, 50:25,
51:11, 61:13, 72:18,
72:20, 72:21, 74:1
**Number** [1] - 2:4
**NUMBER** [1] - 1:4
**numbers** [6] - 5:14,
15:1, 25:17, 71:21,
72:2, 72:3
**numerical** [2] - 21:4,
23:6

## O

**o'clock** [3] - 7:1, 7:25,
9:24
**oath** [1] - 21:11
**object** [3] - 31:13,
31:16, 77:16
**objected** [2] - 5:3,
57:20
**objecting** [2] - 12:18,
78:15
**objection** [14] - 25:14,
26:6, 26:18, 27:9,
27:11, 28:17, 28:22,
28:23, 29:6, 29:7,
29:16, 31:14, 31:16,
78:18
**objections** [1] - 4:3
**objects** [1] - 13:9
**obtain** [1] - 22:1
**obtained** [2] - 52:20,
55:11
**obvious** [1] - 53:14
**obviously** [4] - 4:10,
6:4, 12:21, 12:25,
15:23, 18:2, 38:13,
42:11, 60:9, 66:6,
72:2
**occupant** [1] - 73:2
**occurred** [6] - 58:4,
61:12, 62:7, 63:17,
64:1, 73:21
**October** [2] - 13:11,
49:20
**odds** [2] - 45:16, 46:6
**OF** [5] - 1:1, 1:3, 1:7,
1:14, 79:1
**Offender** [3] - 5:11,

5:16, 28:3
**offenders** [2] - 48:16,
49:1
**offense** [22] - 26:25,
36:15, 36:20, 37:1,
37:5, 37:8, 39:3,
39:9, 39:21, 40:21,
40:23, 41:7, 41:9,
42:2, 42:6, 42:7,
42:8, 42:16, 44:24,
46:8, 46:24, 46:25
**offenses** [19] - 36:18,
38:20, 39:6, 39:9,
40:17, 41:2, 41:6,
41:10, 41:23, 45:23,
45:25, 46:9, 46:22,
47:4, 48:9, 48:17,
49:2, 57:25, 67:24
**offered** [2] - 73:11
**office** [1] - 24:10
**OFFICE** [1] - 1:14
**Office** [3] - 1:17,
23:24, 24:1
**Officer** [2] - 25:9,
25:10
**officer** [4] - 25:3, 25:8,
25:18, 25:19
**OFFICIAL** [2] - 79:1,
79:18
**offs** [1] - 33:8
**Ohio** [1] - 15:3
**oldest** [1] - 75:4
**once** [2] - 21:9, 77:14
**one** [72] - 5:9, 5:22,
9:10, 13:21, 14:14,
14:19, 15:3, 15:21,
19:6, 19:11, 19:15,
23:6, 24:2, 24:3,
24:4, 24:23, 25:2,
25:16, 25:20, 26:15,
26:16, 27:12, 29:20,
30:22, 30:23, 37:23,
42:4, 42:23, 42:24,
43:13, 44:5, 44:22,
45:3, 45:16, 46:6,
47:5, 47:7, 49:12,
50:23, 52:25, 53:6,
53:7, 53:8, 55:24,
56:9, 56:23, 57:6,
57:21, 58:1, 59:18,
60:4, 61:6, 62:2,
62:5, 62:8, 65:12,
66:21, 68:20, 69:8,
69:13, 70:8, 70:12,
72:6, 72:19, 72:21,
72:25, 73:15, 73:20,
76:3, 76:19, 78:11,
78:18
**one's** [1] - 42:4
**ones** [1] - 29:23

online [1] - 14:22
**open** [3] - 34:19,
49:21, 49:22
**opening** [4] - 5:4,
5:24, 6:5, 34:13
**openings** [3] - 33:21,
34:1, 34:17
**operated** [1] - 65:11
**opinion** [2] - 38:4,
71:16
**opportunity** [11] -
2:23, 3:9, 4:5, 6:1,
12:17, 12:24, 17:9,
22:19, 36:10, 77:13,
77:14
**opposed** [2] - 37:18,
60:24
**opposing** [1] - 18:9
**opposition** [1] - 49:10
**oral** [1] - 61:14
**order** [13] - 13:6,
15:12, 18:9, 21:4,
21:25, 36:22, 37:5,
41:9, 45:8, 64:20,
65:3, 65:5, 71:22
**ordinary** [1] - 40:24
**original** [1] - 60:5
**originally** [1] - 17:3
**otherwise** [6] - 8:11,
17:19, 23:19, 43:7,
56:5, 64:5
**out-of-state** [1] -
17:23
**out-of-town** [3] -
10:10, 10:11, 18:3
**outcome** [1] - 32:24
**outline** [2] - 7:14,
53:15
**outlined** [1] - 28:20
**outset** [3] - 2:20,
26:11, 26:13
**outstanding** [1] - 4:1
**outweigh** [2] - 70:24,
71:5
**outweighed** [1] -
64:11
**outweighs** [3] - 51:13,
67:12, 71:4
**overall** [1] - 49:5
**overcomes** [1] - 66:15
**overturn** [1] - 44:18
**overview** [1] - 57:11
**overwhelming** [2] -
14:4, 14:9
**overwhelmingly** [1] -
66:2
**own** [5] - 23:4, 28:8,
30:14, 44:15, 75:4
**owner** [1] - 52:17
**ownership** [2] - 70:3,

