```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3     UNITED STATES OF AMERICA,)
              Plaintiff ,        )
 4                              )
              vs.               )   CASE NUMBER: GLR 20-0283
 5                              )
       GARY ROCKY JONES,        )      JURY TRIAL VOLUME II
 6          Defendant.          )      EXCERPT OF PROCEEDINGS
       _____)
 7
                      TRANSCRIPT OF PROCEEDINGS
 8        BEFORE THE HONORABLE GEORGE LEVI RUSSELL, III
                    UNITED STATES DISTRICT JUDGE
 9                 Tuesday, September 12, 2023
                       BALTIMORE, MARYLAND
10

11                 A P P E A R A N C E S

12     FOR THE PLAINTIFF:
           BY: PAUL BUDLOW, ESQUIRE
13             COLLEEN McGUINN, ESQUIRE
                OFFICE OF THE UNITED STATES ATTORNEY
14             36 S. Charles Street, 4th Floor
               Baltimore, Maryland  21201
15
       FOR THE DEFENDANT:
16         BY: COURTNEY FRANCIK, ESQUIRE
           BY: KATHERINE NEWBERGER, ESQUIRE
17             Office of the Federal Public Defender
               100 S. Charles Street, Tower II, 9th Floor
18             Baltimore, Maryland  21201

19     Also Present:

20     Rachel Corn, Special Agent, FBI

21     _____

22

23         ***Proceedings Recorded by Mechanical Stenography***
           Transcript Produced by Computer-Aided Transcription
24

25
```

```
 1                    P R O C E E D I N G S

 2           MR. BUDLOW:  This is United States of America v.

 3     Gary Rocky Jones, Criminal Number GLR 20-0283 I'm Paul Budlow

 4     on behalf of the Government.  Joining me at counsel table is

 5     Assistant U.S. Attorney Colleen McGuinn and FBI Special Agent

 6     Rachel Corn.

 7           THE COURT:  All right.  Ms. Francik, always a

 8     pleasure.

 9           MS. FRANCIK:  Good morning, Your Honor.  Courtney

10     Francik on behalf of Mr. Jones and I'm joined here at counsel

11     table by my colleague, Katherine Tang Newberger.

12           THE COURT:  Good morning, everyone. You can be

13     seated. I just want to just sort of preface where we are as

14     far as the status is concerned. And also, without making any

15     sort of legal rulings, sort of provide you with some guidance

16     on my thought process on how this will end up proceeding.

17           First, the defendant is not present in the courthouse

18     yet. We expect him probably either momentarily in the

19     courthouse or arriving on the next shuttle which should be

20     about 20 or 30 minutes out.

21           The second issue is that I was advised by the marshal

22     service that he refused to take his medicine this morning and

23     he received that notification via e-mail. And I planned -- I

24     have requested that the marshal service provide me with a copy

25     and counsel with a copy of the e-mail correspondence and I'll
```

```
1    make it part of the court record.
2         Third, I received correspondence in my inbox today when I
3    arrived at the courthouse which I believe I provided to you
4    which was a letter from Mr. Jones addressed to someone who he
5    had been before that it wasn't me, but I felt it important
6    instead of sending it back as being unsigned or represented by
7    counsel that I received notice of it so I wanted to provide
8    you with notice of it as well. I'm not asking that you do
9    anything with it.
10        I will let Mr. Jones know this in person, but I've also
11   given some significant thought to Ms. Francik's arguments
12   regarding the defendant's constitutional right to be present
13   and have effective assistance of counsel. And I certainly
14   acknowledge that generally speaking Rule 43 mandates that he
15   be physically present, including through all of voir dire and
16   all of trial. There are, of course, exceptions to that.  When
17   the defendant is disruptive he may under certain circumstances
18   be removed from the courtroom. And given where we are as of
19   yesterday and where the defendant was in this Court's mind and
20   I believe the Court found to be disruptive, indeed threatened
21   physical violence to the Court upon his exit and indicating
22   that if he weren't in the chair that he would commit violence
23   against me. In light of that I'm going to have the defendant
24   remain shackled.  However, I'm going to have a towel or cloth
25   or whatever put over the shackles to prevent the prospective
```

1    jurors from seeing that he is shackled.

2         I'm also hopeful that he will wear the civilian clothing

3    that his counsel has provided.  And I presume, Ms. Francik,

4    that you provided clothes that fit him; is that correct?

5             **MS. FRANCIK:**  We hope so, Your Honor. We tried to

6    take measurements in order to find clothing that would fit Mr.

7    Jones.

8             **THE COURT:**  Okay.  And those measurements were

9    confirmed with the clothing?

10            **MS. FRANCIK:**  The clothing we brought, Your Honor,

11   right, was based on the measurements we had taken.

12            **THE COURT:**  Okay. And those measurements were

13   taken --

14            **MS. FRANCIK:**  Last week, Your Honor.  Within the

15   last two weeks.

16            **THE COURT:**  So I presume that he will not put

17   forward a complaint that the clothes don't fit. And to the

18   extent that he refuses to wear clothes that fit after taking

19   measurements, then we will have him in his nonidentified garb.

20   But to the extent that there's anything like "DOC" or

21   "Chesapeake Detention Center," something like that that would

22   be visible, then we would have that covered over and the U.S.

23   Marshal Service indicated that they would be willing to do

24   just that.

25        This is something that I'm going to explain to Mr. Jones

1    when he's out here and I'm trying to be respectful of his

2    right to effective assistance of counsel. But as I indicated,

3    that's not without bounds.  And so what I intended on doing

4    was bringing Mr. Jones out, explaining this to him,

5    admonishing him about interrupting the court proceedings or

6    being disruptive, explain why I'm having him remain shackled,

7    but with a coverup and -- is this court personnel or juror

8    or--

9         **A VOICE:**  I'm with the marshal service.

10        **THE COURT:**  I apologize.  I just didn't want one of

11   our jurors wandering in and I didn't recognize you.

12        And I'll explain why that's the case and the consequences

13   of him failing to abide by those rules. Ms. Francik, I will

14   afford you an opportunity if in the event that he is, indeed,

15   removed, an opportunity to consult with him obviously, but it

16   would be during designated breaks where you would have the

17   opportunity to speak with him.

18        So with those sort of caveats, Ms. Francik, and attempts

19   to ensure access to your client, et cetera, any questions,

20   concerns, anything at all about any of the issues that I've

21   raised?

22        **MS. FRANCIK:**  Good morning, Your Honor. I guess my

23   first question is whether this is a ruling that Your Honor

24   anticipates revisiting, namely whether Mr. Jones can be

25   unshackled at any point during the trial should things develop

```
 1   and Your Honor feel differently about the necessity of

 2   shackles.

 3            THE COURT:  That's absolutely right. Because it

 4   could be, Ms. Francik, that during the course of the

 5   proceedings you and Ms. Newberger would have the opportunity

 6   to consult with him and explain to him, reaffirm to him the

 7   reasons for what I'm doing. Of course I would defer to the law

 8   enforcement partners whose custody he is in regarding their

 9   recommendation related to anything like unshackling, but I

10   don't want a circumstance where he becomes extremely

11   disruptive and you or the prosecutors or any court personnel

12   are harmed. And I want to do everything I can to ensure that

13   that doesn't happen.  But at the same time, I do not want the

14   jury prejudiced by seeing him in handcuffs.

15       There's three court cases where shackling under certain

16   circumstances is perfectly appropriate although it could be

17   prejudicial. And I would admonish the jury or follow your

18   guidance or request regarding instructing the jury related to

19   either his absence or if he's still present on the shackling

20   issue. And I will certainly look favorably upon a request by

21   you to do the same. Next question?

22            MS. FRANCIK:  Yes.  Another request or proposal I

23   have is that during the jury selection process if counsel

24   could be on the other side of this table I think that may make

25   it less likely that the jury panel would be able to see Mr.
```

```
 1    Jones' arms.
 2              THE COURT:  So in other words, have Mr. Jones facing
 3    the panel?
 4              MS. FRANCIK:  Yes. And just for the record, Your
 5    Honor, currently trial table is covered by a tablecloth with a
 6    skirt, yes, which would provide some measure of cover for Mr.
 7    Jones' person.
 8              THE COURT:  But, of course, that would not provide
 9    cover when they come down to speak here individually.
10              MS. FRANCIK:  That's right, Your Honor. I think at
11    that point we may be able to move around the trial table and
12    if Mr. Jones remains at the trial table counsel could approach
13    the bench.
14              THE COURT:  So how would we do that without that
15    being seen? Because what I intend on doing is calling down six
16    at a time and they would line up by this jury box. And then
17    I'd call them up individually one by one and they would speak
18    into the microphone. And then they would exit that way. So I'm
19    trying to figure out logistically how we would accomplish
20    that.
21         Now understand that Mr. Jones would have a cover on his
22    arms, covering his arms like a blanket or some sort of cover
23    so they would not be able to see the shackles that are below
24    his waist.
25              MS. FRANCIK:  Would it be possible, Your Honor, to
```

1  take a brief recess following the questioning of the entire

2  jury panel so that we could sort of reorient Mr. Jones so that

3  when the questioning of --

4       **THE COURT:**  So have everybody come out, we take roll

5  call again when they come back in and resume?

6       **MS. FRANCIK:**  That's right, Your Honor.

7       **THE COURT:**  Okay. I'll hear the Government on that,

8  but it's a little cumbersome.  But at the same time, we've

9  got-- having a shackled defendant is something that is

10  peculiar and I know that my circumstances in the city we would

11  have -- the defendant would be shackled -- Mr. Budlow knows,

12  shackled down the hallway and then the jury would be taken out

13  of the courtroom.  Or sometimes the defendant would come

14  through the judge's chambers unshackled and be seated.  And

15  then during a break or if he had to use the bathroom everyone

16  would go out of the courtroom, he would be shackled again and

17  then bring people back into the courtroom and he would be

18  escorted down to lockup. Unless of course there was a

19  circumstance where he used the bathroom in the judge's

20  chambers and then the defendant jumped out a window and

21  carjacked a cab. So that seems -- I'll hear -- that's a true

22  story. True story.

