```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                         NORTHERN DIVISION

UNITED STATES OF AMERICA,)
     Plaintiff ,         )
                         )
     vs.                 )   CASE NUMBER: GLR 20-0283
                         )
GARY ROCKY JONES,        )      JURY TRIAL VOLUME III
     Defendant.          )      Excerpt of Proceedings
_____)

                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE GEORGE LEVI RUSSELL, III
                    UNITED STATES DISTRICT JUDGE
                   Tuesday, September 12, 2023
                         Baltimore, Maryland


                       A P P E A R A N C E S

FOR THE PLAINTIFF:
     BY: PAUL BUDLOW, ESQUIRE
         COLLEEN McGUINN, ESQUIRE
         OFFICE OF THE UNITED STATES ATTORNEY
         36 S. Charles Street, 4th Floor
         Baltimore, Maryland  21201

FOR THE DEFENDANT:
     BY: COURTNEY FRANCIK, ESQUIRE
     BY: KATHERINE NEWBERGER, ESQUIRE
         Office of the Federal Public Defender
         100 S. Charles Street, Tower II, 9th Floor
         Baltimore, Maryland  21201

Also Present:

Rachel Corn, Special Agent, FBI
_____


        ***Proceedings Recorded by Mechanical Stenography***
        Transcript Produced by Computer-Aided Transcription
```

1        **E X C E R P T   O F   P R O C E E D I N G S**

2        (9:15 a.m.)

3                **MR. BUDLOW:**  Good morning, Your Honor. This is

4        United States of America v. Gary Rocky Jones. It's Criminal

5        Number GLR 20-0283, scheduled today for the continuation of

6        the jury trial. I'm Paul Budlow on behalf of the Government,

7        joined by Assistant U.S. Attorney Colleen McGuinn and Special

8        Agent Rachel Corn.

9                **THE COURT:**  Very good. Ms. Francik.

10               **MS. FRANCIK:**  Good morning, Your Honor.  Courtney

11       Francik and Katherine Tang Newberger from the Office of the

12       Federal Public Defender. Mr. Jones is not here, Your Honor.

13       And as of right now we're not aware of his status whether he's

14       at the courthouse or still at the jail.

15               **THE COURT:**  I wanted to address that because I do

16       have an update on his status. But preliminarily I have an

17       e-mail that I promised the parties yesterday regarding the

18       memorialization of his refusal to take the medicines and the

19       refusal to be transported. I have redacted out the e-mail

20       information, contact information, but left in the names of the

21       individuals who provided this to Matt Hicks who is the U.S.

22       Marshal in charge of transportation. So I can provide -- I

23       only have one copy, but -- well, I've got one.  I'll make what

24       we call a Court's exhibit for your review.  And then we will

25       -- I only have one copy to share between the parties. So if we

1   could make a copy for them, that would be great and she'll
2   just provide it to you. Sorry about that. Karen and Jill,
3   we're going to make this a Court's exhibit, whatever Court's
4   exhibit we're on. It will be Court's Exhibit Number 1. And
5   you'll receive that momentarily.
6       I did receive notification from Matt Hicks of the U.S.
7   Marshals Service pursuant to a request that I made that he
8   provide me with rolling daily updates on the current
9   transportation status or medical status of the defendant. Not
10  medical status in terms of, you know, how he's doing
11  medically, but whether or not he took his medications. It's my
12  understanding that he has not taken his medications, refused
13  to take his medications this morning, as well as refused to be
14  transported to court. And as a result, consistent with my
15  ruling previously, I am going to continue to find that he has
16  waived his right to be present.
17      I will also notify counsel that I did review Judge
18  Maddox's order in the attorney inquiry case. I'm not going to
19  go into the substance of the order, but I at least wanted to
20  acknowledge that I received it and I reviewed it. And in the
21  event that it becomes necessary for the purposes of an
22  assertion of competency or otherwise, that I will -- that I
23  will go ahead and incorporate that without any -- without
24  reference to the sum and substance of attorney/client
25  discussions that ended up taking place. But I would defer to

