```
 1            THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
 2                    NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,)
                              )
 4        Plaintiff,          )
                              )
 5        v.                  )    CASE NUMBER: GLR 20-0283
                              )
 6   GARY ROCKY JONES,        )    EXCERPT OF PROCEEDINGS
                              )
 7        Defendant.          )
     _____)
 8
                   TRANSCRIPT OF PROCEEDINGS
 9        BEFORE THE HONORABLE GEORGE LEVI RUSSELL, III
                 UNITED STATES DISTRICT JUDGE
10              Thursday, September 14, 2023
                    Baltimore, Maryland
11

12                   A P P E A R A N C E S

13   FOR THE PLAINTIFF:
         BY: PAUL BUDLOW, ESQUIRE
14           COLLEEN McGUINN, ESQUIRE
             OFFICE OF THE UNITED STATES ATTORNEY
15           36 S. Charles Street, 4th Floor
             Baltimore, Maryland  21201
16
     FOR THE DEFENDANT:
17       BY: COURTNEY FRANCIK, ESQUIRE
         BY: KATHERINE NEWBERGER, ESQUIRE
18           Office of the Federal Public Defender
             100 S. Charles Street, Tower II, 9th Floor
19           Baltimore, Maryland  21201

20   Also Present:

21   Special Agent Rachel Corn, FBI

22   _____

23
           ***Proceedings Recorded by Mechanical Stenography***.
24         Transcript Produced by Computer-Aided Transcription

25
```

Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter

**P R O C E E D I N G S**

1
2        **MR. BUDLOW:**  Good morning, Your Honor. Calling
3   United States of America v. Gary Rocky Jones. Criminal Number
4   GLR 20-0283. The matter is scheduled before Your Honor for the
5   continuation of a jury trial. I'm Paul Budlow on behalf of the
6   Government. Joining me at counsel table is Assistant United
7   States Attorney Colleen McGuinn and FBI Special Agent Rachel
8   Corn.
9        **THE COURT:**  Thank you very much. Good morning.
10       **MS. FRANCIK:**  Good morning, Your Honor.  Courtney
11  Francik on behalf of Gary Jones.  I'm joined here with my
12  co-counsel, Katherine Tang Newberger.
13       **THE COURT:**  Counsel, I want to apologize for my sort
14  of blown fuse yesterday procedurally regarding having the
15  special agent put something on the record -- testify.  There
16  was a disconnect in the additional supplement regarding number
17  three.  And so I'm sorry about that.
18       You can be seated. Just to give you an update, I have a
19  redacted version -- and I'll provide this to you -- of events
20  related to Mr. Jones' medication and transport. I'm going to
21  have one of these marked as a Court's exhibit, whatever the
22  next number is. And counsel, if you want to come up or
23  somebody wanted to come up I can give it to you, both copies
24  for yourself.
25       I'll also let you know, I did receive an update from the

1 Marshals Service this morning. Mr. Jones did, indeed, take his
2 medication, but he refused transport again. So that's a
3 different change in circumstance whereas yesterday he didn't
4 take his medication, but today he did. I will provide you with
5 a documented copy of an email on Monday when trial resumes and
6 I'll make it part of the court file.
7     Consistent with the Court's previous rulings, I will find
8 that Mr. Jones has, indeed, waived his right under the
9 exception to Rule 43, to be present here based upon these
10 circumstances and his refusal.
11     Counsel, is there something else that -- we're going to
12 break at a hard noon today and so I presume you will
13 anticipate witnesses lining up to conclude at or before that
14 time. Is there anything else we can handle before we get the
15 jury?
16     **MS. FRANCIK:** If I could have one moment, Your
17 Honor.
18     **THE COURT:** Yeah.
19     **MS. FRANCIK:** Nothing from the defense, Your Honor.
20     **MR. BUDLOW:** Can I have a moment, Your Honor?
21     **THE COURT:** Hang on.  I'll put your noise button on.
22     Counsel, is there anything we need to address?
23     **MR. BUDLOW:** Your Honor, I just want to clarify
24 something for the record. I understood the Court's ruling
25 earlier in the week in discussing or talking to the defendant

1    that if he did not take his medication, sort of one component
2    of his conduct was that if he didn't take his medication he
3    was going to present a health risk to himself.  And the Court
4    was clear, if you don't take your medication I'm going to find
5    you've waived your right to be here. And we have a record that
6    that happened yesterday and the day before, in addition to
7    other conduct by the defendant at the detention center.
8         But today we just have a slightly different tweak to that
9    which is that apparently the defendant is still refusing -- I
10   mean, he is a detained individual who theoretically goes where
11   the detention facility tells him to go at any time. But he's
12   saying he doesn't want to come to court, but he doesn't -- I
13   don't see in the record the same medical risk that presented
14   earlier that would have made going to trial on a given day
15   with him having that risk, risky for the Court and for him.
16        So given that, I would ask that we inquire if he can be
17   brought in despite his objections so that the Court can -- I
18   guess sort of the plan on Tuesday was going to be to despite
19   his conduct, bring him into the courtroom and maybe we were
20   going to do that regularly if he was here and address him and
21   see if he would act consistent with the Court's rules. Or
22   additional findings based on the record that the Court has in
23   terms of whether or not the detention facility is able to
24   control him in a way to safely bring him to court. I just -- I
25   don't know that -- again, because the factual scenario is