70:13
**owns** [2] - 56:18, 70:17

**P**

**p.m** [3] - 35:20, 35:21, 78:25
**Pacer** [1] - 3:7
**page** [1] - 79:11
**pans** [2] - 73:4, 73:8
**paragraph** [1] - 49:12
**paraphrasing** [1] - 36:24
**parens** [1] - 29:6
**paring** [1] - 47:10
**part** [11] - 5:9, 22:6, 22:14, 32:18, 40:24, 58:19, 59:5, 61:3, 63:7, 69:6, 69:22
**participants** [1] - 63:2
**participate** [1] - 22:8
**particular** [7] - 4:22, 8:14, 30:13, 33:1, 60:13, 74:5, 75:21
**particularly** [3] - 38:15, 62:22, 67:22
**parties** [3] - 22:10, 33:2, 44:8
**party** [3] - 40:2, 40:9, 40:14
**pass** [1] - 62:14
**past** [3] - 20:4, 20:5, 23:13
**PAUL** [1] - 1:13
**Paul** [1] - 2:6
**paying** [1] - 56:4
**payment** [1] - 62:10
**penalties** [5] - 45:10, 45:14, 48:7, 48:16
**penalty** [1] - 38:17
**pending** [5] - 12:21, 16:25, 25:21, 43:19, 70:2
**penis** [3] - 63:22, 63:23, 63:24
**Pennsylvania** [1] - 15:2
**people** [1] - 28:2
**percent** [2] - 48:20, 50:13
**peremptory** [2] - 33:8, 33:9
**perfect** [4] - 10:13, 39:15, 47:10, 51:22
**perfectly** [2] - 4:4, 45:16
**period** [5] - 15:22, 17:2, 19:24, 59:18, 77:10

**periods** [1] - 19:5
**person** [28] - 14:21, 15:17, 23:7, 26:23, 26:24, 29:6, 31:19, 36:14, 37:7, 40:6, 53:2, 53:4, 54:25, 56:13, 56:14, 56:22, 56:24, 60:23, 60:24, 61:20, 65:10, 65:11, 69:3, 70:6, 70:9, 70:17, 70:22
**person's** [2] - 54:19, 56:15
**personal** [3] - 23:4, 23:13, 49:18
**perspective** [1] - 42:13
**pertain** [2] - 47:23, 51:1
**petit** [1] - 29:5
**phone** [31] - 5:14, 14:25, 15:16, 52:24, 53:8, 53:11, 53:12, 53:13, 53:14, 53:15, 53:17, 53:25, 54:1, 54:7, 54:8, 54:14, 54:22, 58:22, 58:23, 58:24, 70:9, 72:22, 72:23
**phone-to-phone** [6] - 53:8, 53:11, 53:12, 53:17, 54:22, 58:23
**photo** [2] - 54:6, 54:7
**photographs** [2] - 59:4, 74:7
**phrase** [1] - 40:25
**physical** [1] - 19:4
**picked** [4] - 4:6, 33:19, 33:20, 34:13
**piece** [6] - 15:25, 60:15, 60:22, 73:25, 74:4
**pieces** [1] - 71:11
**piled** [1] - 14:16
**place** [4] - 17:4, 46:17, 52:18, 71:13
**placed** [2] - 10:24, 21:11
**places** [2] - 52:4, 57:3
**plaintiff** [1] - 26:9
**Plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:12
**plan** [2] - 34:10, 60:11
**planning** [1] - 14:20
**plans** [1] - 65:10
**play** [6] - 51:4, 58:7, 59:10, 60:11, 63:9, 73:15
**played** [6] - 59:24, 63:11, 63:16, 73:14,

73:17, 75:3
**plays** [1] - 58:24
**plea** [1] - 69:1
**pleadings** [1] - 57:22
**plus** [2] - 37:3, 41:20
**podium** [2] - 59:22, 64:4
**point** [29] - 3:24, 5:20, 12:23, 18:2, 25:6, 27:17, 30:10, 31:12, 37:7, 43:5, 43:23, 44:5, 44:6, 44:7, 44:22, 48:21, 59:8, 60:12, 61:15, 62:22, 64:17, 68:3, 68:20, 69:1, 73:18, 74:17, 76:24
**pointed** [4] - 41:18, 48:11, 65:6, 66:8
**points** [8] - 10:25, 11:2, 11:6, 23:2, 28:21, 53:6, 64:14, 69:8
**Police** [4] - 5:11, 24:12, 25:9, 25:10
**police** [3] - 24:9, 25:18, 25:19
**pornography** [2] - 27:16, 27:22
**portanova** [1] - 48:3
**portion** [3] - 67:4, 75:2, 78:16
**position** [5] - 46:20, 51:13, 51:17, 64:7, 72:13
**possessed** [3] - 56:19, 56:20, 57:8
**possible** [3] - 6:2, 18:8, 45:9
**possibly** [2] - 46:8, 63:17
**postponement** [3] - 16:1, 16:12, 17:13
**postponing** [1] - 37:17
**posture** [2] - 43:7, 43:10
**potentially** [3] - 55:10, 69:1, 71:9
**powerful** [1] - 59:20
**precisely** [1] - 48:15
**preclude** [1] - 5:19
**predict** [1] - 9:8
**prediction** [1] - 10:10
**preference** [2] - 5:23, 31:24
**prejudice** [10] - 51:13, 66:5, 67:9, 67:12, 67:19, 68:12, 68:15, 68:17, 68:20, 70:24

**prejudicial** [11] - 51:4, 64:12, 68:1, 69:21, 70:21, 71:1, 71:2, 71:4, 71:6, 75:10, 77:9
**preliminary** [1] - 7:14
**premarked** [1] - 17:21
**preparation** [2] - 4:11, 15:6
**prepare** [3] - 16:9, 16:10, 16:17
**prepared** [11] - 3:25, 10:14, 12:10, 16:13, 18:10, 34:2, 34:19, 35:4, 39:14, 50:17, 51:4
**preparedness** [2] - 4:24, 17:8
**preparing** [1] - 13:12
**Present** [1] - 1:20
**present** [6] - 14:3, 21:9, 23:14, 37:5, 65:15, 74:9
**presentation** [2] - 18:22, 77:15
**presented** [4] - 14:3, 44:21, 71:11, 77:15
**presenting** [2] - 26:22, 64:11, 64:12
**presumably** [2] - 76:11, 76:15
**presume** [2] - 19:22, 71:12
**presumption** [1] - 27:2
**pretrial** [3] - 2:6, 2:19, 35:22
**PRETRIAL** [1] - 1:8
**pretty** [4] - 44:15, 56:2
**prevent** [6] - 18:24, 19:4, 28:1, 33:1, 48:13, 48:25
**preview** [1] - 78:10
**previous** [1] - 71:21
**previously** [3] - 29:9, 48:16, 49:9
**primarily** [1] - 78:5
**primary** [1] - 55:12
**principle** [1] - 27:2
**privately** [1] - 24:20
**probative** [12] - 51:13, 64:10, 66:16, 67:12, 69:25, 70:20, 70:23, 71:3, 71:5, 75:8, 76:4, 77:12
**problems** [1] - 19:3
**proceed** [5] - 13:7, 16:20, 17:9, 17:14, 51:19
**Proceeding** [1] -