23      So I mean, I'll hear from Mr. Budlow on that. Hopefully

24  -- honestly, Ms. Francik, I hope to get to that point where we

25  don't have to remove him. So if we're at that point where he

```
1     gets through all the questions then I think that that gives us

2     hope that we might get to that break.

3         Mr. Budlow, anything else to add on that point?

4         MR. BUDLOW:  I was in the State's Attorney's Office

5     when that defendant jumped out of Judge Prevas' bathroom, I

6     think was later found at his girlfriend's house.

7         Your Honor, I don't object to any of this. I will say

8     that I don't see the advantage of moving the defendant. I feel

9     like if his back is to the jurors 90 percent of the time --

10    and I'm going to sit down -- and he's sitting like this, I

11    just don't know the advantage of moving him.  If his arms are

12    covered and he can be under the table it seems to me that --

13        THE COURT:  Except they won't be able to see his

14    face.

15        MR. BUDLOW:  They won't be able to see his face?

16        THE COURT:  If his back is to them when I say "Do

17    any of you know the defendant"  he won't be able to -- if he

18    turns around and stands up, you know, then it's a problem.

19        MR. BUDLOW:  Well, I assume he won't be standing

20    given -- I don't see -- it would be up to the defense, but --

21        THE COURT:  Well, even if he's seated they won't be

22    able to see his face.

23        MR. BUDLOW:  I understand.  So I think maybe for

24    that portion only and then if there is a break, it seems like

25    during all of the rest of the jury selection his back to them
```

1    and his arms underneath make the most sense.

2            **THE COURT:**  That makes sense.

3            **MR. BUDLOW:**  But I mean, I don't object. I think

4    with respect to that plan I don't have any other comment. I do

5    have some other matters, but I don't want to keep you.

6            **THE COURT:**  Very good. Ms. Francik, there was some

7    other matters you needed to address?

8            **MS. FRANCIK:**  Yes, Your Honor. Two brief issues. The

9    first, Your Honor, is it relates to the nature of our request

10   yesterday for a competency evaluation. I just would like to

11   confirm that Your Honor is treating that request as a standing

12   position and that we do not need to continually reiterate that

13   request.

14           **THE COURT:**  Well, unless there's some circumstances

15   which give rise to, for example, another basis or ground for

16   your request for competency -- I mean, for a competency

17   evaluation. I believe that I made an appropriate record

18   regarding the competency issues that there was not -- I did

19   not believe based upon the defendant's previous behavior and

20   responses to my questions that I didn't believe that the

21   reasonable cause standard had been met.  But in the event that

22   there are other circumstances which you believe give rise to

23   additional grounds for a request for a competency hearing I'll

24   certainly hear you out.

25           **MS. FRANCIK:**  Thank you, Your Honor.  The

 1    circumstances as of today is we believe that Mr. Jones is

 2    still being housed at the inmate mental health unit at the

 3    Central Booking intake facility, not the Chesapeake Detention

 4    Facility. As Your Honor may know, the inmate mental health

 5    unit is a locked mental health unit. It's akin to a

 6    residential psychiatric hospital. We do not know whether Mr.

 7    Jones has been medically cleared to return to the Chesapeake

 8    Detention Facility. We also don't even know the last time that

 9    he was assessed by psychiatric staff at the inmate mental

10    health unit, including whether he was assessed prior to being

11    brought to the courthouse yesterday. And so those are the

12    circumstances, Your Honor, as we see them this morning, in

13    addition to the circumstances that we raised yesterday which

14    we think give rise to the need for a competency evaluation in

15    this situation.

16              **THE COURT:**  Understood. And I think that -- I'll

17    hear from the Government on that, but it seems to me right now

18    based upon what we have and the lack of information related to

19    the defendant's mental health state, in addition to what I've

20    observed and what I indicated yesterday, I stand on the

21    request.  But certainly in the event that there's

22    circumstances that develop, for example you get medical

23    records or something along those lines which have an

24    indication of a present, clear mental illness that would meet

25    the qualifications for a challenge on competency then I'll

```
 1        certainly hear from you and invite you to brief it if you
 2        needed to.
 3                    MS. FRANCIK:  Thank you.
 4                    THE COURT:  Anything else?
 5                    MS. FRANCIK:  One moment, Your Honor, if I could
 6        just confer.  Nothing further at this point.
 7                    THE COURT:  Mr. Budlow, anything to add on the point
 8        that she just made regarding the competency?
 9                    MR. BUDLOW:  Nothing to add there.  I think the
10        record that Your Honor made yesterday and today is clear.
11                    THE COURT:  Okay, very good.  I'll hear from you,
12        sir.
13                    MR. BUDLOW:  Your Honor, yesterday there was some
14        discussion about the defendant being at risk of severe
15        physical health problems or potentially if he didn't take his
16        insulin. There was some discussion, it was unclear if he
17        needed to take it twice a day or three times a day. We've been
18        told that he didn't take it today. We have no idea if he took
19        it last night. And the Court was clear that if he didn't take
20        it this morning he wouldn't be transported. I don't -- again,
21        I don't understand the medical consequences here. We don't
22        have any evidence of that.  But what is the risk today and if
23        the defendant is here now does he need to be transported in 35
24        minutes after he gets here to get an injection because there's
25        nobody here that can provide an injection?  I just wanted to
```

```
1     know if there's any clarity in any of those matters. When did
2     he get it last, how often does he need it, and how is he going
3     to get it?
4          THE COURT:  With regard to whether or not he
5     received it last night, I do not know. And I do know, I
6     received confirmation that he did not receive it this morning
7     or he refused it this morning. He's being transported over
8     here with the understanding -- and our marshal service does
9     not have the ability to be able to administer the medication
10    here. So he will be brought over here. He's refused his
11    medication. It's not a psychiatric medication.  And in the
12    event that he suffers from sort of some medical distress while
13    he's here, then we'll provide him with the medical treatment
14    to the extent that we can. But he's here.
15         MR. BUDLOW:  Understood, Your Honor.  And if that's
16    the Court's plan --
17         THE COURT:  And I wanted to respect -- but I had to
18    balance that with respecting his right to assistance of
19    counsel. And so it's a strange place that we're in right now
20    because I want to make sure that he's here and to have the
21    assistance of counsel and to participate in the trial which he
22    wants to do. But at the same time, he's refusing to take his
23    medication. So --
24         MR. BUDLOW:  Understood.  And I have no objection to
25    proceeding that way, I just wanted to see if we had any
```

1   additional clarity on that issue.

2       The other thing is I know that the defense and I have

3   consulted a little bit on what the Court will say to the jury

4   if the defendant is not present. It doesn't look like we need

5   to go there now, so I just wanted to flag that issue that

6   we're in discussions about a possible cautionary instruction

7   early on, as well as obviously later with respect to the jury

8   instructions.

9       **THE COURT:**  Something to the effect of the jury

10  should not provide any weight either way to the absence or

11  presence of the defendant. That's not your concern.

12      **MR. BUDLOW:**  And Ms. Francik provided me with a

13  draft. Again, we can take a look at the details of that later,

14  but I think we reached an agreement there.  And the last thing

15  I want to point out is it might be moot now, if the defendant

16  is removed and if he's allowed to come to court each day and I

17  know there's a lot of issues that might make that not

18  possible, but if he is, I was wondering if the Court was

19  planning on bringing him into the courtroom each morning to

20  see if he is willing to abide by the Court 's instructions

21  regarding his conduct.

22      **THE COURT:**  I think the Fourth Circuit law, the

23  Supreme Court law is clear and the Fourth Circuit law is clear

24  that it's not a forever ban and there is a time where I can --

25  and I should indeed make an inquiry whether or not he can

1    comport himself and whether or not, quite frankly, I believe

2    it. Because if he promises to comport himself and then he

3    fails to do so and then he comes in the next morning and he

4    promises to comport himself, you know, I think I'm afforded

5    some discretion in saying well, I don't believe you based upon

6    what happened yesterday. And so I can exercise that

7    discretion, but the number of times that he is removed will

8    factor into the number of chances he's going to get to

9    participate with his counsel.

10           **MR. BUDLOW:**  Understood, Your Honor. I have one

11   other request which is that I assume you're going to be

12   advising the defendant of a lot of these issues when he comes

13   in today. I know you mentioned yesterday that if he didn't

14   take his insulin you would consider that a waiver of his

15   presence.  I understand we're in a different place today and I

16   have no objection. I do see the possibility that if he refuses

17   to take his insulin and it reaches some sort of dangerous

18   level he will have to be hospitalized or receive medical

19   treatment or be removed from the courtroom.

20           **THE COURT:**  Yup.

21           **MR. BUDLOW:**  And I would ask the Court to advise him

22   now similar to what we discussed yesterday that if that were

23   to occur either while he's in lockup listening or here in the

24   courtroom, that one, that there won't be any motion related to

25   a mistrial for anything that happens in front of the jury and

 1    two, that that would be considered a waiver of --

 2         **THE COURT:**  I don't think I can go there, Mr.

 3    Budlow, and here's why: I'm not a doctor.  I would need a

 4    medical diagnosis of malingering.  I would need a medical

 5    diagnosis of a problem and I'm not going to make a finding

 6    just because he has a medical crisis.

 7         **MR. BUDLOW:**  I guess -- and I understand that that's

 8    your point. I don't know if I was clear. What I'm referring to

 9    is because of the refusal to take his medication if he were to

10    suffer some incident that causes him to leave the courtroom he

11    would be doing that intentionally and that would be delaying

12    the proceedings unless we continued. I think the Court at that

13    point, I would ask the Court and we can deal with it then,

14    that based on his intentional refusal knowing that the

15    proceedings would continue without him, that that should be

16    considered a waiver. Obviously if there was some other medical

17    issue not related to his refusal to take necessary medication

18    that would be different.