1    defense counsel before I did so in the event that we reached a
2    point where I felt obligated to make that part of the record
3    related to competency.
4         So we will go ahead and proceed.  I just want to make
5    sure -- you're talking to her and I want to let you speak to
6    counsel before I continue. So we will proceed with the jury
7    trial in this case once all of our jurors are here and ready.
8         And does the Government have a full day slate of
9    witnesses lined up?
10              **MR. BUDLOW:**  Yes, Your Honor.
11              **THE COURT:**  Okay. And have you shared the slate with
12   defense counsel?
13              **MR. BUDLOW:**  Yes, Your Honor.
14              **THE COURT:**  Okay.
15              **MR. BUDLOW:**  I'm happy to tell the Court it's going
16   to be ███████ who is the mother of John Doe 1 and then
17   ███████, and then Agent Corn, the first part of her
18   testimony will be today and hopefully we conclude that today,
19   but I think that will get us through the whole day.
20              **THE COURT:**  Okay. And understanding the delays that
21   have occurred thus far, are we still -- would you presume to
22   be estimated on track for -- I know it's early, but concluding
23   the 2nd or the 3rd of October?
24              **MR. BUDLOW:**  Yes.  And I still believe that's a
25   conservative estimate.  Our goal is still that third week and

1  we're still shooting for that.
2       **THE COURT:** Okay, all right.
3    Ms. Francik, is there something that you would like to
4  add before we adjourn and then we wait for the jury?
5       **MS. FRANCIK:** I would, Your Honor. Thank you.
6       **THE COURT:** Yes, please.
7       **MS. FRANCIK:** Your Honor, I'd like to briefly
8  address some of the issues that Your Honor raised this
9  morning. First, just because it's most recent in my mind, as
10 to in the event that it would become necessary or Your Honor
11 would suggest redaction and docketing of Judge Maddox's order
12 in some form, I just wanted to let the Court know that that
13 order dealt only with the issue of whether there was a
14 conflict requiring the appointment of new counsel or the
15 discharge of Ms. Newberger and I as counsel, and not the issue
16 of competency which I believe Judge Maddox felt was outside
17 the realm of his consideration at that hearing. We did raise a
18 number of issues regarding the competency question, but that
19 was not specifically addressed in Judge Maddox's order.
20      **THE COURT:** Well, for one exception in Judge
21 Maddox's order where he did make some findings about some
22 things and the way the case should proceed.
23      **MS. FRANCIK:** Understood, Your Honor. I just wanted
24 to make clear that there are some factual circumstances
25 outside the scope of that order.

1      And Your Honor, I did want to also let -- I want to make
2  sure the record reflects that we have not had any contact, Ms.
3  Newberger and I with Mr. Jones since Monday. We understand
4  that he continues to make allegations involving Ms. Newberger
5  and I. And so our position is that right now as things stand
6  with his mental state we're not able to effectively
7  communicate with him.  And our concern is that our presence
8  would really only further agitate his fragile mental state.
9  So I wanted to make that clear.
10     I also wanted to make it clear that so long as Mr. Jones
11 remains on the inmate mental health unit at the Central
12 Booking and Intake facility, he has no ability whatsoever to
13 participate in this trial. He was not afforded any video or
14 telephone access to yesterday's proceedings and we're not
15 aware of any changes in that status.
16         **THE COURT:** All right.  Well, certainly I have made
17 rulings that he has waived his right to be present by refusing
18 meds, as well as refusing transportation that has been
19 offered. And to the extent that counsel wanted to inquire
20 whether he could have cell phone access or other access if he
21 wanted it within the confines of the facility you can explore
22 that option. But right now I'm considering his desire to not
23 engage with transportation to the courthouse as a waiver of
24 his right to be present based upon the Court's previous
25 rulings related to his behavior, but I think you've made a