1  slightly different I would ask for a little more findings or
2  information relating to that.
3          **THE COURT:**  Right. Anything from the defense?
4          **MS. FRANCIK:**  Yes, Your Honor. Yes, thank you. As
5  Mr. Budlow pointed out, Mr. Jones' medication and his health
6  vis-à-vis his diabetic condition is but one component of a
7  very complex and complicated situation that has evolved over
8  the course of this past week. I think another major component
9  here is his mental health. As of this morning, Maryland Inmate
10  Locator reflects that he is still being housed at Central
11  Booking and Intake Facility. I can only assume that he is
12  still on the inmate mental health unit. Again, that is a
13  locked unit. I understand all units are locked, but this is a
14  particularly locked down unit, akin to a residential
15  psychiatric hospital. I think that's a major component here.
16  It's been a major component since Monday when we raised the
17  issue of competency.
18     And so I don't think it's as simple as whether we can
19  force him to get transported. I think that there is a complex
20  number of factors at play here that need to be taken into
21  consideration.
22          **THE COURT:**  Well, suggestions?
23          **MS. FRANCIK:**  If I could have one moment, Your
24  Honor.
25          **THE COURT:**  Yes.

1      **(Discussion was held off the record.)**

2           **MS. FRANCIK:**  I suppose, Your Honor, this brings us

3      back to our request for a competency evaluation. We think that

4      given the circumstances that have transpired over the last

5      week, given the information that we have regarding Mr. Jones'

6      mental health throughout the course of his life, we believe

7      that a competency evaluation is the appropriate response under

8      these circumstances. And so I think our suggestion or request

9      again to your Honor is to order a competency evaluation to

10     take place.

11          **THE COURT:**  All right. You know, while I certainly

12     understand your position, I've made previous findings that I

13     don't believe that you've met the threshold or that we've met

14     the threshold regarding reasonable cause. Indeed, it's not

15     unprecedented for defendants to behave in a manner such as Mr.

16     Jones for the sole purpose of delaying a trial.  And if that

17     were to succeed, then we could not -- if that were a

18     successful outlet, you could not try any case. But I have

19     before me decisions by Mr. Jones which have been documented by

20     the medical staff over at CDF to indicate that he is making

21     decisions either to take his meds or to not take his meds.

22     This morning he made a conscious decision to take his meds.

23          He also has just in the same vein, and I can only presume

24     that he's making a conscious decision not to be transported,

25     he did not put up any objection to be transported at the

1  pretrial conference. There was no objection to transportation
2  on any other prior occasion. It's only when his request for a
3  continuance was denied and an attorney inquiry hearing was
4  conducted.  And he was extremely disruptive, and abusive, and
5  threatening at the conference where so much so that he needed
6  to be removed that this gave rise.
7     I note that his reaction to my statements that I've made,
8  he addressed those specifically. In fact, he called me "N word
9  you crazy." So it's a clear understanding of what I was saying
10 and the ramifications of that. And, of course, a competency
11 hearing is exclusively within the discretion of the judge. And
12 I don't think that we've reached that threshold. I have not
13 received any reports, to the best of my knowledge.  I don't
14 know whether or not defense counsel -- I'm not asking, but I
15 have nothing before me where defense counsel has received
16 reports of any mental breakdown or peculiarity which mandates
17 immediate psychiatric treatment. I don't have that.
18    And my conclusion, I sort of stand by the conclusion that
19 I reached initially and, in fact, I've sort of affirmed in the
20 conclusion of Mr. Jones being manipulative based not only on
21 the record that was established before Judge Maddox but, you
22 know, his decision-making even up to today to go ahead and
23 take the appropriate insulin medication.
24    So I think that you continue to make an appropriate
25 record and we'll continue to make an appropriate record as it

1  sees fit.
2       By the way, Mr. Jones knows that he can hear the
3  proceedings if he agrees to be transported here. Because I
4  represented that option I believe in front of him, but also he
5  was in lockup where he did have the opportunity to hear the
6  proceedings that were going on. So he has access to that.
7       So, all right. Mr. Budlow, is there anything else?
8            **MR. BUDLOW:**  No, Your Honor.  Thank you.
9            **(Requested excerpt of the transcript is complete.)**

**CERTIFICATE OF OFFICIAL REPORTER**

     I, Nadine M. Bachmann, Certified Realtime Reporter and Registered Merit Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                              Dated this <u>17th</u> day of <u>January, 2024</u>.


                                      -s-

                              _____

                              NADINE M. BACHMANN, CRR, RMR
                              FEDERAL OFFICIAL COURT REPORTER