**prejudicial**
**proceeding** [1] - 50:14
**PROCEEDINGS** [1] - 1:7
**Proceedings** [1] - 1:24
**proceedings** [1] - 79:10
**proceeds** [1] - 17:11
**process** [5] - 21:6, 22:7, 30:21, 33:6, 47:8
**produced** [1] - 55:21
**Produced** [1] - 1:24
**production** [3] - 59:11, 64:23, 64:25
**productions** [2] - 12:23, 12:24
**productively** [1] - 50:3
**professionalism** [1] - 8:20
**proffer** [3] - 14:2, 14:3, 70:10
**proffered** [1] - 75:19
**profile** [1] - 55:6
**promise** [2] - 32:3, 59:10
**proof** [5] - 15:12, 64:16, 65:8, 70:13
**propensity** [1] - 68:18
**proponent** [1] - 42:1
**proposed** [2] - 10:24, 11:3
**proposition** [1] - 27:4
**prosecution** [2] - 26:5, 57:18
**prospective** [6] - 11:3, 11:8, 23:8, 23:9, 29:20, 32:3, 32:20
**protect** [1] - 47:7
**prove** [11] - 56:17, 56:21, 56:22, 58:18, 59:13, 64:20, 65:1, 65:3, 65:20, 73:1, 73:11
**proved** [1] - 44:10
**proven** [2] - 32:7, 57:16
**proves** [3] - 64:21, 65:1, 74:16
**provide** [7] - 11:24, 15:5, 23:16, 23:17, 33:9, 38:1, 61:15
**provided** [5] - 5:14, 17:19, 23:2, 71:1, 71:8
**provider** [1] - 52:8
**provides** [1] - 73:21
**public** [2] - 23:22, 71:15

**78**:25
**proceeding** [1] - 50:14

**Public** [3] - 1:17, 23:23, 23:24
**punish** [1] - 27:13
**punishment** [2] - 27:13, 49:1
**purely** [5] - 37:10, 38:14, 39:7, 43:8, 45:18
**purported** [1] - 70:18
**purpose** [18] - 8:18, 39:24, 40:16, 40:20, 41:3, 41:4, 41:8, 45:24, 46:2, 46:4, 46:5, 46:15, 46:18, 48:13, 48:18, 48:23, 49:5
**purposes** [6] - 2:19, 4:11, 40:3, 46:3, 47:7, 56:12
**pursuant** [5] - 3:15, 20:25, 38:25, 64:9, 79:8
**push** [1] - 53:23
**put** [13] - 5:19, 12:7, 17:4, 22:18, 28:10, 29:5, 44:14, 45:6, 45:9, 52:14, 65:16, 75:14, 75:16
**puts** [1] - 47:11
**putting** [3] - 65:24, 69:15, 70:16

## Q

**qualified** [2] - 16:13, 32:21
**questions** [22] - 11:1, 11:2, 11:11, 21:25, 22:4, 22:5, 22:7, 22:16, 23:1, 24:19, 27:15, 28:20, 29:22, 29:24, 29:25, 30:4, 30:5, 30:6, 30:23, 31:24, 33:23, 41:12
**quick** [3] - 6:9, 43:20, 53:24
**quicker** [1] - 60:9
**quickly** [3] - 4:13, 20:19
**quite** [9] - 6:10, 12:21, 13:12, 14:9, 17:2, 47:12, 47:13, 65:24, 66:3

## R

**Rachel** [2] - 1:21, 2:9
**raise** [3] - 21:10, 22:22, 77:13
**raised** [1] - 64:14

**reach** [1] - 77:2
**read** [7] - 28:12, 28:18, 28:19, 28:24, 38:2, 47:13, 49:14
**reading** [7] - 46:12, 46:16, 47:2, 47:3, 47:9, 48:5, 48:17
**ready** [7] - 16:19, 17:7, 35:1, 35:4, 35:22, 51:19, 72:8
**real** [2] - 39:12, 55:6
**really** [18] - 11:20, 13:2, 15:23, 15:24, 30:2, 31:19, 37:25, 43:19, 43:20, 44:22, 56:19, 63:2, 68:14, 68:23, 69:12, 69:14, 75:8
**realm** [1] - 47:12
**realtime** [1] - 54:4
**Realtime** [1] - 79:5
**reason** [3] - 22:22, 46:24, 67:15
**reasonable** [4] - 9:16, 32:8, 40:6, 44:11
**reasonably** [3] - 40:1, 40:3, 46:4
**reasons** [4] - 5:13, 13:5, 49:9
**rebuttal** [1] - 4:13
**receive** [2] - 17:15, 30:16
**receives** [4] - 19:12, 19:13, 19:14, 19:19
**recent** [5] - 4:23, 5:25, 12:24, 52:14, 53:22
**recently** [4] - 14:17, 15:15, 17:3, 17:18
**recess** [1] - 35:21
**recognize** [2] - 24:4, 67:21
**reconvene** [1] - 10:6
**record** [19] - 7:11, 11:14, 12:14, 16:19, 19:10, 19:17, 31:5, 44:14, 45:7, 45:9, 49:8, 49:9, 50:21, 53:18, 53:24, 55:22, 55:23, 61:8, 76:22
**recordation** [1] - 70:9
**Recorded** [1] - 1:24
**recorded** [2] - 52:25, 63:14
**recording** [7] - 53:13, 53:17, 53:25, 54:2, 55:5, 58:23
**recordings** [2] - 54:22
**records** [6] - 18:25, 52:6, 54:13, 55:18, 56:12