19         **THE COURT:**  But how do I know what the medical

20    crisis is if he passes out here because of a lack of -- if he

21    just passes out, so I'm left with, all right, he passed out,

22    he didn't take his meds. We're going to go forward because I

23    think that it's because you didn't take your meds. He would

24    have to be transported to the hospital. There would have to be

25    a medical diagnosis that would be given. He'd say wow, well

1    this -- it would be a medical expert opinion.  In essence, he

2    passed out because he didn't take his meds.

3              **MR. BUDLOW:**  Right.  And maybe that evening if that

4    was what the Court was informed of by whatever place he's

5    receiving treatment, maybe -- so maybe we resume -- maybe we

6    don't resume in the 45 minutes at the end of the day where he

7    passes out.  But if the Court were informed of that and we

8    could address it at the time, the Government -- because that

9    just seems like yet another way this defendant has the ability

10   to attempt to control the Court's docket. But we can

11   certainly--

12             **THE COURT:**  And I get it and defense counsel will be

13   able to take that document and say wait, no, no, no, it was

14   because of X, Y and Z.  And they would presumably get another

15   expert to say no, it wasn't the cause, it was because he had

16   hypertension that that's what happened.  And he probably -- he

17   may end up having other medical conditions other than just a

18   diabetic issue. I don't know.

19             **MR. BUDLOW:**  And I guess I'll ask the Court to make

20   the appropriate findings based on the record at that time and

21   we can just address it then.

22             **THE COURT:**  Okay, all right.

23             **(Discussion was held off the record.)**

24             **THE COURT:**  Counsel, as an option we can move the

25   defendant to the corner of that table and if you wanted to you

 1   could certainly slide -- because of the optics, you could

 2   slide next to him and even when the jurors come down they

 3   would not see that he's shackled.  And then when they exited

 4   they wouldn't see him at all. So that might be a much better

 5   option than moving his location. And then when -- then even

 6   when the jury is seated, that's fine. And then we bring him up

 7   to our courtroom, 7A and we'll have the bunting on that as

 8   well.

 9           **MS. FRANCIK:**  We think that's fine, Your Honor. Our

10   concern is that we would like for Mr. Jones to see the jury

11   panel, to see the jurors. And that option seems to

12   accommodate--

13           **THE COURT:**  And he will be able to look at the

14   gallery and he will be able to see the panel as it comes in.

15           **MS. FRANCIK:**  Correct, Your Honor.  Thank you.

16           **THE COURT:**  All right. Mr. Budlow?

17           **MR. BUDLOW:**  I have a question for defense counsel.

18   Could I have a moment?

19           **THE COURT:**  Yes.  All right, well now I guess we're

20   just waiting for the defendant. I have a court security

21   officer who is trying to check on the update of his

22   transportation circumstance. Oh, this is the other issue.

23   We've got two jurors that I wanted to address as well.  The

24   juror who was late the last time, I think the number was 32 --

25   what was it?  What was the juror number who was late?

```
 1              THE CLERK: 281.

 2              THE COURT:   281. She called and indicated that she

 3     would not be able to be here until 9 and that she needed to

 4     leave early because of child care issues. I did not excuse

 5     her. I wanted to double check with counsel first.

 6        The second juror, Juror 332, was hit by a deer or hit

 7     deer -- she actually hit the deer this morning and so she

 8     would not be available to come in. I take it there's no

 9     objection to 332 being excused; is that correct?

10              MS. FRANCIK:  No objection from the defense.

11              MR. BUDLOW:  That's correct.  No objection.

12              THE COURT:  And with regard to the other juror, 281,

13     is there any objection to 281 being excused from the -- well,

14     I think actually before I make a formal ruling outside the

15     presence of the defendant, I think I need to wait for him to

16     end up being present. But tentatively, is there any objection

17     to excusing Juror No. 281?

18              MR. BUDLOW:  None by the Government, Your Honor.

19              MS. FRANCIK:  None from the defense.

20              THE COURT:  Okay, very good. And Ms. Francik, just

21     remind me of that to reiterate that preliminary ruling when

22     the defendant arrives and is present.

23              MS. FRANCIK:  Yes, Your Honor.

24              THE COURT:  Okay.  So it doesn't look like there's

25     anything else that we can productively handle.  I've got to
```

 1    take a call from the marshal service. I've been asked to call

 2    a member of the marshal service. He's still not here, so I'm

 3    going to step down momentarily and then as soon as I hear

 4    something I'll come down and we can resume, all right?

 5                **(Recess was taken from 9:32 to 9:40 a.m.)**

 6                **THE COURT:**  Thank you very much. You can have a

 7    seat. I did receive a call from the U.S. Marshal Service

 8    regarding transportation. Apparently, in addition to not

 9    taking his meds, he refuses to come to court today. And as a

10    result, I'm going to find that he has waived his right or

11    forfeited his right to be present at least on this day of

12    trial and we can proceed with the jury selection.

13         For the sake of the record, I've requested the marshal

14    service provide me with the e-mails documenting the refusal to

15    engage in transport, as well as the refusal with regard to his

16    medication and I will make that -- once I receive those

17    e-mails, they'll be Court's -- is this a juror?

18                **MS. FRANCIK:**  No, Your Honor.  She's with the

19    Federal Public Defender's Office.

20                **THE COURT:**  Okay. So I will have those two exhibits.

21    Counsel will be able to review those exhibits later on, but it

22    will be a sort of standing transportation. So I'm not going to

23    consider this a waiver or forfeiture of his right to be

24    present now.

25         It's also my understanding he does not want -- he said

1     basically words to the effect of "I don't want to go to trial.

2     I'm not going to trial." So again, these are words that were

3     conveyed to me from the U.S. Marshal which we will place that

4     in -- he's provided me with those exhibits which will be made

5     part of the court file.

6          So with that, is there anything else that we can

7     productively handle before we bring the jury down?

8             **MR. BUDLOW:**  Nothing from the Government, Your

9     Honor. We're ready to proceed.

10            **MS. FRANCIK:**  Your Honor, given that development I

11    do believe we should revisit the issue of an instruction on

12    his absence.

13            **THE COURT:**  Okay.

14            **MS. FRANCIK:**  We have proposed or drafted an

15    instruction that we provided to the Government. I'm not sure

16    whether Government counsel has had an opportunity to review

17    it.

18            **THE COURT:**  All right, I've received -- hang on one

19    second. Is it an agreement, agreed upon instruction?

20            **MR. BUDLOW:**  Your Honor --

21            **THE COURT:**  You can look at it.

22            **MR. BUDLOW:**  I have it. I'm fine with the first one,

23    two, three sentences. I don't think the final sentence is

24    necessary. I mean, that's true of every instruction that the

25    Court gives.

```
 1              MS. FRANCIK:  Does the Court have a copy, Your
 2    Honor?
 3              THE COURT:  Yeah.  We now have a really disgruntled
 4    juror upstairs who doesn't understand why this is not starting
 5    at 9 a.m. when we promised them 9 a.m. and apparently they're
 6    just very agitated. I think that we're ready to go, but tell
 7    me is there an agreement -- can we come to an agreement as to
 8    the defendant's absence?
 9              MS. FRANCIK:  It sounds as though there is one
10    issue.  If I could pass our draft forward to the Court.
11              THE COURT:  Jill, why don't we call jury and tell
12    them to get them ready.
13              THE CLERK:  I told them we'd be up in ten minutes.
14              THE COURT:  But at least announce to them that hey,
15    we're going to be getting ready to line up in like ten minutes
16    so that everybody knows hey, there's some movement there.
17              THE CLERK: Okay.
18              MR. BUDLOW:  Your Honor, are you able to provide us
19    with the juror number of Mr. or Mrs. Disgruntled?
20              THE COURT:  We can get that for you.
21              THE CLERK:  I don't have it yet. I'll get it, yes,
22    right now, Judge.
23              THE COURT:  How about this:  Instead of "excused" we
24    say "absent." He is absent from the court for reasons that
25    have nothing to do with his guilt or innocence.  Because I
```

```
 1    haven't excused him. He is absent from the courtroom for
 2    reasons that have nothing to do with his guilt or innocence.
 3              MS. FRANCIK:  That's fine with the defense, Your
 4    Honor.
 5              THE COURT:  Anything from you, Mr. Budlow?
 6              MR. BUDLOW:  No, Your Honor.
 7              THE COURT:  You cannot draw any adverse inference
 8    from this fact.  For you to draw any such inference would be
 9    wrong.  Indeed, it would be a violation of your oath as a
10    juror. Any objection?
11              MR. BUDLOW:  I don't believe the last sentence is
12    necessary, Your Honor. I believe the jurors are always
13    instructed to follow all of the Court's instructions. I've
14    never heard them told that something was wrong.
15              THE COURT:  It sort of really highlights the
16    circumstance of potentially why he is not here. But, you know,
17    if you -- I will overrule the Government's objection and read
18    it if you need it.
19              MS. FRANCIK:  Your Honor, we propose sort of editing
20    or slimming that sentence to "For any of you to draw such an
21    inference would be a violation of your oath as a juror." So to
22    remove the clause that says "would be wrong" and to --
23              THE COURT:  "Indeed" -- just say "would be a
24    violation of your oath as a juror"?
25              MS. FRANCIK:  Yes, Your Honor.
```

```
 1              THE COURT:  All right. Mr. Budlow, same objection
 2     or--
 3              MR. BUDLOW:  Your Honor, I defer to the Court.
 4              THE COURT:  Okay, very good. I'm going to go ahead
 5     and read it that way.  So we can go ahead and get this jury.
 6          Your colleague at the Public Defender's Office is more
 7     than happy to have a seat there at the trial table because
 8     we're going to need those seats for a prospective jury.
 9          Is this gentleman with the U.S. Attorney's Office?
10              A VOICE:  I'm with Judge Rubin.
11              THE COURT:  Okay, you can have a seat in the jury
12     box if you'd like for the time being. I'm going to read this
13     special instruction regarding his absence when I ask you to
14     introduce yourselves. So, you know, the defendant in this case
15     is Gary Jones. Then I'll read the instructions. Do any of you
16     believe you know Mr. Jones or have any personal relationship
17     either in the past or the present with Mr. Jones. If so,
18     please stand.
19              MR. BUDLOW:  I just want to throw out that I do have
20     a photo of Mr. Jones.  If the defense wants we can put -- I
21     don't know if we have access to the screens.  I just put it
22     out there as an option.
23              THE COURT:  It's not a booking photo, is it?
24              MR. BUDLOW:  It is a photo that--
25              THE COURT:  We're not going to do a booking photo.
```

1       **MR. BUDLOW:**  --that is part of the evidence list

2    that the defense has indicated that they do not object to. I

3    can show it to them.