1     record.
2         Mr. Budlow.
3         **MR. BUDLOW:** Your Honor, I would just ask to clarify
4     something which is that the defense is both saying the
5     defendant hasn't been provided with certain things and that
6     they've not contacted him. It sounds like they've made no
7     attempt to contact him from their belief of how he would view
8     that. But I think that should be clarified because certainly
9     if the defense is trying to contact their client, I know it's
10    late, but if they went to do a visit I would imagine that they
11    would be afforded an opportunity in a safe environment to meet
12    with him either with glass or with shackles or whatever it is.
13    And if they haven't made that attempt, we shouldn't have this
14    sort of half-record out there that implies that they couldn't
15    visit him, unless that's the case.
16        **THE COURT:** Well, I'm privy to some information that
17    you're not with regard to the opinion of Judge Maddox at the
18    attorney inquiry hearing. He found that Ms. Newberger and Ms.
19    Francik as part of the Public Defender's Office should stay
20    in. I believe that Ms. Francik, whatever record is being
21    established related to access to clients or a lack of a record
22    is here. You've raised the questions regarding the
23    deficiencies in that. I haven't been presented with a specific
24    request at this point in time so I'm going to take this on a
25    sort of -- I believe I'm going to take this on a sort of

1   day-by-day basis to see where we are.

2        **MR. BUDLOW:**  Understood.  And I guess I just wanted

3   to clarify there's no indication that the defense attorneys

4   have been denied access for the defendant.

5        **THE COURT:**  I haven't heard anything today.

6        **MR. BUDLOW:**  And I haven't heard any indication that

7   they've made attempts or have requested anything regarding

8   communication either between them and the defendant or between

9   what's going on in the proceedings and the defendant wherever

10  he is located.

11       **THE COURT:**  Again, I'm relying upon the record that

12  I have before me.

13     Ms. Francik, anything you want to add?

14       **MS. FRANCIK:**  If I could just briefly add something

15  to clear the record up a bit. Yesterday afternoon, Your Honor,

16  we did explain to the Court and in the presence of Government

17  counsel that a social worker and an investigator from our

18  office did go to the inmate mental health unit at Central

19  Booking yesterday morning in order to visit with Mr. Jones. We

20  explained on the record what her impressions of Mr. Jones were

21  both in terms of observations of where he was housed, how he

22  was housed, and his demeanor. And so I have not I believe

23  represented that we don't have any access to him, but I've

24  merely represented our position as to the productivity and

25  possible consequences of that access given what we know has

1  transpired over the last week or so.
2      **THE COURT:** Okay. Well, I think the record is made.
3  I have not -- and again, I stand by the Court's previous
4  rulings related to waiver. He has been afforded opportunities
5  to participate in person in court. He's refused to take his
6  medicines and so we are where we are.
7      Is there anything else we can productively handle before
8  we get the jury, Ms. Francik?
9      **MS. FRANCIK:** No, Your Honor. Thank you.
10     **THE COURT:** Mr. Budlow?
11     **MR. BUDLOW:** No, Your Honor. Thank you.
12     **THE COURT:** What's the current status on our jury?
13     **THE CLERK:** We had most of them, Judge, but I'll go
14  out and check.
15     **THE COURT:** Well, I will stand down for the time
16  being and come out when they're ready.
17     By the way, Counsel, do you want me to read the
18  "defendant not present" again or do you want me to -- because
19  it could highlight it or not highlight it.
20     **MS. FRANCIK:** No, Your Honor.
21     **THE COURT:** Okay.
22     **MS. FRANCIK:** Thank you.
23     **THE COURT:** Thanks.
24     **(Recess was taken from 9:27 to 9:31 a.m.)**
25     **(Requested portion of transcript is complete.)**

**CERTIFICATE OF OFFICIAL REPORTER**

I, Nadine M. Bachmann, Certified Realtime Reporter and Registered Merit Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this <u>3rd</u> day of <u>January, 2024</u>.

-S-

_____

NADINE M. BACHMANN, CRR, RMR
FEDERAL OFFICIAL COURT REPORTER