**redact** [1] - 69:5
**redacted** [1] - 67:3
**redacting** [1] - 69:24
**reduced** [1] - 72:9
**reducing** [1] - 8:11
**refer** [2] - 47:23, 54:6
**reference** [5] - 5:19, 5:24, 44:8, 75:23, 75:24
**referenced** [1] - 14:17
**references** [3] - 25:2, 25:4, 39:25
**refers** [1] - 73:6
**regard** [3] - 17:15, 36:13, 49:11
**regarding** [8] - 7:16, 17:22, 17:24, 20:6, 33:24, 35:5, 75:14, 77:8
**regardless** [3] - 14:23, 16:18, 43:5
**regards** [1] - 47:18
**register** [1] - 28:2
**Registered** [1] - 79:6
**Registry** [3] - 5:12, 5:16, 28:3
**regular** [1] - 15:11
**regulations** [1] - 79:11
**rehabilitate** [1] - 30:13
**reintroduce** [1] - 21:12
**reiterate** [2] - 45:22, 68:21
**rejigger** [1] - 10:9
**relate** [12] - 39:6, 41:10, 41:23, 42:8, 42:16, 42:22, 46:25, 47:2, 47:3, 47:9, 50:7, 77:23
**related** [16] - 13:2, 18:22, 20:9, 36:10, 37:2, 37:6, 39:11, 39:12, 39:13, 47:14, 48:22, 49:3, 70:3, 71:9, 71:14, 78:5
**relates** [9] - 38:20, 39:3, 41:20, 42:5, 42:10, 44:13, 44:23, 44:24, 47:6
**relating** [10] - 16:16, 46:8, 47:19, 47:25, 48:5, 50:6, 52:9, 62:18, 63:16, 78:11
**relation** [1] - 47:22
**relationship** [1] - 48:12
**relationships** [1] - 23:13
**relatively** [3] - 18:17, 18:18, 53:21

**relevance** [6] - 59:21, 60:12, 60:14, 63:8, 72:13, 74:6
**relevant** [13] - 5:12, 56:21, 61:17, 64:15, 67:2, 67:8, 69:21, 69:24, 72:24, 73:19, 74:20, 77:7, 77:10
**rely** [1] - 28:8
**remain** [1] - 27:3
**remainder** [2] - 67:5, 67:10
**remaining** [3] - 77:22, 78:11, 78:18
**remake** [1] - 41:18
**remind** [1] - 22:3
**removed** [1] - 41:9
**repeat** [3] - 48:16, 49:1, 52:1
**reply** [2] - 3:3, 46:12
**reported** [1] - 79:9
**REPORTER** [2] - 79:1, 79:18
**Reporter** [2] - 79:5, 79:6
**representation** [2] - 75:4, 77:7
**request** [8] - 11:18, 11:22, 11:23, 12:17, 12:18, 16:11, 16:18, 45:8
**requested** [1] - 17:13
**requests** [1] - 45:15
**require** [4] - 36:22, 39:23, 41:3, 46:1
**required** [2] - 28:2, 39:15
**requirement** [1] - 22:3
**requires** [2] - 39:4, 42:3
**reserve** [2] - 75:13, 76:25
**resided** [1] - 74:23
**residence** [3] - 56:13, 72:17, 74:7
**residency** [1] - 29:15
**resolve** [3] - 3:25, 4:2, 78:19
**resources** [1] - 14:16
**respect** [3] - 41:15, 52:9, 62:19
**respond** [2] - 12:4, 22:3, 68:21
**responded** [2] - 22:4, 31:2
**responding** [2] - 22:16, 29:21
**response** [5] - 3:4, 3:9, 3:20, 30:1, 45:21

**responses** [1] - 30:23
**rest** [1] - 68:2
**result** [1] - 36:6
**results** [1] - 56:15
**resume** [1] - 35:22
**resuming** [2] - 7:25, 9:24
**resumption** [1] - 6:9
**returned** [1] - 26:21
**revelation** [1] - 70:4
**reverse** [2] - 14:2
**review** [8] - 4:5, 12:20, 13:1, 13:6, 13:23, 16:4, 17:10, 36:10
**reviewed** [4] - 10:24, 38:3, 70:5
**reviews** [1] - 16:4
**revisionist** [1] - 46:12
**revisit** [4] - 43:4, 44:5, 44:17, 66:3
**revisited** [1] - 37:20
**Reyes** [1] - 40:18
**rhetorical** [1] - 68:3
**ripe** [2] - 37:16
**risk** [4] - 66:5, 66:15, 67:9
**risks** [2] - 64:11, 64:12
**RMR** [1] - 79:18
**road** [2] - 43:14, 44:6
**ROCKY** [1] - 1:5
**Rocky** [3] - 2:4, 2:14, 21:17
**roll** [2] - 21:8, 21:10
**room** [6] - 15:8, 20:24, 73:4, 73:5, 73:12, 73:22
**roughly** [3] - 13:11, 15:18, 78:17
**Rule** [3] - 5:8, 51:3, 64:10
**rule** [5] - 43:4, 43:24, 44:9, 44:11, 66:18
**rules** [1] - 44:2
**ruling** [7] - 4:22, 6:2, 43:5, 44:3, 45:13, 51:6, 76:25
**rulings** [1] - 4:13
**running** [3] - 8:5, 8:19, 8:21
**runs** [1] - 18:19
**RUSSELL** [1] - 1:8
**Russell** [1] - 21:15