4            **THE COURT:** We've got a projector here if we want it

5    here?

6            **MR. BUDLOW:**  The answer is "No, no way."

7            **THE COURT:**  By the way, Counsel, what we'll do is

8    with Mr. Jones not here, to the extent that you can have the

9    stamina to be able to just try to get this picked before

10   lunch, that would be great. So if you need to excuse

11   yourselves for the time -- for a moment, that would be

12   something that you might want to think about doing because I

13   just assume plow through. And I'm going to ask this of the

14   jurors as well. I tell them something to the effect of we can

15   do this by consensus or we can maybe carry this over until

16   tomorrow. How many people by a show of hands want to just get

17   this over with?  And inevitably we get all the hands raised.

18   So I'm going to just plow through.  We'll take a break for

19   lunch and then we will introduce them up to 7A and we'll begin

20   with openings.

21           **MR. BUDLOW:**  We have a witness present and hopefully

22   if we have time we'll get to today from out of town.

23           **THE COURT:**  Perfect.

24           **MS. FRANCIK:**  Your Honor, if I may be excused?

25           **THE COURT:**  Yes.  That's why I teed it up like that.

```
 1              MS. FRANCIK:  Thank you.
 2              MR. BUDLOW:  Your Honor, you've been provided with
 3   the Government's list of people who they may mention?
 4              THE COURT:  No, I need that.
 5              MR. BUDLOW:  I provided a copy, a number of copies
 6   to -- I'll wait until the courtroom deputy returns, unless you
 7   want it now.
 8              THE COURT:  Are there any strange names,
 9   pronunciations that I need to be concerned about?
10              MS. NEWBERGER:  There are 77, just so you're
11   prepared.
12              MR. BUDLOW:  But they're 77 easy to pronounce names.
13   The most challenging might be Linh Phung.
14              (Prospective jury panel entered the courtroom at
15   9:56 a.m.)
16              THE COURT:  Counsel, can I see you up at the bench
17   real quick?
18              (Counsel approached the bench.)
19              THE COURT:  Just to let you know, because I found
20   the defendant has waived his presence here, I'm going to make
21   a ruling regarding Jurors number 281 and 332. I had originally
22   deferred ruling on striking those or excusing those jurors
23   because I anticipated the defendant to be present. He is not
24   present. He waived his presence, so I'm going to go ahead and
25   issue that ruling. All right, thank you very much.
```

1          (Counsel returned to their trial tables.)

2          (Requested portion of transcript is complete.)

3             CERTIFICATE OF OFFICIAL REPORTER

4

5          I, Nadine M. Bachmann, Certified Realtime Reporter

6    and Registered Merit Reporter, in and for the United States

7    District Court for the District of Maryland, do hereby

8    certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

9    true and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13

14                    Dated this 2nd day of January, 2024.

15

16                         -S-

17        _____

18             NADINE M. BACHMANN, CRR, RMR
               FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25

## 1

**100** [1] - 1:17
**12** [1] - 1:9

## 2

**20** [1] - 2:20
**20-0283** [2] - 1:4, 2:3
**2023** [1] - 1:9
**2024** [1] - 27:14
**21201** [2] - 1:14, 1:18
**28** [1] - 27:8
**281** [6] - 19:1, 19:2, 19:12, 19:13, 19:17, 26:21
**2nd** [1] - 27:14

## 3

**30** [1] - 2:20
**32** [1] - 18:24
**332** [3] - 19:6, 19:9, 26:21
**35** [1] - 12:23
**36** [1] - 1:14

## 4

**43** [1] - 3:14
**45** [1] - 17:6
**4th** [1] - 1:14

## 7

**753** [1] - 27:8
**77** [2] - 26:10, 26:12
**7A** [2] - 18:7, 25:19

## 9

**9** [3] - 19:3, 22:5
**90** [1] - 9:9
**9:32** [1] - 20:5
**9:40** [1] - 20:5
**9:56** [1] - 26:15
**9th** [1] - 1:17

## A

**a.m** [4] - 20:5, 22:5, 26:15
**abide** [2] - 5:13, 14:20
**ability** [2] - 13:9, 17:9
**able** [15] - 6:25, 7:11, 7:23, 9:13, 9:15, 9:17, 9:22, 13:9, 17:13, 18:13, 18:14, 19:3, 20:21, 22:18, 25:9

**above-entitled** [1] - 27:10
**absence** [5] - 6:19, 14:10, 21:12, 22:8, 24:13
**absent** [3] - 22:24, 23:1
**absolutely** [1] - 6:3
**access** [2] - 5:19, 24:21
**accommodate** [1] - 18:12
**accomplish** [1] - 7:19
**acknowledge** [1] - 3:14
**add** [3] - 9:3, 12:7, 12:9
**addition** [3] - 11:13, 11:19, 20:8
**additional** [2] - 10:23, 14:1
**address** [4] - 10:7, 17:8, 17:21, 18:23
**addressed** [1] - 3:4
**administer** [1] - 13:9
**admonish** [1] - 6:17
**admonishing** [1] - 5:5
**advantage** [2] - 9:8, 9:11
**adverse** [1] - 23:7
**advise** [1] - 15:21
**advised** [1] - 2:21
**advising** [1] - 15:12
**afford** [1] - 5:14
**afforded** [1] - 15:4
**Agent** [2] - 1:20, 2:5
**agitated** [1] - 22:6
**agreed** [1] - 21:19
**agreement** [4] - 14:14, 21:19, 22:7
**ahead** [3] - 24:4, 24:5, 26:24
**Aided** [1] - 1:23
**akin** [1] - 11:5
**allowed** [1] - 14:16
**AMERICA** [1] - 1:3
**America** [1] - 2:2
**announce** [1] - 22:14
**answer** [1] - 25:6
**anticipated** [1] - 26:23
**anticipates** [1] - 5:24
**apologize** [1] - 5:10
**approach** [1] - 7:12
**approached** [1] - 26:18
**appropriate** [3] - 6:16, 10:17, 17:20
**arguments** [1] - 3:11
**arms** [5] - 7:1, 7:22,

**9:11, 10:1
**arrived** [1] - 3:3
**arrives** [1] - 19:22
**arriving** [1] - 2:19
**assessed** [2] - 11:9, 11:10
**assistance** [4] - 3:13, 5:2, 13:18, 13:21
**Assistant** [1] - 2:5
**assume** [3] - 9:19, 15:11, 25:13
**attempt** [1] - 17:10
**attempts** [1] - 5:18
**ATTORNEY** [1] - 1:13
**Attorney** [1] - 2:5
**Attorney's** [2] - 9:4, 24:9
**available** [1] - 19:8

## B

**Bachmann** [1] - 27:5
**BACHMANN** [1] - 27:18
**balance** [1] - 13:18
**BALTIMORE** [1] - 1:9
**Baltimore** [2] - 1:14, 1:18
**ban** [1] - 14:24
**based** [6] - 4:11, 10:19, 11:18, 15:5, 16:14, 17:20
**basis** [1] - 10:15
**bathroom** [3] - 8:15, 8:19, 9:5
**becomes** [1] - 6:10
**BEFORE** [1] - 1:8
**begin** [1] - 25:19
**behalf** [2] - 2:4, 2:10
**behavior** [1] - 10:19
**below** [1] - 7:23
**bench** [3] - 7:13, 26:16, 26:18
**better** [1] - 18:4
**bit** [1] - 14:3
**blanket** [1] - 7:22
**booking** [2] - 24:23, 24:25
**Booking** [1] - 11:3
**bounds** [1] - 5:3
**box** [2] - 7:16, 24:12
**break** [4] - 8:15, 9:2, 9:24, 25:18
**breaks** [1] - 5:16
**brief** [3] - 8:1, 10:8, 12:1
**bring** [3] - 8:17, 18:6, 21:7
**bringing** [2] - 5:4, 14:19

**brought** [3] - 4:10, 11:11, 13:10
**Budlow** [9] - 2:3, 8:11, 8:23, 9:3, 12:7, 16:3, 18:16, 23:5, 24:1
**BUDLOW** [35] - 1:12, 2:2, 9:4, 9:15, 9:19, 9:23, 10:3, 12:9, 12:13, 13:15, 13:24, 14:12, 15:10, 15:21, 16:7, 17:3, 17:19, 18:17, 19:11, 19:18, 21:8, 21:20, 21:22, 22:18, 23:6, 23:11, 24:3, 24:19, 24:24, 25:1, 25:6, 25:21, 26:2, 26:5, 26:12
**bunting** [1] - 18:7
**BY** [3] - 1:12, 1:16, 1:16

## C

**cab** [1] - 8:21
**cannot** [1] - 23:7
**care** [1] - 19:4
**carjacked** [1] - 8:21
**carry** [1] - 25:15
**case** [2] - 5:12, 24:14
**CASE** [1] - 1:4
**cases** [1] - 6:15
**causes** [1] - 16:10
**cautionary** [1] - 14:6
**caveats** [1] - 5:18
**Center** [1] - 4:21
**Central** [1] - 11:3
**certain** [2] - 3:17, 6:15
**certainly** [7] - 3:13, 6:20, 10:24, 11:21, 12:1, 17:11, 18:1
**CERTIFICATE** [1] - 27:3
**Certified** [1] - 27:5
**certify** [1] - 27:8
**cetera** [1] - 5:19
**chair** [1] - 3:22
**challenge** [1] - 11:25
**challenging** [1] - 26:13
**chambers** [2] - 8:14, 8:20
**chances** [1] - 15:8
**Charles** [2] - 1:14, 1:17
**check** [2] - 18:21, 19:5
**Chesapeake** [3] - 4:21, 11:3, 11:7
**child** [1] - 19:4
**Circuit** [2] - 14:22, 14:23