## S

**satisfied** [1] - 32:24
**save** [2] - 24:19, 52:1
**saved** [2] - 54:18, 54:20
**saw** [3] - 62:10, 74:3,

78:16

**scenario** [2] - 31:3, 68:14

**schedule** [7] - 8:2, 8:10, 8:19, 8:21, 8:22, 35:18

**scheduled** [6] - 2:5, 13:10, 13:11, 13:15, 19:14

**scheduling** [2] - 7:16, 29:13

**scheme** [1] - 36:18

**school** [1] - 29:3

**screen** [8] - 52:11, 53:18, 53:24, 54:22, 55:5, 55:13, 58:24, 59:19

**screenshot** [3] - 54:4, 54:5, 54:12

**script** [1] - 21:14

**scrolls** [1] - 58:25

**search** [6] - 52:20, 55:11, 55:18, 59:4, 72:14, 73:10

**searched** [3] - 54:21, 72:16, 75:20

**searches** [1] - 55:20

**seat** [2] - 2:18, 30:8

**seated** [4] - 21:12, 22:19, 33:11, 33:17

**Second** [1] - 36:23

**second** [19] - 16:18, 22:14, 33:5, 37:1, 37:6, 37:8, 39:8, 39:20, 41:7, 42:6, 42:15, 44:24, 46:7, 53:11, 53:13, 53:18, 61:6, 67:11

**secondly** [2] - 49:18, 75:9

**seconds** [2] - 60:5, 60:7

**section** [3] - 35:10, 35:11, 42:9

**security** [2] - 20:6, 20:10

**see** [33] - 6:7, 6:12, 6:13, 7:2, 10:15, 11:5, 15:22, 24:3, 24:4, 28:19, 29:24, 35:19, 39:17, 50:15, 51:7, 52:11, 53:14, 53:15, 54:21, 54:24, 58:20, 58:21, 60:14, 60:17, 63:8, 66:1, 66:8, 67:19, 74:4, 76:15, 77:2, 77:14, 78:21

**seeing** [1] - 76:15

**seek** [2] - 65:7, 74:22

**seem** [1] - 5:17

**seized** [1] - 72:18

**selection** [5] - 4:17, 21:6, 22:2, 33:6, 34:3

**send** [3] - 30:7, 31:18, 31:21

**sending** [1] - 11:4

**sent** [3] - 55:21, 61:4, 61:11

**sentence** [4] - 42:17, 43:9, 43:16, 44:10

**sentencing** [7] - 37:16, 37:18, 43:6, 43:14, 44:1, 44:4

**separate** [2] - 43:3, 59:21

**separately** [2] - 51:17, 57:21

**SEPTEMBER** [1] - 1:9

**September** [11] - 7:19, 7:20, 7:22, 7:24, 8:1, 9:1, 17:11, 20:22, 21:21, 72:13, 74:7

**sequester** [1] - 20:13

**series** [1] - 10:25

**serious** [3] - 14:11, 14:14, 67:24

**service** [2] - 19:23, 52:7

**session** [1] - 7:24

**set** [8] - 2:21, 4:17, 7:19, 22:14, 23:1, 27:2, 27:15, 72:4

**settings** [2] - 54:18, 54:20

**Seven** [3] - 64:21, 64:24, 74:2

**seven** [1] - 60:7

**several** [1] - 64:14

**Sex** [3] - 5:11, 5:16, 28:3

**sex** [13] - 42:6, 42:7, 42:15, 47:4, 47:5, 47:6, 48:17, 56:5, 61:14, 68:6, 68:7

**sexual** [43] - 15:21, 36:16, 36:17, 36:19, 36:22, 37:1, 37:4, 37:6, 37:8, 37:9, 38:21, 39:8, 39:21, 39:22, 40:1, 40:4, 40:7, 40:16, 40:20, 40:23, 40:25, 41:2, 41:4, 41:7, 42:10, 45:23, 46:2, 46:5, 46:7, 46:14, 46:18, 47:1, 48:11, 48:12, 48:14, 57:13, 67:22