**circumstance** [4] - 6:10, 8:19, 18:22, 23:16
**circumstances** [9] - 3:17, 6:16, 8:10, 10:14, 10:22, 11:1, 11:12, 11:13, 11:22
**city** [1] - 8:10
**civilian** [1] - 4:2
**clarity** [2] - 13:1, 14:1
**clause** [1] - 23:22
**clear** [6] - 11:24, 12:10, 12:19, 14:23, 16:8
**cleared** [1] - 11:7
**CLERK** [4] - 19:1, 22:13, 22:17, 22:21
**client** [1] - 5:19
**cloth** [1] - 3:24
**clothes** [4] - 4:4, 4:17, 4:18
**clothing** [4] - 4:2, 4:6, 4:9, 4:10
**colleague** [2] - 2:11, 24:6
**COLLEEN** [1] - 1:13
**Colleen** [1] - 2:5
**comment** [1] - 10:4
**commit** [1] - 3:22
**competency** [8] - 10:10, 10:16, 10:18, 10:23, 11:14, 11:25, 12:8
**complaint** [1] - 4:17
**complete** [1] - 27:2
**comport** [3] - 15:1, 15:2, 15:4
**Computer** [1] - 1:23
**Computer-Aided** [1] - 1:23
**concern** [2] - 14:11, 18:10
**concerned** [2] - 2:14, 26:9
**concerns** [1] - 5:20
**conditions** [1] - 17:17
**conduct** [1] - 14:21
**confer** [1] - 12:6
**Conference** [1] - 27:12
**confirm** [1] - 10:11
**confirmation** [1] - 13:6
**confirmed** [1] - 4:9
**conformance** [1] - 27:11
**consensus** [1] - 25:15
**consequences** [2] - 5:12, 12:21
**consider** [2] - 15:14,

20:23
**considered** [2] - 16:1, 16:16
**constitutional** [1] - 3:12
**consult** [2] - 5:15, 6:6
**consulted** [1] - 14:3
**continually** [1] - 10:12
**continue** [1] - 16:15
**continued** [1] - 16:12
**control** [1] - 17:10
**conveyed** [1] - 21:3
**copies** [1] - 26:5
**copy** [4] - 2:24, 2:25, 22:1, 26:5
**Corn** [2] - 1:20, 2:6
**corner** [1] - 17:25
**correct** [5] - 4:4, 18:15, 19:9, 19:11, 27:9
**correspondence** [2] - 2:25, 3:2
**counsel** [19] - 2:4, 2:10, 2:25, 3:7, 3:13, 4:3, 5:2, 6:23, 7:12, 13:19, 13:21, 15:9, 17:12, 17:24, 18:17, 19:5, 20:21, 21:16, 26:16
**Counsel** [3] - 25:7, 26:18, 27:1
**course** [5] - 3:16, 6:4, 6:7, 7:8, 8:18
**COURT** [68] - 1:1, 2:7, 2:12, 4:8, 4:12, 4:16, 5:10, 6:3, 7:2, 7:8, 7:14, 8:4, 8:7, 9:13, 9:16, 9:21, 10:2, 10:6, 10:14, 11:16, 12:4, 12:7, 12:11, 13:4, 13:17, 14:9, 14:22, 15:20, 16:2, 16:19, 17:12, 17:22, 17:24, 18:13, 18:16, 18:19, 19:2, 19:12, 19:20, 19:24, 20:6, 20:20, 21:13, 21:18, 21:21, 22:3, 22:11, 22:14, 22:20, 22:23, 23:5, 23:7, 23:15, 23:23, 24:1, 24:4, 24:11, 24:23, 24:25, 25:4, 25:7, 25:23, 25:25, 26:4, 26:8, 26:16, 26:19, 27:18
**court** [10] - 3:1, 5:5, 5:7, 6:11, 6:15, 14:16, 18:20, 20:9, 21:5, 22:24
**Court** [18] - 3:20, 3:21,

12:19, 14:3, 14:18, 14:20, 14:23, 15:21, 16:12, 16:13, 17:4, 17:7, 17:19, 21:25, 22:1, 22:10, 24:3, 24:7
**Court's** [5] - 3:19, 13:16, 17:10, 20:17, 23:13
**courthouse** [4] - 2:17, 2:19, 3:3, 11:11
**COURTNEY** [1] - 1:16
**Courtney** [1] - 2:9
**courtroom** [12] - 3:18, 8:13, 8:16, 8:17, 14:19, 15:19, 15:24, 16:10, 18:7, 23:1, 26:6, 26:14
**cover** [4] - 7:6, 7:9, 7:21, 7:22
**covered** [4] - 4:22, 7:5, 9:12
**covering** [1] - 7:22
**coverup** [1] - 5:7
**Criminal** [1] - 2:3
**crisis** [2] - 16:6, 16:20
**CRR** [1] - 27:18
**cumbersome** [1] - 8:8
**custody** [1] - 6:8

## D

**dangerous** [1] - 15:17
**Dated** [1] - 27:14
**deal** [1] - 16:13
**deer** [3] - 19:6, 19:7
**defendant** [25] - 2:17, 3:17, 3:19, 3:23, 8:9, 8:11, 8:13, 8:20, 9:5, 9:8, 9:17, 12:14, 12:23, 14:4, 14:11, 14:15, 15:12, 17:9, 17:25, 18:20, 19:15, 19:22, 24:14, 26:20, 26:23
**Defendant** [1] - 1:6
**DEFENDANT** [1] - 1:15
**defendant's** [4] - 3:12, 10:19, 11:19, 22:8
**Defender** [1] - 1:17
**Defender's** [2] - 20:19, 24:6
**defense** [9] - 9:20, 14:2, 17:12, 18:17, 19:10, 19:19, 23:3, 24:20, 25:2
**defer** [2] - 6:7, 24:3
**deferred** [1] - 26:22
**delaying** [1] - 16:11

**deputy** [1] - 26:6
**designated** [1] - 5:16
**details** [1] - 14:13
**Detention** [3] - 4:21, 11:3, 11:8
**develop** [2] - 5:25, 11:22
**development** [1] - 21:10
**diabetic** [1] - 17:18
**diagnosis** [1] - 16:4, 16:5, 16:25
**different** [2] - 15:15, 16:18
**differently** [1] - 6:1
**dire** [1] - 3:15
**discretion** [2] - 15:5, 15:7
**discussed** [1] - 15:22
**Discussion** [1] - 17:23
**discussion** [2] - 12:14, 12:16
**discussions** [1] - 14:6
**disgruntled** [2] - 22:3, 22:19
**disruptive** [4] - 3:17, 3:20, 5:6, 6:11
**distress** [1] - 13:12
**District** [2] - 27:7
**DISTRICT** [3] - 1:1, 1:1, 1:8
**DIVISION** [1] - 1:2
**DOC** [1] - 4:20
**docket** [1] - 17:10
**doctor** [1] - 16:3
**document** [1] - 17:13
**documenting** [1] - 20:14
**double** [1] - 19:5
**down** [9] - 7:9, 7:15, 8:12, 8:18, 9:10, 18:2, 20:3, 20:4, 21:7
**draft** [2] - 14:13, 22:10
**drafted** [1] - 21:14
**draw** [3] - 23:7, 23:8, 23:20
**during** [6] - 5:16, 5:25, 6:4, 6:23, 8:15, 9:25

## E

**e-mail** [2] - 2:23, 2:25
**e-mails** [2] - 20:14, 20:17
**early** [2] - 14:7, 19:4
**easy** [1] - 26:12
**editing** [1] - 23:19
**effect** [3] - 14:9, 21:1, 25:14

**effective** [2] - 3:13, 5:2
**either** [5] - 2:18, 6:19, 14:10, 15:23, 24:17
**end** [4] - 2:16, 17:6, 17:17, 19:16
**enforcement** [1] - 6:8
**engage** [1] - 20:15
**ensure** [2] - 5:19, 6:12
**entered** [1] - 26:14
**entire** [1] - 8:1
**entitled** [1] - 27:10
**escorted** [1] - 8:18
**ESQUIRE** [4] - 1:12, 1:13, 1:16, 1:16
**essence** [1] - 17:1
**et** [1] - 5:19
**evaluation** [2] - 10:10, 10:17, 11:14
**evening** [1] - 17:3
**event** [4] - 5:14, 10:21, 11:21, 13:12
**evidence** [2] - 12:22, 25:1
**example** [2] - 10:15, 11:22
**except** [1] - 9:13
**exceptions** [1] - 3:16
**EXCERPT** [1] - 1:6
**excuse** [2] - 19:4, 25:10
**excused** [5] - 19:9, 19:13, 22:23, 23:1, 25:24
**excusing** [2] - 19:17, 26:22
**exercise** [1] - 15:6
**exhibits** [3] - 20:20, 20:21, 21:4
**exit** [2] - 3:21, 7:18
**exited** [1] - 18:3
**expect** [1] - 2:18
**expert** [2] - 17:1, 17:15
**explain** [4] - 4:25, 5:6, 5:12, 6:6
**explaining** [1] - 5:4
**extent** [4] - 4:18, 4:20, 13:14, 25:8
**extremely** [1] - 6:10

## F

**face** [3] - 9:14, 9:15, 9:22
**facility** [1] - 11:3
**Facility** [2] - 11:4, 11:8
**facing** [1] - 7:2
**fact** [1] - 23:8
**factor** [1] - 15:8
**failing** [1] - 5:13