**sexually** [4] - 52:23,

53:9, 54:23, 61:17

**shake** [1] - 30:5

**share** [1] - 18:9

**sheriff's** [1] - 24:9

**short** [4] - 18:13, 18:14, 18:18, 63:9

**shortcut** [1] - 53:12

**shorten** [1] - 8:4

**shot** [2] - 19:19, 74:9

**show** [13] - 51:18, 53:1, 53:2, 53:3, 60:9, 61:19, 62:5, 67:4, 67:5, 69:5, 69:8, 69:11

**showing** [3] - 56:24, 59:5, 70:24

**shown** [2] - 70:12, 74:5

**shows** [6] - 67:4, 69:6, 69:19, 70:22, 73:9, 75:21

**side** [1] - 31:20

**signal** [1] - 23:7

**significant** [2] - 15:11, 37:13

**silent** [1] - 27:3

**similar** [3] - 57:8, 62:17, 62:25

**simple** [2] - 42:3, 42:20

**simply** [3] - 46:25, 47:20, 53:23

**single** [2] - 14:19, 78:13

**sister** [1] - 15:14

**sit** [2] - 15:7, 66:7

**sitting** [3] - 10:1, 19:5, 66:13

**situation** [2] - 5:20, 43:22

**situations** [1] - 38:24

**six** [2] - 33:12, 33:15

**slightly** [1] - 32:21

**slow** [2] - 43:20, 43:22

**smoothly** [1] - 18:19

**so-to-speak** [1] - 75:23

**solely** [1] - 57:3

**solid** [1] - 43:24

**someone** [6] - 10:21, 23:5, 37:6, 46:1, 46:2, 46:3

**sometimes** [9] - 9:9, 53:3, 53:4, 53:16, 53:17, 54:24, 55:1, 55:19

**sooner** [1] - 9:7

**sorry** [9] - 9:22, 33:14, 34:18, 39:17, 71:21, 72:5, 72:20, 73:8,

78:14

**sort** [10] - 9:5, 24:3, 24:4, 30:21, 46:14, 47:11, 50:12, 54:10, 63:7, 77:2

**sorts** [1] - 66:12

**sound** [1] - 59:23

**sounded** [1] - 10:4

**special** [5] - 19:2, 35:24, 36:2, 36:6, 36:8

**Special** [2] - 1:21, 2:9

**specific** [3] - 24:19, 42:21, 49:11

**specifically** [6] - 3:23, 8:8, 27:16, 39:21, 39:25, 73:21

**staff** [1] - 22:24

**stage** [1] - 33:5

**stand** [8] - 18:6, 21:10, 22:12, 23:12, 23:14, 24:16, 47:22

**standing** [1] - 2:14

**stands** [1] - 23:5

**start** [5] - 29:22, 34:6, 34:10, 34:22, 67:18

**started** [1] - 10:14

**state** [6] - 17:23, 26:10, 42:1, 42:2, 67:6, 70:22

**statement** [3] - 5:4, 34:13, 47:16

**States** [6] - 2:4, 21:17, 24:7, 48:2, 79:6, 79:12

**STATES** [4] - 1:1, 1:3, 1:9, 1:14

**stating** [2] - 44:15, 73:20

**statute** [25] - 36:14, 36:15, 36:21, 39:20, 39:23, 39:25, 40:6, 40:10, 41:20, 41:21, 41:22, 44:25, 46:1, 46:8, 46:23, 47:6, 47:7, 47:21, 48:15, 48:18, 48:24, 48:25

**statutes** [3] - 48:3, 48:13, 49:5

**statutory** [1] - 36:18

**stenographically** [1] - 79:9

**stenographically-reported** [1] - 79:9

**Stenography** [1] - 1:24

**stepped** [1] - 13:14

**steps** [1] - 31:4

**stigma** [2] - 13:3, 14:12

**still** [11] - 10:15, 10:20, 10:22, 14:23, 17:10, 32:13, 37:3, 44:5, 54:6, 54:7, 60:2

**stipulate** [1] - 68:25

**stipulating** [1] - 36:1

**stipulation** [1] - 65:12

**stipulations** [2] - 18:23, 69:2

**stitching** [2] - 60:15, 73:25

**stop** [1] - 65:22

**stops** [1] - 22:22

**story** [1] - 66:22

**streaming** [1] - 53:10

**Street** [2] - 1:14, 1:18

**strength** [1] - 14:8

**stress** [1] - 15:6

**strike** [2] - 30:16, 31:16

**strikes** [4] - 29:18, 33:7, 33:8, 33:9

**strong** [5] - 14:6, 15:23, 15:24, 28:2, 52:18

**strongly** [1] - 44:15

**struck** [4] - 29:25, 31:6, 36:7, 37:12

**stuck** [1] - 48:19

**stuff** [1] - 64:5

**Sturtz** [1] - 43:19

**Sturtz's** [1] - 37:22

**subcategory** [1] - 29:1

**subject** [6] - 25:23, 50:24, 53:15, 57:4, 58:24, 72:5

**submission** [1] - 4:23

**submit** [3] - 39:20, 43:2, 45:15

**submitted** [2] - 4:8, 50:6

**subscriber** [1] - 56:11

**subsequent** [1] - 71:12

**substantial** [1] - 3:22

**substantive** [1] - 7:15

**subtle** [1] - 63:3

**succession** [1] - 63:16

**sudden** [1] - 18:13

**sufficient** [3] - 40:13, 75:14, 76:11

**suggest** [1] - 75:1

**suggesting** [1] - 65:21

**suggests** [2] - 49:2, 69:5

**summarize** [2] - 11:2, 58:7

**summarized** [1] -

38:18
**summary** [2] - 38:6, 38:10
**summer** [1] - 15:9
**summons** [2] - 21:1
**summonsed** [1] - 21:8
**superseding** [2] - 14:12, 26:21
**supplement** [2] - 3:18, 78:5
**supplemental** [1] - 49:15
**supports** [1] - 40:7
**Supreme** [1] - 44:17
**surgery** [1] - 29:21
**surgery'** [1] - 31:8
**surprise** [2] - 11:22, 11:23
**surroundings** [1] - 77:12
**swipe** [1] - 53:23
**swipes** [1] - 54:1
**switch** [1] - 59:22
**switching** [1] - 51:21

**T**

**table** [3] - 2:7, 22:19, 50:10
**tables** [1] - 10:25
**tack** [2] - 8:17, 34:7
**talks** [2] - 24:6, 24:12
**Tang** [1] - 2:13
**tape** [1] - 77:16
**target** [3] - 41:5, 41:6, 48:3
**tattoo** [10] - 59:2, 59:4, 59:6, 60:2, 60:3, 70:10, 70:11
**technical** [1] - 7:16
**technology** [1] - 28:7
**telegraph** [2] - 30:2
**ten** [5] - 7:9, 8:16, 33:12, 33:15, 35:13
**Ten** [4] - 58:3, 61:2, 62:9
**tendency** [1] - 37:12
**Tennessee** [1] - 15:2
**term** [2] - 42:3, 54:5
**terminology** [1] - 42:22
**terms** [7] - 9:12, 14:15, 15:12, 15:13, 28:11, 31:24, 61:18
**test** [1] - 51:9
**testify** [4] - 14:21, 17:7, 19:1, 23:18
**testifying** [1] - 8:14
**testimony** [14] - 5:12, 5:15, 5:22, 25:18,