**fails** [1] - 15:3
**far** [1] - 2:14
**favorably** [1] - 6:20
**FBI** [2] - 1:20, 2:5
**FEDERAL** [1] - 27:18
**Federal** [2] - 1:17, 20:19
**felt** [1] - 3:5
**figure** [1] - 7:19
**file** [1] - 21:5
**final** [1] - 21:23
**findings** [1] - 17:20
**fine** [4] - 18:6, 18:9, 21:22, 23:3
**first** [5] - 2:17, 5:23, 10:9, 19:5, 21:22
**fit** [4] - 4:4, 4:6, 4:17, 4:18
**flag** [1] - 14:5
**Floor** [2] - 1:14, 1:17
**follow** [2] - 6:17, 23:13
**following** [1] - 8:1
**FOR** [3] - 1:1, 1:12, 1:15
**foregoing** [1] - 27:8
**forever** [1] - 14:24
**forfeited** [1] - 20:11
**forfeiture** [1] - 20:23
**formal** [1] - 19:14
**format** [1] - 27:11
**forward** [3] - 4:17, 16:22, 22:10
**Fourth** [2] - 14:22, 14:23
**Francik** [10] - 2:7, 2:10, 4:3, 5:13, 5:18, 6:4, 8:24, 10:6, 14:12, 19:20
**FRANCIK** [30] - 1:16, 2:9, 4:5, 4:10, 4:14, 5:22, 6:22, 7:4, 7:10, 7:25, 8:6, 10:8, 10:25, 12:3, 12:5, 18:9, 18:15, 19:10, 19:19, 19:23, 20:18, 21:10, 21:14, 22:1, 22:9, 23:3, 23:19, 23:25, 25:24, 26:1
**Francik's** [1] - 3:11
**frankly** [1] - 15:1
**front** [1] - 15:25

## G

**gallery** [1] - 18:14
**garb** [1] - 4:19
**GARY** [1] - 1:5
**Gary** [2] - 2:3, 24:15
**generally** [1] - 3:14
**gentleman** [1] - 24:9

**GEORGE** [1] - 1:8
**girlfriend's** [1] - 9:6
**given** [5] - 3:11, 3:18, 9:20, 16:25, 21:10
**GLR** [2] - 1:4, 2:3
**Government** [8] - 2:4, 8:7, 11:17, 17:8, 19:18, 21:8, 21:15, 21:16
**Government's** [2] - 23:17, 26:3
**great** [1] - 25:10
**ground** [1] - 10:15
**grounds** [1] - 10:23
**guess** [4] - 5:22, 16:7, 17:19, 18:19
**guidance** [2] - 2:15, 6:18
**guilt** [2] - 22:25, 23:2

**H**

**hallway** [1] - 8:12
**handcuffs** [1] - 6:14
**handle** [2] - 19:25, 21:7
**hands** [2] - 25:16, 25:17
**hang** [1] - 21:18
**happy** [1] - 24:7
**harmed** [1] - 6:12
**health** [6] - 11:2, 11:4, 11:5, 11:10, 11:19, 12:15
**hear** [8] - 8:7, 8:21, 8:23, 10:24, 11:17, 12:1, 12:11, 20:3
**heard** [1] - 23:14
**hearing** [1] - 10:23
**held** [2] - 17:23, 27:10
**hereby** [1] - 27:7
**highlights** [1] - 23:15
**himself** [3] - 15:1, 15:2, 15:4
**hit** [3] - 19:6, 19:7
**honestly** [1] - 8:24
**Honor** [41] - 2:9, 4:5, 4:10, 4:14, 5:22, 5:23, 6:1, 7:5, 7:10, 7:25, 8:6, 9:7, 10:8, 10:9, 10:11, 10:25, 11:4, 11:12, 12:5, 12:10, 12:13, 13:15, 15:10, 18:9, 18:15, 19:18, 19:23, 20:18, 21:9, 21:10, 21:20, 22:2, 22:18, 23:4, 23:6, 23:12, 23:19, 23:25, 24:3, 25:24, 26:2

**HONORABLE** [1] - 1:8
**hope** [3] - 4:5, 8:24, 9:2
**hopeful** [1] - 4:2
**hopefully** [2] - 8:23, 25:21
**hospital** [2] - 11:6, 16:24
**hospitalized** [1] - 15:18
**house** [1] - 9:6
**housed** [1] - 11:2
**hypertension** [1] - 17:16

**I**

**idea** [1] - 12:18
**II** [2] - 1:5, 1:17
**III** [1] - 1:8
**illness** [1] - 11:24
**important** [1] - 3:5
**IN** [1] - 1:1
**inbox** [1] - 3:2
**incident** [1] - 16:10
**including** [2] - 3:15, 11:10
**indeed** [3] - 2:10, 5:14, 14:25, 23:9, 23:23
**indicated** [5] - 4:23, 5:2, 11:20, 19:2, 25:2
**indicating** [1] - 3:21
**indication** [1] - 11:24
**individually** [2] - 7:9, 7:17
**inevitably** [1] - 25:17
**inference** [3] - 23:7, 23:8, 23:21
**information** [1] - 11:18
**informed** [2] - 17:4, 17:7
**injection** [2] - 12:24, 12:25
**inmate** [3] - 11:2, 11:4, 11:9
**innocence** [2] - 22:25, 23:2
**inquiry** [1] - 14:25
**instead** [2] - 3:6, 22:23
**instructed** [1] - 23:13
**instructing** [1] - 6:18
**instruction** [6] - 14:6, 21:11, 21:15, 21:19, 21:24, 24:13
**instructions** [4] - 14:8, 14:20, 23:13,

24:15
**insulin** [3] - 12:16, 15:14, 15:17
**intake** [1] - 11:3
**intend** [1] - 7:15
**intended** [1] - 5:3
**intentional** [1] - 16:14
**intentionally** [1] - 16:11
**interrupting** [1] - 5:5
**introduce** [2] - 24:14, 25:19
**invite** [1] - 12:1
**issue** [10] - 2:21, 6:20, 14:1, 14:5, 16:17, 17:18, 18:22, 21:11, 22:10, 26:25
**issues** [6] - 5:20, 10:8, 10:18, 14:17, 15:12, 19:4

**J**

**January** [1] - 27:14
**Jill** [1] - 22:11
**joined** [1] - 2:10
**Joining** [1] - 2:4
**JONES** [1] - 1:5
**Jones** [20] - 2:3, 2:10, 3:4, 3:10, 4:7, 4:25, 5:4, 5:24, 7:2, 7:12, 7:21, 8:2, 11:1, 11:7, 18:10, 24:15, 24:16, 24:17, 24:20, 25:8
**Jones'** [2] - 7:1, 7:7
**JUDGE** [1] - 1:8
**Judge** [3] - 9:5, 22:22, 24:10
**judge's** [2] - 8:14, 8:19
**Judicial** [1] - 27:12
**jumped** [1] - 8:20, 9:5
**juror** [11] - 5:7, 18:24, 18:25, 19:6, 19:12, 20:17, 22:4, 22:19, 23:10, 23:21, 23:24
**Juror** [2] - 19:6, 19:17
**jurors** [9] - 4:1, 5:11, 9:9, 18:2, 18:11, 18:23, 23:12, 25:14, 26:22
**Jurors** [1] - 26:21
**jury** [22] - 6:14, 6:17, 6:18, 6:23, 6:25, 7:16, 8:2, 8:12, 9:25, 14:3, 14:7, 14:9, 15:25, 18:6, 18:10, 20:12, 21:7, 22:11, 24:5, 24:8, 24:11, 26:14
**JURY** [1] - 1:5

**K**

**Katherine** [1] - 2:11
**KATHERINE** [1] - 1:16
**keep** [1] - 10:5
**knowing** [1] - 16:14
**knows** [2] - 8:11, 22:16

**L**

**lack** [2] - 11:18, 16:20
**last** [9] - 4:14, 4:15, 11:8, 12:19, 13:2, 13:5, 14:14, 18:24, 23:11
**late** [2] - 18:24, 18:25
**law** [4] - 6:7, 14:22, 14:23
**least** [2] - 20:11, 22:14
**leave** [2] - 16:10, 19:4
**left** [1] - 16:21
**legal** [1] - 2:15
**less** [1] - 6:25
**letter** [1] - 3:4
**level** [1] - 15:18
**LEVI** [1] - 1:8
**light** [1] - 3:23
**likely** [1] - 6:25
**line** [2] - 7:16, 22:15
**lines** [1] - 11:23
**Linh** [1] - 26:13
**list** [2] - 25:1, 26:3
**listening** [1] - 15:23
**location** [1] - 18:5
**locked** [1] - 11:5
**lockup** [2] - 8:18, 15:23
**logistically** [1] - 7:19
**look** [6] - 6:20, 14:4, 14:13, 18:13, 19:24, 21:21
**lunch** [2] - 25:10, 25:19

**M**

**mail** [2] - 2:23, 2:25
**mails** [2] - 20:14, 20:17
**malingering** [1] - 16:4
**mandates** [1] - 3:14
**marshal** [7] - 2:21, 2:24, 5:9, 13:8, 20:1, 20:2, 20:13
**Marshal** [3] - 4:23, 20:7, 21:3
**MARYLAND** [2] - 1:1, 1:9
**Maryland** [3] - 1:14,