27:23, 34:6, 34:10, 34:20, 34:21, 34:24, 35:4, 35:7, 52:6, 57:6
**text** [3] - 39:25, 46:23, 55:25
**THE** [126] - 1:1, 1:1, 1:8, 1:12, 1:14, 1:16, 2:10, 2:15, 2:16, 2:17, 3:6, 3:8, 3:14, 3:17, 4:4, 6:6, 6:18, 6:21, 6:23, 7:1, 7:4, 7:8, 7:9, 7:10, 7:13, 9:17, 9:20, 9:23, 10:2, 10:5, 10:8, 10:13, 10:18, 11:15, 11:20, 11:23, 12:2, 12:6, 12:15, 13:8, 16:21, 16:24, 18:8, 19:8, 19:21, 20:2, 20:13, 20:17, 21:23, 24:25, 25:5, 25:14, 25:16, 26:9, 26:17, 26:21, 27:9, 27:12, 28:18, 28:24, 29:8, 29:12, 29:18, 30:20, 31:1, 31:7, 32:1, 33:13, 33:17, 34:3, 34:7, 34:12, 34:16, 34:21, 34:24, 35:9, 35:19, 35:22, 36:5, 38:12, 39:10, 39:16, 41:11, 41:14, 45:1, 45:5, 47:2, 47:16, 48:10, 49:8, 50:15, 50:20, 50:22, 51:7, 51:12, 51:20, 52:2, 52:4, 54:9, 54:12, 54:16, 61:6, 61:9, 61:25, 62:16, 64:6, 65:12, 66:20, 66:25, 67:16, 70:1, 71:20, 71:24, 72:1, 72:4, 72:7, 74:11, 75:12, 76:21, 76:23, 77:3, 77:19, 77:24, 78:4, 78:20, 78:24
**themselves** [4] - 27:25, 28:6, 66:11, 70:23
**therefore** [2] - 40:24, 41:4
**they've** [4] - 31:1, 41:16, 65:16, 65:19
**thinks** [1] - 60:10
**third** [3] - 42:7, 42:15, 51:16
**Third** [2] - 42:18, 48:1
**Thirty** [1] - 65:2
**threatening** [1] - 56:4

**Three** [1] - 74:2
**three** [20] - 9:5, 13:25, 14:14, 16:14, 19:15, 19:19, 21:19, 21:20, 36:18, 43:21, 55:11, 55:15, 61:10, 63:9, 63:13, 72:18, 78:11, 78:13, 78:19
**threw** [1] - 49:23
**throughout** [1] - 71:9
**Thursday** [23] - 6:8, 6:13, 6:17, 6:19, 6:25, 7:2, 9:1, 9:6, 9:14, 10:6, 10:12, 10:20, 10:23, 49:20, 50:2, 50:5, 50:11, 51:25, 52:1, 57:11, 67:20, 77:25, 78:21
**Thursday's** [1] - 50:14
**tied** [1] - 56:13
**timeout** [1] - 4:16
**title** [1] - 3:19
**titled** [2] - 3:3, 71:19
**today** [10] - 6:7, 13:16, 16:7, 20:3, 43:4, 43:6, 43:15, 51:25, 52:12, 75:5
**together** [2] - 4:14, 28:25
**took** [4] - 13:15, 25:25, 28:12, 46:17
**tool** [1] - 11:10
**topic** [1] - 31:23
**Torres** [2] - 44:12, 44:18
**touches** [1] - 58:24
**touching** [1] - 63:24
**Tower** [1] - 1:18
**town** [3] - 10:10, 10:11, 18:3
**track** [1] - 8:9
**training** [1] - 29:4
**transcript** [2] - 62:14, 63:10, 79:9, 79:11
**TRANSCRIPT** [1] - 1:7
**Transcript** [1] - 1:24
**Transcription** [1] - 1:24
**transferred** [1] - 17:4
**transportation** [1] - 15:5
**trash** [1] - 75:24
**travel** [2] - 15:5, 18:4
**tremendous** [1] - 14:15
**trial** [43] - 3:24, 4:2, 4:10, 4:16, 7:18, 7:22, 8:2, 8:7, 8:18, 10:25, 11:19, 13:7, 13:10, 13:12, 13:19,

16:17, 16:20, 17:4, 17:5, 17:12, 17:25, 18:15, 19:13, 19:15, 20:22, 23:19, 37:19, 43:21, 45:11, 45:14, 45:19, 60:9, 60:11, 60:17, 66:1, 66:7, 66:14, 71:9, 71:15, 72:3, 72:19
**trigger** [1] - 30:12
**triggers** [2] - 30:6, 31:10
**trimmed** [2] - 60:7, 60:8
**true** [2] - 39:13, 44:12, 79:9
**truths** [1] - 46:6
**try** [3] - 12:9, 58:13, 76:17
**trying** [3] - 9:9, 57:10, 57:11
**Tuesday** [5] - 34:6, 34:10, 34:17, 34:23, 34:24
**TUESDAY** [1] - 1:9
**turn** [2] - 17:25, 18:5
**turned** [1] - 60:1
**turns** [1] - 43:17
**Twenty** [2] - 65:2, 74:2
**Twenty-Nine** [1] - 65:2
**Twenty-Seven** [1] - 74:2
**twice** [2] - 12:9, 19:12
**two** [23] - 5:5, 5:22, 9:10, 15:4, 25:2, 34:8, 45:15, 46:6, 49:2, 49:5, 50:25, 52:15, 52:25, 56:7, 57:20, 61:10, 64:4, 70:2, 71:5, 72:19, 73:18, 78:12, 78:13
**tying** [1] - 60:22
**type** [2] - 25:7, 37:10
**typically** [10] - 8:23, 31:13, 32:1, 32:11, 32:24, 52:23, 53:10, 53:23, 54:6, 55:5

**U**

**U.S** [4] - 2:8, 21:15, 23:25
**U.S.C** [1] - 79:8
**ultimate** [1] - 37:14
**unable** [1] - 14:24
**uncle** [1] - 31:9
**under** [17] - 3:4, 5:8, 21:11, 21:17, 22:17, 23:5, 36:15, 39:20, 40:5, 40:15, 40:19,

42:6, 42:16, 42:25, 51:3, 67:15, 68:16
**understood** [3] - 6:6, 39:16, 49:7
**unduly** [2] - 70:21, 77:9
**unfair** [6] - 66:5, 67:9, 67:19, 68:15, 68:17, 68:20
**unfairly** [3] - 51:3, 64:12, 68:1
**unfortunately** [1] - 66:20
**unit** [1] - 5:12
**UNITED** [4] - 1:1, 1:3, 1:9, 1:14
**United** [6] - 2:4, 21:17, 24:7, 48:2, 79:6, 79:12
**universally** [1] - 36:11
**unless** [2] - 31:2, 44:13
**unrelated** [1] - 50:13
**up** [30] - 4:6, 8:25, 12:23, 15:17, 16:4, 17:6, 17:7, 20:25, 21:2, 22:12, 22:15, 22:20, 22:25, 23:5, 24:16, 24:20, 28:14, 28:21, 29:1, 30:22, 30:24, 31:24, 34:16, 35:15, 37:1, 49:3, 62:6, 62:15, 67:4, 71:15
**upset** [5] - 62:12, 68:5, 68:11, 70:7, 70:22
**urges** [1] - 40:23
**user** [12] - 53:23, 54:1, 54:18, 55:14, 56:3, 56:10, 58:10, 58:12, 58:17, 59:13, 70:7
**user's** [1] - 55:6
**username** [1] - 55:6
**users** [3] - 55:5, 55:9, 55:24