1:18, 27:7
**matter** [1] - 27:10
**matters** [3] - 10:5, 10:7, 13:1
**McGuinn** [2] - 1:13, 2:5
**mean** [4] - 8:23, 10:3, 10:16, 21:24
**measure** [1] - 7:6
**measurements** [5] - 4:6, 4:8, 4:11, 4:12, 4:19
**Mechanical** [1] - 1:23
**medical** [13] - 11:22, 12:21, 13:12, 13:13, 15:18, 16:4, 16:6, 16:16, 16:19, 16:25, 17:1, 17:17
**medically** [1] - 11:7
**medication** [7] - 13:9, 13:11, 13:23, 16:9, 16:17, 20:16
**medicine** [1] - 2:22
**meds** [4] - 16:22, 16:23, 17:2, 20:9
**meet** [1] - 11:24
**member** [1] - 20:2
**mental** [6] - 11:2, 11:4, 11:5, 11:9, 11:19, 11:24
**mention** [1] - 26:3
**mentioned** [1] - 15:13
**Merit** [1] - 27:6
**met** [1] - 10:21
**microphone** [1] - 7:18
**might** [6] - 9:2, 14:15, 14:17, 18:4, 25:12, 26:13
**mind** [1] - 3:19
**minutes** [5] - 2:20, 12:24, 17:6, 22:13, 22:15
**mistrial** [1] - 15:25
**moment** [3] - 12:5, 18:18, 25:11
**momentarily** [2] - 2:18, 20:3
**moot** [1] - 14:15
**morning** [11] - 2:9, 2:12, 2:22, 5:22, 11:12, 12:20, 13:6, 13:7, 14:19, 15:3, 19:7
**most** [2] - 10:1, 26:13
**motion** [1] - 15:24
**move** [2] - 7:11, 17:24
**movement** [1] - 22:16
**moving** [2] - 9:8, 9:11, 18:5
**MR** [34] - 2:2, 9:4,

9:15, 9:19, 9:23,
10:3, 12:9, 12:13,
13:15, 13:24, 14:12,
15:10, 15:21, 16:7,
17:3, 17:19, 18:17,
19:11, 19:18, 21:8,
21:20, 21:22, 22:18,
23:6, 23:11, 24:3,
24:19, 24:24, 25:1,
25:6, 25:21, 26:2,
26:5, 26:12
**MS** [30] - 2:9, 4:5,
4:10, 4:14, 5:22,
6:22, 7:4, 7:10, 7:25,
8:6, 10:8, 10:25,
12:3, 12:5, 18:9,
18:15, 19:10, 19:19,
19:23, 20:18, 21:10,
21:14, 22:1, 22:9,
23:3, 23:19, 23:25,
25:24, 26:1, 26:10

## N

**Nadine** [1] - 27:5
**NADINE** [1] - 27:18
**namely** [1] - 5:24
**names** [2] - 26:8,
26:12
**nature** [1] - 10:9
**necessary** [3] - 16:17,
21:24, 23:12
**necessity** [1] - 6:1
**need** [13] - 10:12,
11:14, 12:23, 13:2,
14:4, 16:3, 16:4,
19:15, 23:18, 24:8,
25:10, 26:4, 26:9
**needed** [4] - 10:7,
12:2, 12:17, 19:3
**never** [1] - 23:14
**Newberger** [2] - 2:11,
6:5
**NEWBERGER** [2] -
1:16, 26:10
**next** [4] - 2:19, 6:21,
15:3, 18:2
**night** [2] - 12:19, 13:5
**nobody** [1] - 12:25
**none** [2] - 19:18,
19:19
**nonidentified** [1] -
4:19
**NORTHERN** [1] - 1:2
**nothing** [5] - 12:6,
12:9, 21:8, 22:25,
23:2
**notice** [2] - 3:7, 3:8
**notification** [1] - 2:23
**number** [7] - 15:7,

15:8, 18:24, 18:25,
22:19, 26:5, 26:21
**Number** [1] - 2:3
**NUMBER** [1] - 1:4

## O

**oath** [3] - 23:9, 23:21,
23:24
**object** [3] - 9:7, 10:3,
25:2
**objection** [10] - 13:24,
15:16, 19:9, 19:10,
19:11, 19:13, 19:16,
23:10, 23:17, 24:1
**observed** [1] - 11:20
**obviously** [3] - 5:15,
14:7, 16:16
**occur** [1] - 15:23
**OF** [6] - 1:1, 1:3, 1:6,
1:7, 1:13, 27:3
**OFFICE** [1] - 1:13
**Office** [5] - 1:17, 9:4,
20:19, 24:6, 24:9
**officer** [1] - 18:21
**OFFICIAL** [2] - 27:3,
27:18
**often** [1] - 13:2
**once** [1] - 20:16
**one** [9] - 5:10, 7:17,
12:5, 15:10, 15:24,
21:18, 21:22, 22:9
**openings** [1] - 25:20
**opinion** [1] - 17:1
**opportunity** [5] - 5:14,
5:15, 5:17, 6:5,
21:16
**optics** [1] - 18:1
**option** [4] - 17:24,
18:5, 18:11, 24:22
**order** [1] - 4:6
**originally** [1] - 26:21
**outside** [1] - 19:14
**overrule** [1] - 23:17

## P

**page** [1] - 27:11
**panel** [6] - 6:25, 7:3,
8:2, 18:11, 18:14,
26:14
**part** [3] - 3:1, 21:5,
25:1
**participate** [2] - 13:21,
15:9
**partners** [1] - 6:8
**pass** [1] - 22:10
**passed** [2] - 16:21,
17:2
**passes** [1] - 16:20,

16:21, 17:7
**past** [1] - 24:17
**PAUL** [1] - 1:12
**Paul** [1] - 2:3
**peculiar** [1] - 8:10
**people** [3] - 8:17,
25:16, 26:3
**percent** [1] - 9:9
**perfect** [1] - 25:23
**perfectly** [1] - 6:16
**person** [2] - 3:10, 7:7
**personal** [1] - 24:16
**personnel** [2] - 5:7,
6:11
**photo** [4] - 24:20,
24:23, 24:24, 24:25
**Phung** [1] - 26:13
**physical** [2] - 3:21,
12:15
**physically** [1] - 3:15
**picked** [1] - 25:9
**place** [4] - 13:19,
15:15, 17:4, 21:3
**Plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:12
**plan** [2] - 10:4, 13:16
**planned** [1] - 2:23
**planning** [1] - 14:19
**pleasure** [1] - 2:8
**plow** [2] - 25:13, 25:18
**point** [10] - 5:25, 7:11,
8:24, 8:25, 9:3, 12:6,
12:7, 14:15, 16:8,
16:13
**portion** [2] - 9:24, 27:2
**position** [1] - 10:12
**possibility** [1] - 15:16
**possible** [3] - 7:25,
14:6, 14:18
**potentially** [2] - 12:15,
23:16
**preface** [1] - 2:13
**prejudiced** [1] - 6:14
**prejudicial** [1] - 6:17
**preliminary** [1] - 19:21
**prepared** [1] - 26:11
**presence** [5] - 14:11,
15:15, 19:15, 26:20,
26:24
**present** [14] - 2:17,
3:12, 3:15, 6:19,
11:24, 14:4, 19:16,
19:22, 20:11, 20:24,
24:17, 25:21, 26:23,
26:24
**Present** [1] - 1:19
**presumably** [1] -
17:14
**presume** [2] - 4:3,
4:16

**Prevas'** [1] - 9:5
**prevent** [1] - 3:25
**previous** [1] - 10:19
**problem** [2] - 9:18,
16:5
**problems** [1] - 12:15
**proceed** [2] - 20:12,
21:9
**proceeding** [2] - 2:16,
13:25
**proceedings** [5] - 5:5,
6:5, 16:12, 16:15,
27:10
**PROCEEDINGS** [2] -
1:6, 1:7
**Proceedings** [1] -
1:23
**process** [2] - 2:16,
6:23
**Produced** [1] - 1:23
**productively** [2] -
19:25, 21:7
**projector** [1] - 25:4
**promised** [1] - 22:5
**promises** [2] - 15:2,
15:4
**pronounce** [1] - 26:12
**pronunciations** [1] -
26:9
**proposal** [1] - 6:22
**propose** [1] - 23:19
**proposed** [1] - 21:14
**prosecutors** [1] - 6:11
**prospective** [3] - 3:25,
24:8, 26:14
**provide** [10] - 2:15,
2:24, 3:7, 7:6, 7:8,
12:25, 13:13, 14:10,
20:14, 22:18
**provided** [8] - 3:3, 4:3,
4:4, 14:12, 21:4,
21:15, 26:2, 26:5
**psychiatric** [3] - 11:6,
11:9, 13:11
**Public** [3] - 1:17,
20:19, 24:6
**pursuant** [1] - 27:8
**put** [4] - 3:25, 4:16,
24:20, 24:21

## Q

**qualifications** [1] -
11:25
**questioning** [2] - 8:1,
8:3
**questions** [3] - 5:19,
9:1, 10:20
**quick** [1] - 26:17
**quite** [1] - 15:1

## R

**Rachel** [2] - 1:20, 2:6
**raised** [3] - 5:21,
11:13, 25:17
**reached** [1] - 14:14
**reaches** [1] - 15:17
**read** [4] - 23:17, 24:5,
24:12, 24:15
**ready** [4] - 21:9, 22:6,
22:12, 22:15
**reaffirm** [1] - 6:6
**real** [1] - 26:17
**really** [2] - 22:3, 23:15
**Realtime** [1] - 27:5
**reasonable** [1] - 10:21
**reasons** [3] - 6:7,
22:24, 23:2
**receive** [4] - 13:6,
15:18, 20:7, 20:16
**received** [6] - 2:23,
3:2, 3:7, 13:5, 13:6,
21:18
**receiving** [1] - 17:5
**recess** [1] - 8:1
**Recess** [1] - 20:5
**recognize** [1] - 5:11
**recommendation** [1] -
6:9
**record** [7] - 3:1, 7:4,
10:17, 12:10, 17:20,
17:23, 20:13
**Recorded** [1] - 1:23
**records** [1] - 11:23
**referring** [1] - 16:8
**refusal** [5] - 16:9,
16:14, 16:17, 20:14,
20:15
**refused** [3] - 2:22,
13:7, 13:10
**refuses** [4] - 4:18,
15:16, 20:9
**refusing** [1] - 13:22
**regard** [3] - 13:4,
19:12, 20:15
**regarding** [9] - 3:12,
6:8, 6:18, 10:18,
12:8, 14:21, 20:8,
24:13, 26:21
**Registered** [1] - 27:6
**regulations** [1] - 27:11
**reiterate** [2] - 10:12,
19:21
**related** [5] - 6:9, 6:18,
11:18, 15:24, 16:17
**relates** [1] - 10:9
**relationship** [1] -
24:16
**remain** [2] - 3:24, 5:6
**remains** [1] - 7:12