**V**

**vague** [1] - 26:2
**value** [9] - 51:13, 64:10, 66:16, 67:13, 67:14, 69:25, 70:23, 71:4, 71:5
**variety** [2] - 41:23, 57:2
**various** [4] - 11:2, 42:8, 55:16, 71:10
**version** [3] - 54:10, 54:12, 60:10

**via** [1] - 70:15
**victim** [21] - 25:21, 29:24, 30:11, 30:12, 32:23, 33:1, 57:6, 58:8, 58:17, 59:17, 61:17, 62:12, 62:20, 63:7, 68:5, 68:7, 68:11, 69:17, 69:20, 69:23
**victim's** [2] - 46:17, 63:4
**victims** [15] - 15:2, 15:6, 15:21, 17:6, 52:22, 53:2, 53:3, 53:5, 55:2, 57:8, 63:1, 66:21, 68:13, 69:13, 70:18
**video** [63] - 51:16, 53:9, 54:4, 54:12, 54:18, 57:25, 58:2, 58:6, 58:7, 58:20, 59:1, 59:9, 59:15, 60:6, 60:13, 60:18, 60:21, 61:2, 61:3, 61:11, 61:23, 62:6, 62:10, 62:11, 62:19, 63:25, 66:9, 66:19, 67:1, 67:2, 67:3, 67:4, 67:5, 67:10, 67:11, 69:3, 69:4, 69:9, 69:17, 69:19, 70:8, 71:19, 72:6, 72:9, 72:10, 72:12, 73:3, 73:8, 73:19, 74:3, 74:5, 74:9, 74:14, 74:15, 74:17, 74:19, 74:25, 75:2, 75:18, 75:19, 75:20
**videos** [47] - 15:20, 51:1, 51:2, 51:4, 51:7, 51:15, 52:21, 52:23, 52:25, 53:5, 53:7, 54:22, 55:4, 55:20, 56:14, 57:3, 57:5, 57:20, 58:4, 58:21, 60:6, 60:19, 60:24, 61:14, 62:7, 62:11, 64:1, 64:4, 64:8, 64:15, 64:20, 65:8, 65:22, 66:6, 66:14, 66:18, 69:18, 70:2, 70:4, 70:6, 70:8, 70:23, 70:24, 71:5, 76:16
**videotape** [4] - 59:24, 63:11, 73:14, 73:17
**view** [4] - 42:4, 50:11, 51:5, 58:15
**viewer** [1] - 53:14
**viewpoint** [1] - 77:8

**vigorously** [2] - 27:20, 27:21
**violated** [1] - 41:7
**violation** [1] - 70:19
**Virginia** [1] - 15:3
**visible** [1] - 60:3
**voice** [2] - 55:1, 73:4
**voices** [1] - 53:4
**voir** [17] - 10:24, 11:1, 11:4, 17:15, 17:16, 20:19, 20:20, 21:13, 22:14, 22:21, 30:15, 31:17, 32:1, 33:3, 33:23, 33:24, 71:12
**voluminous** [1] - 12:22
**vs** [1] - 1:4

## W

**wait** [3] - 10:20, 16:11, 50:14
**waiving** [1] - 43:10
**walls** [2] - 73:9, 73:10
**wants** [1] - 63:5
**ward** [1] - 38:22
**warrant** [3] - 55:18, 72:14, 73:11
**warrants** [3] - 52:20, 55:11, 59:4
**water** [1] - 42:23
**ways** [5] - 52:25, 53:7, 56:23, 66:17, 71:10
**Wednesday** [1] - 9:14
**week** [6] - 14:20, 29:21, 49:22, 61:12, 62:9
**weeks** [7] - 9:5, 10:14, 21:19, 21:20, 55:10, 56:7
**weight** [2] - 25:18, 27:23
**whatsoever** [2] - 46:19, 68:12
**whereas** [3] - 25:3, 66:7
**White** [1] - 22:18
**whole** [3] - 49:22, 53:15, 69:8
**wholly** [1] - 64:8
**wildly** [1] - 9:8
**willing** [2] - 28:12, 63:2
**wishes** [1] - 51:5
**witness** [24] - 15:5, 18:5, 18:11, 18:12, 18:14, 18:17, 18:18, 23:17, 25:19, 26:1, 26:3, 26:5, 31:18, 32:2, 32:18, 34:5,

34:6, 34:10, 34:19, 34:21, 34:22, 34:24, 52:5, 57:6
**witness's** [1] - 32:18
**witnesses** [11] - 5:10, 10:10, 10:11, 15:13, 17:6, 17:23, 18:3, 18:4, 20:14, 34:11, 35:1
**wondering** [2] - 4:15, 4:20
**word** [1] - 58:9
**words** [4] - 19:3, 30:24, 36:17, 42:22
**works** [4] - 5:11, 9:9, 35:18, 59:23
**worse** [1] - 68:4
**worth** [2] - 34:9, 52:14
**wrap** [1] - 35:15
**write** [2] - 23:6, 39:1
**written** [2] - 3:9, 55:25
**wrote** [2] - 3:21, 47:21
**Wyda** [1] - 23:23

## Y

**year** [3] - 16:15, 56:8, 73:20
**years** [5] - 9:9, 13:25, 14:14, 16:14, 43:21
**Yom** [1] - 21:22
**young** [1] - 70:22
**yourself** [1] - 31:19
**yup** [1] - 19:8

## §

**§** [2] - 39:22, 79:8