**remind** [1] - 19:21
**remove** [2] - 8:25, 23:22
**removed** [5] - 3:18, 5:15, 14:16, 15:7, 15:19
**reorient** [1] - 8:2
**reported** [1] - 27:9
**REPORTER** [2] - 27:3, 27:18
**Reporter** [2] - 27:5, 27:6
**represented** [1] - 3:6
**request** [10] - 6:18, 6:20, 6:22, 10:9, 10:11, 10:13, 10:16, 10:23, 11:21, 15:11
**Requested** [1] - 27:2
**requested** [2] - 2:24, 20:13
**residential** [1] - 11:6
**respect** [3] - 10:4, 13:17, 14:7
**respectful** [1] - 5:1
**respecting** [1] - 13:18
**responses** [1] - 10:20
**rest** [1] - 9:25
**result** [1] - 20:10
**resume** [4] - 8:5, 17:5, 17:6, 20:4
**return** [1] - 11:7
**returned** [1] - 27:1
**returns** [1] - 26:6
**review** [2] - 20:21, 21:16
**revisit** [1] - 21:11
**revisiting** [1] - 5:24
**rise** [3] - 10:15, 10:22, 11:14
**risk** [2] - 12:14, 12:22
**RMR** [1] - 27:18
**Rocky** [1] - 2:3
**ROCKY** [1] - 1:5
**roll** [1] - 8:4
**Rubin** [1] - 24:10
**Rule** [1] - 3:14
**rules** [1] - 5:13
**ruling** [6] - 5:23, 19:14, 19:21, 26:21, 26:22, 26:25
**rulings** [1] - 2:15
**RUSSELL** [1] - 1:8

**S**

**sake** [1] - 20:13
**screens** [1] - 24:21
**seat** [3] - 20:7, 24:7, 24:11
**seated** [4] - 2:13, 8:14,

9:21, 18:6
**seats** [1] - 24:8
**second** [3] - 2:21, 19:6, 21:19
**security** [1] - 18:20
**see** [17] - 6:25, 7:23, 9:8, 9:13, 9:15, 9:20, 9:22, 11:12, 13:25, 14:20, 15:16, 18:3, 18:4, 18:10, 18:11, 18:14, 26:16
**seeing** [4] - 4:1, 6:14
**selection** [3] - 6:23, 9:25, 20:12
**sending** [1] - 3:6
**sense** [2] - 10:1, 10:2
**sentence** [3] - 21:23, 23:11, 23:20
**sentences** [1] - 21:23
**September** [1] - 1:9
**service** [7] - 2:22, 2:24, 5:9, 13:8, 20:1, 20:2, 20:14
**Service** [4] - 4:23, 20:7
**severe** [1] - 12:14
**shackled** [8] - 3:24, 4:1, 5:6, 8:9, 8:11, 8:12, 8:16, 18:3
**shackles** [3] - 3:25, 6:2, 7:23
**shackling** [2] - 6:15, 6:19
**show** [2] - 25:3, 25:16
**shuttle** [1] - 2:19
**side** [1] - 6:24
**significant** [1] - 3:11
**similar** [1] - 15:22
**sit** [1] - 9:10
**sitting** [1] - 9:10
**situation** [1] - 11:15
**six** [1] - 7:15
**skirt** [1] - 7:6
**slide** [2] - 18:1, 18:2
**slimming** [1] - 23:20
**someone** [1] - 3:4
**sometimes** [1] - 8:13
**soon** [1] - 20:3
**sort** [11] - 2:13, 2:15, 5:18, 7:22, 8:2, 13:12, 15:17, 20:22, 23:15, 23:19
**sounds** [1] - 22:9
**speaking** [1] - 3:14
**special** [1] - 24:13
**Special** [2] - 1:20, 2:5
**staff** [1] - 11:9
**stamina** [1] - 25:9
**stand** [2] - 11:20, 24:18

**standard** [1] - 10:21
**standing** [3] - 9:19, 10:11, 20:22
**stands** [1] - 9:18
**starting** [1] - 22:4
**state** [1] - 11:19
**State's** [1] - 9:4
**STATES** [4] - 1:1, 1:3, 1:8, 1:13
**States** [3] - 2:2, 27:6, 27:12
**status** [1] - 2:14
**stenographically** [1] - 27:9
**stenographically-reported** [1] - 27:9
**Stenography** [1] - 1:23
**step** [1] - 20:3
**still** [3] - 6:19, 11:2, 20:2
**story** [2] - 8:22
**strange** [2] - 13:19, 26:8
**Street** [2] - 1:14, 1:17
**striking** [1] - 26:22
**suffer** [1] - 16:10
**suffers** [1] - 13:12
**Supreme** [1] - 14:23

**T**

**table** [2] - 2:4, 2:11, 6:24, 7:5, 7:11, 7:12, 9:12, 17:25, 24:7
**tablecloth** [1] - 7:5
**tables** [1] - 27:1
**Tang** [1] - 2:11
**teed** [1] - 25:25
**ten** [2] - 22:13, 22:15
**tentatively** [1] - 19:16
**THE** [76] - 1:1, 1:1, 1:8, 1:12, 1:13, 1:15, 2:7, 2:12, 4:8, 4:12, 4:16, 5:10, 6:3, 7:2, 7:8, 7:14, 8:4, 8:7, 9:13, 9:16, 9:21, 10:2, 10:6, 10:14, 11:16, 12:4, 12:7, 12:11, 13:4, 13:17, 14:9, 14:22, 15:20, 16:2, 16:19, 17:12, 17:22, 17:24, 18:13, 18:16, 18:19, 19:1, 19:2, 19:12, 19:20, 19:24, 20:6, 20:20, 21:13, 21:18, 21:21, 22:3, 22:11, 22:13, 22:14, 22:17, 22:20, 22:21, 22:23, 23:5,

23:7, 23:15, 23:23, 24:1, 24:4, 24:11, 24:23, 24:25, 25:4, 25:7, 25:23, 25:25, 26:4, 26:8, 26:16, 26:19
**Third** [1] - 3:2
**threatened** [1] - 3:20
**three** [3] - 6:15, 12:17, 21:23
**throw** [1] - 24:19
**today** [9] - 3:2, 11:1, 12:10, 12:18, 12:22, 15:13, 15:15, 20:9, 25:22
**tomorrow** [1] - 25:16
**took** [1] - 12:18
**towel** [1] - 3:24
**Tower** [1] - 1:17
**town** [1] - 25:22
**TRANSCRIPT** [1] - 1:7
**Transcript** [1] - 1:23
**transcript** [3] - 27:2, 27:9, 27:11
**Transcription** [1] - 1:23
**transport** [1] - 20:15
**transportation** [3] - 18:22, 20:8, 20:22
**transported** [4] - 12:20, 12:23, 13:7, 16:24
**treating** [1] - 10:11
**treatment** [3] - 13:13, 15:19, 17:5
**trial** [9] - 3:16, 5:25, 7:5, 7:11, 7:12, 13:21, 20:12, 21:1, 21:2, 24:7, 27:1
**TRIAL** [1] - 1:5
**tried** [1] - 4:5
**true** [4] - 8:21, 8:22, 21:24, 27:9
**try** [1] - 25:9
**trying** [3] - 5:1, 7:19, 18:21
**Tuesday** [1] - 1:9
**turns** [1] - 9:18
**twice** [1] - 12:17
**two** [6] - 4:15, 10:8, 16:1, 18:23, 20:20, 21:23

**U**

**U.S** [5] - 2:5, 4:22, 20:7, 21:3, 24:9
**U.S.C** [1] - 27:8
**unclear** [1] - 12:16
**under** [3] - 3:17, 6:15,

9:12
**underneath** [1] - 10:1
**understood** [4] - 11:16, 13:15, 13:24, 15:10
**unit** [4] - 11:2, 11:5, 11:10
**United** [3] - 2:2, 27:6, 27:12
**UNITED** [4] - 1:1, 1:3, 1:8, 1:13
**unless** [4] - 8:18, 10:14, 16:12, 26:6
**unshackled** [2] - 5:25, 8:14
**unshackling** [1] - 6:9
**unsigned** [1] - 3:6
**up** [13] - 2:16, 7:16, 7:17, 9:18, 9:20, 17:17, 18:6, 19:16, 22:13, 22:15, 25:19, 25:25, 26:16
**update** [1] - 18:21
**upstairs** [1] - 22:4

**V**

**via** [1] - 2:23
**violation** [3] - 23:9, 23:21, 23:24
**violence** [2] - 3:21, 3:22
**visible** [1] - 4:22
**VOICE** [2] - 5:9, 24:10
**voir** [1] - 3:15
**VOLUME** [1] - 1:5
**vs** [1] - 1:4

**W**

**waist** [1] - 7:24
**wait** [3] - 17:13, 19:15, 26:6
**waiting** [1] - 18:20
**waived** [3] - 20:10, 26:20, 26:24
**waiver** [4] - 15:14, 16:1, 16:16, 20:23
**wandering** [1] - 5:11
**wants** [2] - 13:22, 24:20
**wear** [2] - 4:2, 4:18
**week** [1] - 4:14
**weeks** [1] - 4:15
**weight** [1] - 14:10
**willing** [2] - 4:23, 14:20
**window** [1] - 8:20
**witness** [1] - 25:21
**wondering** [1] - 14:18

**words** [3] - 7:2, 21:1,
21:2
**wow** [1] - 16:25

### Y

**yesterday** [10] - 3:19,
10:10, 11:11, 11:13,
11:20, 12:10, 12:13,
15:6, 15:13, 15:22
**yourselves** [2] -
24:14, 25:11
**yup** [1] - 15:20

### §

**§** [1] - 27:8