1    **IN THE UNITED STATES DISTRICT COURT**
     **FOR THE DISTRICT OF MARYLAND**
2      **NORTHERN DIVISION**

3 **UNITED STATES OF AMERICA,)**
    **Plaintiff,**   **)**
4     **v.**     **)** **CASE NUMBER: GLR 20-0283**
 **GARY ROCKY JONES,**   **)**  **EXCERPT OF PROCEEDINGS**
5    **Defendant.**   **)**   **STATUS CONFERENCE**
 **_____)**
6

       **TRANSCRIPT OF PROCEEDINGS**
7   **BEFORE THE HONORABLE GEORGE LEVI RUSSELL, III**
     **UNITED STATES DISTRICT JUDGE**
8    **Tuesday, September 20, 2023**
      **BALTIMORE, MARYLAND**
9

10     **A P P E A R A N C E S**

11 **FOR THE PLAINTIFF:**
    **BY: PAUL BUDLOW, ESQUIRE**
12     **COLLEEN McGUINN, ESQUIRE**
     **OFFICE OF THE UNITED STATES ATTORNEY**
13     **36 S. Charles Street, 4th Floor**
     **Baltimore, Maryland  21201**
14

15 **FOR THE DEFENDANT:**
    **BY: COURTNEY FRANCIK, ESQUIRE**
16    **BY: KATHERINE TANG NEWBERGER, ESQUIRE**
     **Office of the Federal Public Defender**
17     **100 S. Charles Street, Tower II, 9th Floor**
     **Baltimore, Maryland  21201**

18 **Also Present:**

19 **Rachel Corn, Special Agent, FBI**

20

21

22

23 _____

24   **\*\*\*Proceedings Recorded by Mechanical Stenography\*\*\***
    **Transcript Produced by Computer-Aided Transcription**
25

**P R O C E E D I N G S**

1

2      **MR. BUDLOW:**  This is United States of America v.

3 Gary Rocky Jones, GLR 20-0283. The matter is scheduled before

4 Your Honor this afternoon for a charge conference with the

5 continuation of a jury trial. I'm Paul Budlow on behalf of the

6 Government.  Joining me at counsel table is Assistant United

7 States Attorney Colleen McGuinn.

8      **THE COURT:** All right, very well.  Good Afternoon.

9      **MS. FRANCIK:**  Good afternoon, Your Honor.  Courtney

10 Francik on behalf of Gary Jones joined here by my colleague,

11 Katherine Tang Newberger.

12      **THE COURT:**  Good afternoon, Ms. Newberger.

13    I did receive a copy of some proposed instructions as

14 well. We are here for the purposes of a charging conference

15 and sort of like a status conference. When we first left

16 yesterday afternoon we contacted the -- well, I contacted the

17 jury and let them know that we would not be sitting for trial

18 today. We designated that time for a charging conference. I've

19 since had the opportunity to review the instructions in this

20 case. And also we made arrangements at least for this time,

21 particular time, to have counsel take the opportunity if they

22 could to speak to Mr. Jones, or attempt to speak to Mr. Jones,

23 and/or convey to him information related to the current trial

24 in this case.

25    I don't know who is going to speak on your behalf, but

1    Ms. Francik, I'll hear from you. I will let you know that I

2    did receive an email correspondence from Matt Hicks -- we can

3    send this down.  We'll give this to counsel, a copy for

4    each -- indicating that the defendant refused his medication,

5    as well as refused to be transported. Jill, that's a copy and

6    this is a copy for counsel, as well. He went into a little bit

7    more detail than what I requested.  Namely, he indicated

8    through Mr. Maze, that his lawyer allegedly assaulted him. He

9    also stated that there was a woman following him. He does know

10   that the case is proceeding without him being present. He did

11   advise him that he had two good officers available to take him

12   to court today if he chose. He also spoke to a nurse who

13   confirmed he is not taking his a.m. medication to include

14   insulin, but he sometimes takes his p.m. meds.  And that an

15   MOR is going to be prepared today and will be available

16   shortly. I'm not sure what that acronym means, maybe it's

17   Memorandum of Reasons or something along those lines. It

18   sounds like a document that is memorializing what is going on.

19        I've also reached out in an attempt to find out the names

20   of individuals A) who have been overseeing Mr. Jones' care,

21   and also a representative marshal who can confirm the requests

22   and any responses that Mr. Jones has made.

23        So, with that caveat, Ms. Francik, I'll hear from you

24   regarding your efforts.

25             **MS. FRANCIK:**  Thank you, Your Honor. Your Honor, Ms.

```
 1    Newberger and I arrived at Central Booking around 9:00 this
 2    morning to visit Mr. Jones who remains on the inmate mental
 3    health unit there. We were escorted by a correctional officer
 4    to the IMHU.  And upon our arrival to that unit we learned
 5    from correctional staff that Mr. Jones has filed an
 6    institutional complaint against myself and Ms. Newberger which
 7    mirrors the allegations he made in open court last Monday,
 8    along with the allegations that are contained in this email
 9    from today that Ms. Newberger and I sexually assaulted him
10    during legal visits to the Chesapeake Detention Facility.
11         Our office is presently unaware of the process by which a
12    complaint like this is addressed, but it certainly seems
13    possible, Your Honor, that we'll need to respond to such a
14    complaint which would necessarily put us in an adversarial
15    position to Mr. Jones.
16         Mr. Jones remained inside his cell on the IMHU, while Ms.
17    Newberger and I attempted to speak with him through the door
18    which has a Plexiglass window. We believe that he remains on
19    suicide watch as he was not wearing a jail uniform and covered
20    himself with a jail-issued blanket.
21         Mr. Jones did not speak with or even engage with us. He
22    held his hand over his eyes while Ms. Newberger spoke to him
23    about the course of trial and his right to testify.
24         While speaking to Mr. Jones, Your Honor, he repeatedly
25    and loudly expressed fear about being in our presence, even
```

1   though we were separated, of course, by the cell door and the

2   Plexiglass pane saying repeatedly, "Somebody help me, they are

3   hurting me."

4       We moved to the periphery of the Plexiglass window so

5   that we were out of his line of sight while we finished our

6   advisement and left as soon as we concluded that advisement.

7   At no point though, Your Honor, did he respond to or even

8   acknowledge us.

9       Based upon these circumstances, the circumstances that

10  have transpired since September 8th when he informed us of his

11  desire to terminate our representation, along with his ongoing

12  refusal to communicate with us, his professed fear of us, and

13  his continued allegations against us, Your Honor, we believe

14  that a conflict of interest exists and we formally move to

15  withdraw as Mr. Jones' attorneys.

16          **THE COURT:**  Okay. Mr. Budlow, in response?  Anything

17  in response?

18          **MR. BUDLOW:**  I mean, the first thing is that I know

19  this is all happening today, but literally I heard it when you

20  heard it. I haven't had a chance to digest it, research it,

21  consider a response. I would have liked to have known sooner.

22  There are cell phones that exist. Defense counsel could have

23  let us know on the way here that they planned to withdraw

24  because of this conflict of interest which appears to be

25  wholly created by the defendant, as every other delay in this

1    case. So I don't stand here and have a response.

2         **THE COURT:**   All right, thank you.

3         I've thought about this quite a bit over the course of

4    the past 24 hours and sort of where we are and reaching the

5    threshold of what would be considered reasonable cause. Up to

6    -- certainly up to today, and I'm not making any statements

7    that there's any movement, but up to today the Court has found

8    that there was a lack of reasonable cause in order to require

9    the defendant to -- questioning the defendant's legal

10   competency. I found based upon circumstances both prior to the

11   day of trial, as well as the day of trial, as well as the day

12   after trial and continued through the course of the trial,

13   that Mr. Jones' appearance was both knowing and voluntary.

14        I've reviewed some of the case law related to this issue

15   and there's no bright line test for when a court needs to (a)

16   call in a defendant, (b) when you hold a hearing to determine

17   whether or not there's reasonable cause, but I think given

18   where we are in this trial, the resources that have been

19   expended by the Government, the difficulty in the Court's

20   schedule in getting this case potentially rescheduled for the

21   purpose of trial, having numerous out-of-town witnesses and

22   victims inconvenience themselves and come into court, the

23   burdens are enormous.

24        I've considered this and I'm considering this proposal to

25   counsel. Once I determine the names of the marshals that have

1    escorted Mr. Jones and made the request of him to come to
2    court or the names and identities of the medical officials who
3    have attempted to administer medication and have had the
4    opportunity to one-on-one observe Mr. Jones in the environment
5    in which he is now, I'm not going to withdraw from my finding
6    of a lack of reasonable cause. However, I think that it may be
7    appropriate for me to start the process of taking some
8    testimony from the U.S. Marshals who are in charge of
9    transportation, who solicited Mr. Jones, as well as even a
10   sort of representative of the medical facility in which he's
11   housed to be able to attest to the efforts made to administer
12   the medication, more detail regarding Mr. Jones' refusal to
13   take it, his observations that they've made about him related
14   to this to see whether or not it crosses the threshold of
15   reasonable cause which would require me to initiate and engage
16   the psychologist or psychiatrist within the medical facility
17   to conduct an expedited mental health examination for the
18   purposes of determining competency.
19        To date I've been confident in my ruling given the sort
20   of totality of the circumstances which I've learned, including
21   the history of the case, that the behavior of Mr. Jones is
22   designed primarily to delay; that his claims against his
23   attorneys are without -- completely and utterly without merit
24   and designed, in part, to achieve what he wanted to achieve at
25   the outset of this case which was a postponement.

```
 1          I will find that finding such circumstances meriting a

 2    postponement at least at this point I don't think are

 3    appropriate. I know that we have a jury out. I know that we

 4    are ahead of schedule as far as our timeline is concerned. It

 5    looks like we've got one singular witness who is a case agent.

 6    The inconvenience to the Government is not such where we've

 7    got victims flying in from various locations across the

 8    country.

 9          I would be willing and I'll certainly hear it, hear from

10    counsel, to order Mr. Jones to appear, but I'm concerned about

11    that. And the reason why I'm concerned about that is his

12    refusal to take his -- first, to take his medicine. If he's

13    not taking his medicine then he's subject to a medical crisis

14    which could put him in jeopardy.

15          The marshal service because of the way the medicine is

16    administered, he needs to have a pretest to determine the

17    amount of any diabetic medication that needs to be

18    administered. The marshal service don't do that. And so

19    bringing him here by force is not an ideal circumstance. And

20    plus, if indeed he is not feigning, will further exacerbate a

21    medical crisis that I don't want to have happen.

22          So I will hear from counsel, but I am certainly inclined

23    to have the other professionals that are handling Mr. Jones,

24    including a representative of nursing, a representative from

25    transport of the marshals -- from the marshals, attest in
```

 1    court tomorrow to what their observations are related to Mr.

 2    Jones.  And if their testimony reaches the threshold of

 3    reasonable cause, then attempting to order an expedited

 4    competency exam. I'm not suggesting that we're going to reach

 5    that point, but we may.

 6        And while I understand counsel's request to withdraw as a

 7    result of a conflict, the claims that Mr. Jones is making are

 8    so ludicrous that I do believe that they very well are

 9    designed to further delay these proceedings. And so I'm not

10    inclined to have that form the basis of a withdrawal of

11    representation, because they're ridiculous allegations.

12        And so to that end, there are two ways we can handle

13    this. We can either -- and again, I'm not making a final

14    conclusion, I'm just putting -- floating a proposal out there

15    because I need to make sure that the record is clear too

16    because undoubtedly, if Mr. Jones is convicted, these are all

17    going to be appellate issues that are going to be vetted out

18    whether or not it's through the Public Defender's Office or

19    through someone else.

20        So the way I'm -- what I'm thinking is this: We can

21    either (a) have the jury not come in on Thursday and we

22    conduct a hearing and I make evaluations.  And Mr. Budlow has

23    the opportunity to think about what I've talked about and what

24    the Public Defender's Office has presented.  Or (b) we can

25    have them -- and then just have them come in Tuesday, we

1    finish up Agent Corn. We go Wednesday with closings and we

2    still are bringing this case well under the time frame that we

3    initially promised the jury, well under. But considering we're

4    not running behind, considering the current state of affairs

5    regarding Mr. Jones and his counsel, considering where Mr.

6    Jones is and the sort of represented medical condition that he

7    has or circumstances in which he's housed, I think that may be

8    appropriate.

9        And I also recognize the enormous, enormous amount of

10    work that the U.S. Attorney's Office has engaged in and that

11    weighs extremely heavy on me, extremely heavy on me with the

12    amount of the resources, the victims that have come in and

13    bared their souls here in court regarding events that are

14    horrific. But at the same time, I've got to make sure that the

15    record to the best I can and the best I have is clean in the

16    event that we've got a conviction for appellate review.

17        So with that in mind, I put in a request with the

18    marshals to give me the names of people and I can have those

19    persons come in not testifying as to any medical condition or

20    diagnosis, but as to observations that they've made:  Mr.

21    Jones' statements regarding transportation, Mr. Jones'

22    statements regarding medication, days that he's taken it, days

23    that he hasn't taken it and things that they've observed.

24        So with that, you can take an opportunity if you want,

25    I'll put the noise button on and you can consult with one

```
 1     another.
 2          Yes, Ms. Newberger.
 3               MS. NEWBERGER:  Can I just ask, Your Honor?  I think
 4     you indicated there were two options.
 5               THE COURT:  Right.
 6               MS. NEWBERGER:  What is the second option?
 7               THE COURT:  The second -- the second option is --
 8     the first option is that Thursday we don't bring -- we reach
 9     out to the jury today, they don't come in. We say, "Don't come
10     in tomorrow.  Report back to the jury room on Tuesday at
11     9:30." And we conduct -- we use tomorrow to conduct
12     everything.
13          The other option is and it's a halfway option is to have
14     the jury come in at noon, I take testimony from some of these
15     folks that I have, but if I order a competency they're going
16     to be probably -- I'll probably send them home because I need
17     to make sure that I can get a doctor to go see him and
18     evaluate him fairly quickly. If they don't sit on Thursday
19     there could be a possibility that I get an evaluation on
20     Friday and a report on Monday, with them not coming back until
21     Tuesday.
22          So Ms. Newberger, that was my unartful way of presenting
23     a couple of options. I can put the noise button on and I see
24     Mr. Budlow's brow is getting furrowed.
25               MR. BUDLOW:  Sorry, Your Honor.
```

 1          **THE COURT:**  And again, you know, I recognize the

 2    amount of work that's going to have to go into this, but this

 3    is coming up for -- in the event that he's convicted, this is

 4    going to go on appellate review.  And if I don't set forth an

 5    appropriate record related to this -- and I think that the

 6    case law may end up dictating that under these circumstances I

 7    need to at least bring in professionals to find out where Mr.

 8    Jones is and whether or not at least some circumstance --

 9    because I haven't had any contact other than email

10    correspondence with Mr. Hicks.  And certainly I haven't had

11    anything with Mr. Jones since September 11th which was the day

12    of trial, and then previously was September 7th.

13          So if you wanted to take two minutes or five minutes to

14    consult among yourselves, I'll put the noise button on.

15          **MR. BUDLOW:**  Could I be heard, Your Honor?

16          **THE COURT:**  Yeah, sure.

17          **MR. BUDLOW:**  I know this will shock you.  I have a

18    third or fourth suggestion.  So first of all, I would -- my

19    sort of short-term, I think we should proceed with the charge

20    conference and I would ask for an opportunity to do a little

21    sort of consulting with others.

22          **THE COURT:**  Oh, no.  We can do the charge -- I

23    didn't mean to cut you off, but I intended on doing the charge

24    conference. We're going to do that.

25          **MR. BUDLOW:** And I appreciate that.  I don't think we

1    need to make a final decision right now.  But I do want to

2    tell the Court what I'm thinking.  First of all, what we've

3    heard today is nothing new. The complaint being filed is the

4    only remotely new thing. We're hearing the same thing that

5    we've been hearing since the Court initially ruled that the

6    defendant was subject to the 25-year mandatory minimum.  Like

7    it's just been, "I want a postponement."  We showed him the

8    evidence.  He didn't like that he saw his face on that video

9    and he's been acting up ever since.

10       I think that when this Court says "We need to make a

11   record," we've called 24 witnesses. We've had two weeks of

12   trial. We are here. We can't change where we are and the Court

13   has made a sufficient record. And the Government's view is

14   that at this point, while all of the inquiry that the Court

15   has suggested makes sense, it's historical at this point. In

16   other words, it's about whether or not the defendant was

17   having any episode or as the Court found based on your

18   observations and Judge Maddox's hearing and common sense that

19   he was manipulating the system.

20       And so given that, we can take that testimony Friday and

21   I know the Court is probably busy.  We can do it while the

22   jury is out, we can do it next week. We should do it while

23   it's fresh and I think that that makes sense not to do a

24   proceeding like that. But I don't see a need to let the

25   defendant's intentional conduct to affect this trial to

1   continue in any way. And so I'm not saying that it's a huge

2   inconvenience and that we're not running ahead of schedule,

3   but we are dragging this out for the jury unnecessarily. And

4   so the plan that we have, we've heard nothing that really

5   would avoid it.

6       And I would add that not only is there no information,

7   but I wanted to comment on what we have in this email where I

8   know the Court has always been concerned and said to the

9   defendant, "If you refuse to take your medication tomorrow I'm

10  going to find that you've waived your presence." And I think

11  that was the right thing to do. But I think the defendant is

12  very much aware of that. And so now he knows that if he

13  doesn't take his medication, the marshals aren't going to

14  throw him into a van and drag him to court like they would

15  probably do, nicely, with other defendants. We know that

16  defendants don't just get to say, "I'm going to skip it

17  today." You've got to come to court. You're in custody, you're

18  going to be brought.

19      It's different with him because of that medical

20  condition. He's fully aware of that.  He had earphones, he was

21  able to hear -- well, I can't remember if he was present

22  during that portion or not, but the Court said that to him.

23          **THE COURT:**  But he had access to the audio inside

24  the lockup.

25          **MR. BUDLOW:**  Right.  And then look at the email.

1    What does the email say?  He's taking his meds at night. This

2    isn't a suicide attempt. He's conscious. He knows what a

3    Complaint is. He knows how to use the system.  But more

4    importantly, the fact that he's taking his medicine at night,

5    I agree with the Court that he is trying to manipulate the

6    system.  But I think there's two things going on. One, he

7    wants a postponement. He did not want this trial to go

8    forward.  And two, he did not want to hear the evidence

9    against him. He went into the U.S. Attorney's Office and

10   watched a video showing his face.  And that's when this

11   conduct happened.

12       And so he thinks that he has the option to come to court.

13   And so he just says, "I'm not coming." And then he says, "I'm

14   not taking my meds in the morning."  And then he says, "My

15   attorneys sexually assaulted me." He continues that same

16   pattern.  And I'm sorry that I'm sort of maybe retreading some

17   old things, but I think the email does show that he doesn't

18   want to sit through the evidence and he's using the fact that

19   he does have a legitimate, serious medical condition that he

20   has the ability to control his risk of a near-death experience

21   by not taking it.  And he's using that and then taking the

22   medication at night to make sure that he doesn't really get

23   sick. And if we delay things it really is him more of getting

24   his way.

25       But more importantly, because of where we are in the

1  trial I just think we can do this at any day that we find time
2  that doesn't change the schedule that we set.
3       **THE COURT:**  Got it. All right. And I don't know --
4  and I don't know the availability, although they'll be
5  available absent them being out of the country, for us to be
6  able to take the testimony. We won't be going to closings
7  until Tuesday. So that gives us, certainly gives us -- Mr.
8  Budlow makes a point that would give us Friday, sometime
9  Friday to be able to reconvene and handle things.
10      Ms. Newberger, I'm going to put the noise button on for
11  you and Ms. Francik to speak and then when you --
12      **MS. FRANCIK:**  Thank you, You Honor.
13      **(Counsel conferred privately.)**
14      **THE COURT:**  One quick thought as well. One of the
15  reasons why I thought Thursday was one of the days that would
16  be available is because I could take the testimony Thursday.
17  If I found reasonable cause, then I could order the director
18  of the medical facility to conduct the examination Friday with
19  hopefully getting a report on Monday before we got started.
20  But again, I'm not suggesting that we're at that threshold,
21  but I wanted to throw that thought process out to you and what
22  I was talking about with scheduling. We certainly could do it
23  late Thursday in the event that we concluded this case.  If we
24  started first thing on Thursday, I don't anticipate the
25  Government or the cross bleeding substantially into the

1    afternoon on Thursday. So we could arguably take some

2    testimony Thursday. The testimony would be very limited. It

3    could be subject to obviously examination by you and then it

4    would be something that I could take into consideration. So

5    I'll put that noise button back on.

6              **(Counsel conferred privately.)**

7              **THE COURT:**  Ms. Francik.

8              **MS. FRANCIK:**  Your Honor, I think at this point the

9    position -- our position, our proposal, whatever it may be is

10   that we propose concluding the trial as scheduled.

11             **THE COURT:**  I'm sorry, propose concluding the trial

12   as scheduled?

13             **MS. FRANCIK:**  Finishing out the remainder of the

14   trial.  Taking testimony, closing statements, jury

15   deliberations. That will allow the Court time to secure

16   witnesses and other evidence that would be presented at a

17   hearing on the issue of competency. But it would also allow

18   time to appoint new counsel who could provide conflict-free

19   representation to Mr. Jones during the course of this

20   proceeding.

21        Our impression, Your Honor, is that this is a genuine

22   conflict, that Mr. Jones is genuinely dissatisfied with our

23   representation. And there have been a number of issues that

24   have arisen that potentially put us in an adversarial

25   relationship with Mr. Jones.

 1          **THE COURT:**  Some of which I'm not privy to at all

 2   because that was the subject of maybe some previous hearings.

 3          **MS. FRANCIK:**  Yes, Your Honor. And so we would

 4   propose that concluding the trial as scheduled will allow this

 5   proceeding to take place, but will also allow Mr. Jones to be

 6   represented by new and presumably conflict-free counsel during

 7   that proceeding.

 8          **THE COURT:**  Hmm, well that seems like it's almost a

 9   meeting of the minds so-to-speak because Mr. Budlow doesn't

10   want a delay in the proceedings. It would give me an

11   opportunity to be able to marshall witnesses together, provide

12   identities of those individuals to you or to new counsel, and

13   we take this case to verdict based upon the findings that I've

14   already made.

15          **MS. FRANCIK:**  If I could have one moment, Your

16   Honor.

17          **THE COURT:**  Yes. Ms. Francik, is there anything

18   else?

19          **MS. FRANCIK:**  Just to put on the record, Your Honor,

20   that our proposal is informed in part by a suggestion that

21   Your Honor made yesterday regarding the possibility of

22   post-hearing briefing on these issues. And so this is

23   something that we were already contemplating and we would, of

24   course, help any counsel that is appointed to Mr. Jones' case

25   to ensure that the briefing and their understanding of the

1   situation is as fulsome as possible. I just wanted to make it

2   clear that that was sort of the thought process behind the

3   suggestion.

4          **THE COURT:**  This is a unique circumstance. And so I

5   certainly understand that.

6       Mr. Budlow, it seems to me that it's consistent with what

7   the Government's position would be anyway to take the case to

8   verdict and then handle the other issues related to competency

9   in the event that I agree with defense counsel that the

10  circumstances merit, indeed almost require appointment of new

11  counsel given the current posture that this case is in.

12         **MR. BUDLOW:**  I mean, I agree.  I think we're all in

13  agreement as to what to do scheduling wise.

14         **THE COURT:**  Okay. So here's what I'll do:  I'll hold

15  your request sub-curia at this point regarding a withdrawal

16  or, in fact, I'll deny it without prejudice and you can go

17  ahead and renew that. And then in the event that I grant your

18  request and new counsel is appointed, new counsel will be

19  appointed, they will contact chambers, set up a schedule, a

20  briefing schedule, explore the identity of the relevant

21  witnesses and we'll have a hearing on whether or not there was

22  reasonable cause and whether or not a competency evaluation

23  needs to be put forth.

24      Okay, all right.  Good. So right now where we are, we've

25  got a jury coming in at 9:30 tomorrow. We're going to conclude

1    the testimony of Agent Corn. We're going to conclude the

2    cross-examination. The Government will rest. I'll entertain a

3    motion from the defense. I will -- I want to make clear, Ms.

4    Francik, that you have advised the defendant whether or not he

5    was or wasn't listening, but through the door, of his right to

6    remain silent or certainly his right to testify. And the fact

7    that -- and any prior convictions that the defendant suffered

8    could potentially be used to cross-examine him, et cetera. All

9    of those rights have been advised; is that correct?

10         **MS. FRANCIK:**  One moment, Your Honor. Your Honor, we

11   did certainly advise Mr. Jones as to his right to testify. We

12   did not specifically address the issue of prior convictions,

13   although those have already been admitted into evidence during

14   the course of the trial.

15         **THE COURT:**  Right. Okay, good. So now I think that

16   we are ready to proceed with a review of the instructions.

17         **(Requested portion of transcript for purposes of**

18   **this ordered excerpt is complete.)**

19

20

21

22

23

24

25

1    **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5         I, Nadine M. Bachmann, Certified Realtime Reporter

6    and Registered Merit Reporter, in and for the United States

7    District Court for the District of Maryland, do hereby

8    certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

9    true and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13

14                          Dated this 17th day of January, 2024.

15

16                          -S-

17                          _____

18                          NADINE M. BACHMANN, CRR, RMR
                            FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25

## 1

**100** [1] - 1:16
**11th** [1] - 12:11
**17th** [1] - 21:14
**19** [1] - 1:8

## 2

**20-0283** [2] - 1:4, 2:3
**2023** [1] - 1:8
**2024** [1] - 21:14
**21201** [2] - 1:13, 1:17
**24** [2] - 6:4, 13:11
**25-year** [1] - 13:6
**28** [1] - 21:8

## 3

**36** [1] - 1:13

## 4

**4th** [1] - 1:13

## 7

**753** [1] - 21:8
**7th** [1] - 12:12

## 8

**8th** [1] - 5:10

## 9

**9:00** [1] - 4:1
**9:30** [2] - 11:11, 19:25
**9th** [1] - 1:16

## A

**a.m** [1] - 3:13
**ability** [1] - 15:20
**able** [5] - 7:11, 14:21, 16:6, 16:9, 18:11
**above-entitled** [1] - 21:10
**absent** [1] - 16:5
**access** [1] - 14:23
**achieve** [2] - 7:24
**acknowledge** [1] - 5:8
**acronym** [1] - 3:16
**acting** [1] - 13:9
**add** [1] - 14:6
**address** [1] - 20:12
**addressed** [1] - 4:12
**administer** [2] - 7:3, 7:11
**administered** [2] -

8:16, 8:18
**admitted** [1] - 20:13
**adversarial** [2] - 4:14, 17:24
**advise** [2] - 3:11, 20:11
**advised** [2] - 20:4, 20:9
**advisement** [2] - 5:6
**affairs** [1] - 10:4
**affect** [1] - 13:25
**afternoon** [5] - 2:4, 2:9, 2:12, 2:16, 17:1
**Afternoon** [1] - 2:8
**agent** [1] - 8:5
**Agent** [3] - 1:19, 10:1, 20:1
**agree** [3] - 15:5, 19:9, 19:12
**agreement** [1] - 19:13
**ahead** [3] - 8:4, 14:2, 19:17
**Aided** [1] - 1:24
**allegations** [4] - 4:7, 4:8, 5:13, 9:11
**allegedly** [1] - 3:8
**allow** [4] - 17:15, 17:17, 18:4, 18:5
**almost** [2] - 18:8, 19:10
**America** [1] - 2:2
**AMERICA** [1] - 1:3
**amount** [4] - 8:17, 10:9, 10:12, 12:2
**anticipate** [1] - 16:24
**anyway** [1] - 19:7
**appear** [1] - 8:10
**appearance** [1] - 6:13
**appellate** [3] - 9:17, 10:16, 12:4
**appoint** [1] - 17:18
**appointed** [3] - 18:24, 19:18, 19:19
**appointment** [1] - 19:10
**appreciate** [1] - 12:25
**appropriate** [4] - 7:7, 8:3, 10:8, 12:5
**arguably** [1] - 17:1
**arisen** [1] - 17:24
**arrangements** [1] - 2:20
**arrival** [1] - 4:4
**arrived** [1] - 4:1
**assaulted** [3] - 3:8, 4:9, 15:15
**Assistant** [1] - 2:6
**attempt** [3] - 2:22, 3:19, 15:2

**attempted** [2] - 4:17, 7:3
**attempting** [1] - 9:3
**attest** [2] - 7:11, 8:25
**ATTORNEY** [1] - 1:12
**Attorney** [1] - 2:7
**Attorney's** [2] - 10:10, 15:9
**attorneys** [3] - 5:15, 7:23, 15:15
**audio** [1] - 14:23
**availability** [1] - 16:4
**available** [4] - 3:11, 3:15, 16:5, 16:16
**avoid** [1] - 14:5
**aware** [2] - 14:12, 14:20

## B

**BACHMANN** [1] - 21:18
**Bachmann** [1] - 21:5
**BALTIMORE** [1] - 1:8
**Baltimore** [2] - 1:13, 1:17
**bared** [1] - 10:13
**based** [4] - 5:9, 6:10, 13:17, 18:13
**basis** [1] - 9:10
**BEFORE** [1] - 1:7
**behalf** [3] - 2:5, 2:10, 2:25
**behavior** [1] - 7:21
**behind** [2] - 10:4, 19:2
**best** [2] - 10:15
**bit** [2] - 3:6, 6:3
**blanket** [1] - 4:20
**bleeding** [1] - 16:25
**Booking** [1] - 4:1
**briefing** [3] - 18:22, 18:25, 19:20
**bright** [1] - 6:15
**bring** [2] - 11:8, 12:7
**bringing** [2] - 8:19, 10:2
**brought** [1] - 14:18
**brow** [1] - 11:24
**Budlow** [6] - 2:5, 5:16, 9:22, 16:8, 18:9, 19:6
**BUDLOW** [9] - 1:11, 2:2, 5:18, 11:25, 12:15, 12:17, 12:25, 14:25, 19:12
**Budlow's** [1] - 11:24
**burdens** [1] - 6:23
**busy** [1] - 13:21
**button** [5] - 10:25, 11:23, 12:14, 16:10,

17:5
**BY** [3] - 1:11, 1:15, 1:15

## C

**care** [1] - 3:20
**CASE** [1] - 1:4
**case** [16] - 2:20, 2:24, 3:10, 6:1, 6:14, 6:20, 7:21, 7:25, 8:5, 10:2, 12:6, 16:23, 18:13, 18:24, 19:7, 19:11
**caveat** [1] - 3:23
**cell** [3] - 4:16, 5:1, 5:22
**Central** [1] - 4:1
**certainly** [10] - 4:12, 6:6, 8:9, 8:22, 12:10, 16:7, 16:22, 19:5, 20:6, 20:11
**CERTIFICATE** [1] - 21:1
**Certified** [1] - 21:5
**certify** [1] - 21:8
**cetera** [1] - 20:8
**chambers** [1] - 19:19
**chance** [1] - 5:20
**change** [2] - 13:12, 16:2
**charge** [5] - 2:4, 7:8, 12:19, 12:22, 12:23
**charging** [2] - 2:14, 2:18
**Charles** [2] - 1:13, 1:16
**Chesapeake** [1] - 4:10
**chose** [1] - 3:12
**circumstance** [3] - 8:19, 12:8, 19:4
**circumstances** [8] - 5:9, 6:10, 7:20, 8:1, 10:7, 12:6, 19:10
**claims** [2] - 7:22, 9:7
**clean** [1] - 10:15
**clear** [3] - 9:15, 19:2, 20:3
**closing** [1] - 17:14
**closings** [2] - 10:1, 16:6
**colleague** [1] - 2:10
**COLLEEN** [1] - 1:12
**Colleen** [1] - 2:7
**coming** [4] - 11:20, 12:3, 15:13, 19:25
**comment** [1] - 14:7
**common** [1] - 13:18
**communicate** [1] - 5:12
**competency** [7] -

6:10, 7:18, 9:4, 11:15, 17:17, 19:8, 19:22
**complaint** [4] - 4:6, 4:12, 4:14, 13:3
**Complaint** [1] - 15:3
**complete** [1] - 20:18
**completely** [1] - 7:23
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**concerned** [4] - 8:4, 8:10, 8:11, 14:8
**conclude** [2] - 19:25, 20:1
**concluded** [2] - 5:6, 16:23
**concluding** [3] - 17:10, 17:11, 18:4
**conclusion** [1] - 9:14
**condition** [4] - 10:6, 10:19, 14:20, 15:19
**conduct** [7] - 7:17, 9:22, 11:11, 13:25, 15:11, 16:18
**Conference** [1] - 21:12
**conference** [6] - 2:4, 2:14, 2:15, 2:18, 12:20, 12:24
**CONFERENCE** [1] - 1:5
**conferred** [2] - 16:13, 17:6
**confident** [1] - 7:19
**confirm** [1] - 3:21
**confirmed** [1] - 3:13
**conflict** [5] - 5:14, 5:24, 9:7, 17:18, 17:22, 18:6
**conflict-free** [2] - 17:18, 18:6
**conformance** [1] - 21:11
**conscious** [1] - 15:2
**consider** [1] - 5:21
**consideration** [1] - 17:4
**considered** [2] - 6:5, 6:24
**considering** [4] - 6:24, 10:3, 10:4, 10:5
**consistent** [1] - 19:6
**consult** [2] - 10:25, 12:14
**consulting** [1] - 12:21
**contact** [2] - 12:9, 19:19
**contacted** [2] - 2:16
**contained** [1] - 4:8

**contemplating** [1] - 18:23
**continuation** [1] - 2:5
**continue** [1] - 14:1
**continued** [2] - 5:13, 6:12
**continues** [1] - 15:15
**control** [1] - 15:20
**convey** [1] - 2:23
**convicted** [2] - 9:16, 12:3
**conviction** [1] - 10:16
**convictions** [2] - 20:7, 20:12
**copy** [4] - 2:13, 3:3, 3:5, 3:6
**Corn** [3] - 1:19, 10:1, 20:1
**correct** [2] - 20:9, 21:9
**correctional** [2] - 4:3, 4:5
**correspondence** [2] - 3:2, 12:10
**Counsel** [2] - 16:13, 17:6
**counsel** [17] - 2:6, 2:21, 3:3, 3:6, 5:22, 6:25, 8:10, 8:22, 10:5, 17:18, 18:6, 18:12, 18:24, 19:9, 19:11, 19:18
**counsel's** [1] - 9:6
**country** [2] - 8:8, 16:5
**couple** [1] - 11:23
**course** [7] - 4:23, 5:1, 6:3, 6:12, 17:19, 18:24, 20:14
**COURT** [22] - 1:1, 2:8, 2:12, 5:16, 6:2, 11:5, 11:7, 12:1, 12:16, 12:22, 14:23, 16:3, 16:14, 17:7, 17:11, 18:1, 18:8, 18:17, 19:4, 19:14, 20:15, 21:18
**court** [10] - 3:12, 4:7, 6:15, 6:22, 7:2, 9:1, 10:13, 14:14, 14:17, 15:12
**Court** [13] - 6:7, 13:2, 13:5, 13:10, 13:12, 13:14, 13:17, 13:21, 14:8, 14:22, 15:5, 17:15, 21:7
**Court's** [1] - 6:19
**COURTNEY** [1] - 1:15
**Courtney** [1] - 2:9
**covered** [1] - 4:19
**created** [1] - 5:25
**crisis** [2] - 8:13, 8:21

**cross** [3] - 16:25, 20:2, 20:8
**cross-examination** [1] - 20:2
**cross-examine** [1] - 20:8
**crosses** [1] - 7:14
**CRR** [1] - 21:18
**curia** [1] - 19:15
**current** [3] - 2:23, 10:4, 19:11
**custody** [1] - 14:17
**cut** [1] - 12:23

**D**

**date** [1] - 7:19
**Dated** [1] - 21:14
**days** [3] - 10:22, 16:15
**death** [1] - 15:20
**decision** [1] - 13:1
**defendant** [10] - 3:4, 5:25, 6:9, 6:16, 13:6, 13:16, 14:9, 14:11, 20:4, 20:7
**Defendant** [1] - 1:5
**DEFENDANT** [1] - 1:14
**defendant's** [2] - 6:9, 13:25
**defendants** [2] - 14:15, 14:16
**Defender** [1] - 1:16
**Defender's** [2] - 9:18, 9:24
**defense** [3] - 5:22, 19:9, 20:3
**delay** [5] - 5:25, 7:22, 9:9, 15:23, 18:10
**deliberations** [1] - 17:15
**deny** [1] - 19:16
**designated** [1] - 2:18
**designed** [3] - 7:22, 7:24, 9:9
**desire** [1] - 5:11
**detail** [2] - 3:7, 7:12
**Detention** [1] - 4:10
**determine** [2] - 6:16, 6:25, 8:16
**determining** [1] - 7:18
**diabetic** [1] - 8:17
**diagnosis** [1] - 10:20
**dictating** [1] - 12:6
**different** [1] - 14:19
**difficulty** [1] - 6:19
**digest** [1] - 5:20
**director** [1] - 16:17
**dissatisfied** [1] - 17:22

**District** [2] - 21:7
**DISTRICT** [3] - 1:1, 1:1, 1:7
**DIVISION** [1] - 1:2
**doctor** [1] - 11:17
**document** [1] - 3:18
**door** [3] - 4:17, 5:1, 20:5
**down** [1] - 3:3
**drag** [1] - 14:14
**dragging** [1] - 14:3
**during** [5] - 4:10, 14:22, 17:19, 18:6, 20:13

**E**

**earphones** [1] - 14:20
**efforts** [2] - 3:24, 7:11
**either** [2] - 9:13, 9:21
**email** [7] - 3:2, 4:8, 12:9, 14:7, 14:25, 15:1, 15:17
**end** [2] - 9:12, 12:6
**engage** [2] - 4:21, 7:15
**engaged** [1] - 10:10
**enormous** [3] - 6:23, 10:9
**ensure** [1] - 18:25
**entertain** [1] - 20:2
**entitled** [1] - 21:10
**environment** [1] - 7:4
**episode** [1] - 13:17
**escorted** [2] - 4:3, 7:1
**ESQUIRE** [4] - 1:11, 1:12, 1:15, 1:15
**et** [1] - 20:8
**evaluate** [1] - 11:18
**evaluation** [2] - 11:19, 19:22
**evaluations** [1] - 9:22
**event** [5] - 10:16, 12:3, 16:23, 19:9, 19:17
**events** [1] - 10:13
**evidence** [5] - 13:8, 15:8, 15:18, 17:16, 20:13
**exacerbate** [1] - 8:20
**exam** [1] - 9:4
**examination** [4] - 7:17, 16:18, 17:3, 20:2
**examine** [1] - 20:8
**EXCERPT** [1] - 1:4
**excerpt** [1] - 20:18
**exist** [1] - 5:22
**exists** [1] - 5:14
**expedited** [2] - 7:17, 9:3

**expended** [1] - 6:19
**experience** [1] - 15:20
**explore** [1] - 19:20
**expressed** [1] - 4:25
**extremely** [2] - 10:11
**eyes** [1] - 4:22

**F**

**face** [2] - 13:8, 15:10
**Facility** [1] - 4:10
**facility** [3] - 7:10, 7:16, 16:18
**fact** [4] - 15:4, 15:18, 19:16, 20:6
**fairly** [1] - 11:18
**far** [1] - 8:4
**FBI** [1] - 1:19
**fear** [2] - 4:25, 5:12
**Federal** [1] - 1:16
**FEDERAL** [1] - 21:18
**feigning** [1] - 8:20
**filed** [2] - 4:5, 13:3
**final** [2] - 9:13, 13:1
**findings** [1] - 18:13
**finish** [1] - 10:1
**finished** [1] - 5:5
**finishing** [1] - 17:13
**first** [7] - 2:15, 5:18, 8:12, 11:8, 12:18, 13:2, 16:24
**five** [1] - 12:13
**floating** [1] - 9:14
**Floor** [2] - 1:13, 1:16
**flying** [1] - 8:7
**folks** [1] - 11:15
**following** [1] - 3:9
**FOR** [3] - 1:1, 1:11, 1:14
**force** [1] - 8:19
**foregoing** [1] - 21:8
**form** [1] - 9:10
**formally** [1] - 5:14
**format** [1] - 21:11
**forth** [2] - 12:4, 19:23
**forward** [1] - 15:8
**fourth** [1] - 12:18
**frame** [1] - 10:2
**FRANCIK** [10] - 1:15, 2:9, 3:25, 16:12, 17:8, 17:13, 18:3, 18:15, 18:19, 20:10
**Francik** [7] - 2:10, 3:1, 3:23, 16:11, 17:7, 18:17, 20:4
**free** [2] - 17:18, 18:6
**fresh** [1] - 13:23
**Friday** [5] - 11:20, 13:20, 16:8, 16:9,

16:18
**fully** [1] - 14:20
**fulsome** [1] - 19:1
**furrowed** [1] - 11:24

**G**

**GARY** [1] - 1:4
**Gary** [2] - 2:3, 2:10
**genuine** [1] - 17:21
**genuinely** [1] - 17:22
**GEORGE** [1] - 1:7
**given** [4] - 6:17, 7:19, 13:20, 19:11
**GLR** [2] - 1:4, 2:3
**Government** [5] - 2:6, 6:19, 8:6, 16:25, 20:2
**Government's** [2] - 13:13, 19:7
**grant** [1] - 19:17

**H**

**halfway** [1] - 11:13
**hand** [1] - 4:22
**handle** [3] - 9:12, 16:9, 19:8
**handling** [1] - 8:23
**health** [2] - 4:3, 7:17
**hear** [7] - 3:1, 3:23, 8:9, 8:22, 14:21, 15:8
**heard** [5] - 5:19, 5:20, 12:15, 13:3, 14:4
**hearing** [8] - 6:16, 9:22, 13:4, 13:5, 13:18, 17:17, 18:22, 19:21
**hearings** [1] - 18:2
**heavy** [2] - 10:11
**held** [2] - 4:22, 21:10
**help** [2] - 5:2, 18:24
**hereby** [1] - 21:7
**Hicks** [2] - 3:2, 12:10
**himself** [1] - 4:20
**historical** [1] - 13:15
**history** [1] - 7:21
**hmm** [1] - 18:8
**hold** [2] - 6:16, 19:14
**home** [1] - 11:16
**Honor** [20] - 2:4, 2:9, 3:25, 4:13, 4:24, 5:7, 5:13, 11:3, 11:25, 12:15, 16:12, 17:8, 17:21, 18:3, 18:16, 18:19, 18:21, 20:10
**HONORABLE** [1] - 1:7
**hopefully** [1] - 16:19
**horrific** [1] - 10:14

**hours** [1] - 6:4
**housed** [2] - 7:11, 10:7
**huge** [1] - 14:1
**hurting** [1] - 5:3

# I

**ideal** [1] - 8:19
**identities** [2] - 7:2, 18:12
**identity** [1] - 19:20
**II** [1] - 1:16
**III** [1] - 1:7
**IMHU** [2] - 4:4, 4:16
**importantly** [2] - 15:4, 15:25
**impression** [1] - 17:21
**IN** [1] - 1:1
**inclined** [2] - 8:22, 9:10
**include** [1] - 3:13
**including** [2] - 7:20, 8:24
**inconvenience** [3] - 6:22, 8:6, 14:2
**indeed** [2] - 8:20, 19:10
**indicated** [2] - 3:7, 11:4
**indicating** [1] - 3:4
**individuals** [2] - 3:20, 18:12
**information** [2] - 2:23, 14:6
**informed** [2] - 5:10, 18:20
**initiate** [1] - 7:15
**inmate** [1] - 4:2
**inquiry** [1] - 13:14
**inside** [2] - 4:16, 14:23
**institutional** [1] - 4:6
**instructions** [3] - 2:13, 2:19, 20:16
**insulin** [1] - 3:14
**intended** [1] - 12:23
**intentional** [1] - 13:25
**interest** [2] - 5:14, 5:24
**issue** [3] - 6:14, 17:17, 20:12
**issued** [1] - 4:20
**issues** [4] - 9:17, 17:23, 18:22, 19:8

# J

**jail** [2] - 4:19, 4:20
**jail-issued** [1] - 4:20
**January** [1] - 21:14

**jeopardy** [1] - 8:14
**Jill** [1] - 3:5
**joined** [1] - 2:10
**joining** [1] - 2:6
**JONES** [1] - 1:4
**Jones** [29] - 2:3, 2:10, 2:22, 3:22, 4:2, 4:5, 4:15, 4:16, 4:21, 4:24, 7:1, 7:4, 7:9, 7:21, 8:10, 8:23, 9:2, 9:7, 9:16, 10:5, 10:6, 12:8, 12:11, 17:19, 17:22, 17:25, 18:5, 20:11
**Jones'** [7] - 3:20, 5:15, 6:13, 7:12, 10:21, 18:24
**Judge** [1] - 13:18
**JUDGE** [1] - 1:7
**Judicial** [1] - 21:12
**jury** [12] - 2:5, 2:17, 8:3, 9:21, 10:3, 11:9, 11:10, 11:14, 13:22, 14:3, 17:14, 19:25

# K

**KATHERINE** [1] - 1:15
**Katherine** [1] - 2:11
**knowing** [1] - 6:13
**known** [1] - 5:21
**knows** [3] - 14:12, 15:2, 15:3

# L

**lack** [2] - 6:8, 7:6
**last** [1] - 4:7
**late** [1] - 16:23
**law** [2] - 6:14, 12:6
**lawyer** [1] - 3:8
**learned** [2] - 4:4, 7:20
**least** [4] - 2:20, 8:2, 12:7, 12:8
**left** [2] - 2:15, 5:6
**legal** [2] - 4:10, 6:9
**legitimate** [1] - 15:19
**LEVI** [1] - 1:7
**limited** [1] - 17:2
**line** [2] - 5:5, 6:15
**lines** [1] - 3:17
**listening** [1] - 20:5
**literally** [1] - 5:19
**locations** [1] - 8:7
**lockup** [1] - 14:24
**look** [1] - 14:25
**looks** [1] - 8:5
**loudly** [1] - 4:25
**ludicrous** [1] - 9:8

# M

**Maddox's** [1] - 13:18
**mandatory** [1] - 13:6
**manipulate** [1] - 15:5
**manipulating** [1] - 13:19
**marshal** [3] - 3:21, 8:15, 8:18
**marshall** [1] - 18:11
**marshals** [5] - 6:25, 8:25, 10:18, 14:13
**Marshals** [1] - 7:8
**MARYLAND** [2] - 1:1, 1:8
**Maryland** [3] - 1:13, 1:17, 21:7
**Matt** [1] - 3:2
**matter** [2] - 2:3, 21:10
**maze** [1] - 3:8
**McGuinn** [2] - 1:12, 2:7
**mean** [3] - 5:18, 12:23, 19:12
**means** [1] - 3:16
**Mechanical** [1] - 1:24
**medical** [10] - 7:2, 7:10, 7:16, 8:13, 8:21, 10:6, 10:19, 14:19, 15:19, 16:18
**medication** [9] - 3:4, 3:13, 7:3, 7:12, 8:17, 10:22, 14:9, 14:13, 15:22
**medicine** [4] - 8:12, 8:13, 8:15, 15:4
**meds** [3] - 3:14, 15:1, 15:14
**meeting** [1] - 18:9
**Memorandum** [1] - 3:17
**memorializing** [1] - 3:18
**mental** [2] - 4:2, 7:17
**Merit** [1] - 21:6
**merit** [2] - 7:23, 19:10
**meriting** [1] - 8:1
**mind** [1] - 10:17
**minds** [1] - 18:9
**minimum** [1] - 13:6
**minutes** [2] - 12:13
**mirrors** [1] - 4:7
**moment** [2] - 18:15, 20:10
**Monday** [3] - 4:7, 11:20, 16:19
**MOR** [1] - 3:15
**morning** [2] - 4:2, 15:14

**motion** [1] - 20:3
**move** [1] - 5:14
**moved** [1] - 5:4
**movement** [1] - 6:7
**MR** [8] - 2:2, 5:18, 11:25, 12:15, 12:17, 12:25, 14:25, 19:12
**MS** [11] - 2:9, 3:25, 11:3, 11:6, 16:12, 17:8, 17:13, 18:3, 18:15, 18:19, 20:10

# N

**NADINE** [1] - 21:18
**Nadine** [1] - 21:5
**namely** [1] - 3:7
**names** [4] - 3:19, 6:25, 7:2, 10:18
**near** [1] - 15:20
**near-death** [1] - 15:20
**necessarily** [1] - 4:14
**need** [7] - 4:13, 9:15, 11:16, 12:7, 13:1, 13:10, 13:24
**needs** [4] - 6:15, 8:16, 8:17, 19:23
**new** [8] - 13:3, 13:4, 17:18, 18:6, 18:12, 19:10, 19:18
**Newberger** [10] - 2:11, 2:12, 4:1, 4:6, 4:9, 4:17, 4:22, 11:2, 11:22, 16:10
**NEWBERGER** [3] - 1:15, 11:3, 11:6
**next** [1] - 13:22
**nicely** [1] - 14:15
**night** [3] - 15:1, 15:4, 15:22
**noise** [5] - 10:25, 11:23, 12:14, 16:10, 17:5
**noon** [1] - 11:14
**NORTHERN** [1] - 1:2
**nothing** [2] - 13:3, 14:4
**number** [1] - 17:23
**NUMBER** [1] - 1:4
**numerous** [1] - 6:21
**nurse** [1] - 3:12
**nursing** [1] - 8:24

# O

**observations** [4] - 7:13, 9:1, 10:20, 13:18
**observe** [1] - 7:4
**observed** [1] - 10:23

**obviously** [1] - 17:3
**OF** [6] - 1:1, 1:3, 1:4, 1:6, 1:12, 21:1
**office** [1] - 4:11
**OFFICE** [1] - 1:12
**Office** [5] - 1:16, 9:18, 9:24, 10:10, 15:9
**officer** [1] - 4:3
**officers** [1] - 3:11
**OFFICIAL** [2] - 21:1, 21:18
**officials** [1] - 7:2
**old** [1] - 15:17
**once** [1] - 6:25
**one** [10] - 7:4, 8:5, 10:25, 15:6, 16:14, 16:15, 18:15, 20:10
**one-on-one** [1] - 7:4
**ongoing** [1] - 5:11
**open** [1] - 4:7
**opportunity** [7] - 2:19, 2:21, 7:4, 9:23, 10:24, 12:20, 18:11
**option** [6] - 11:6, 11:7, 11:8, 11:13, 15:12
**options** [2] - 11:4, 11:23
**order** [5] - 6:8, 8:10, 9:3, 11:15, 16:17
**ordered** [2] - 20:18
**out-of-town** [1] - 6:21
**outset** [1] - 7:25
**overseeing** [1] - 3:20

# P

**p.m** [1] - 3:14
**page** [1] - 21:11
**pane** [1] - 5:2
**part** [2] - 7:24, 18:20
**particular** [1] - 2:21
**past** [1] - 6:4
**pattern** [1] - 15:16
**PAUL** [1] - 1:11
**Paul** [1] - 2:5
**people** [1] - 10:18
**periphery** [1] - 5:4
**persons** [1] - 10:19
**phones** [1] - 5:22
**place** [1] - 18:5
**Plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:11
**plan** [1] - 14:4
**planned** [1] - 5:23
**Plexiglass** [3] - 4:18, 5:2, 5:4
**plus** [1] - 8:20
**point** [8] - 5:7, 8:2, 9:5, 13:14, 13:15,

16:8, 17:8, 19:15
**portion** [2] - 14:22, 20:17
**position** [4] - 4:15, 17:9, 19:7
**possibility** [2] - 11:19, 18:21
**possible** [2] - 4:13, 19:1
**post** [1] - 18:22
**post-hearing** [1] - 18:22
**postponement** [4] - 7:25, 8:2, 13:7, 15:7
**posture** [1] - 19:11
**potentially** [3] - 6:20, 17:24, 20:8
**prejudice** [1] - 19:16
**prepared** [1] - 3:15
**presence** [2] - 4:25, 14:10
**Present** [1] - 1:18
**present** [2] - 3:10, 14:21
**presented** [2] - 9:24, 17:16
**presenting** [1] - 11:22
**presently** [1] - 4:11
**presumably** [1] - 18:6
**pretest** [1] - 8:16
**previous** [1] - 18:2
**previously** [1] - 12:12
**primarily** [1] - 7:22
**privately** [2] - 16:13, 17:6
**privy** [1] - 18:1
**proceed** [2] - 12:19, 20:16
**proceeding** [5] - 3:10, 13:24, 17:20, 18:5, 18:7
**proceedings** [3] - 9:9, 18:10, 21:10
**PROCEEDINGS** [2] - 1:4, 1:6
**Proceedings** [1] - 1:24
**process** [4] - 4:11, 7:7, 16:21, 19:2
**Produced** [1] - 1:24
**professed** [1] - 5:12
**professionals** [2] - 8:23, 12:7
**promised** [1] - 10:3
**proposal** [4] - 6:24, 9:14, 17:9, 18:20
**propose** [3] - 17:10, 17:11, 18:4
**proposed** [1] - 2:13
**provide** [2] - 17:18,

18:11
**psychiatrist** [1] - 7:16
**psychologist** [1] - 7:16
**Public** [3] - 1:16, 9:18, 9:24
**purpose** [1] - 6:21
**purposes** [3] - 2:14, 7:18, 20:17
**pursuant** [1] - 21:8
**put** [4] - 4:14, 8:14, 10:17, 10:25, 11:23, 12:14, 16:10, 17:5, 17:24, 18:19, 19:23
**putting** [1] - 9:14

**Q**

**questioning** [1] - 6:9
**quick** [1] - 16:14
**quickly** [1] - 11:18
**quite** [1] - 6:3

**R**

**Rachel** [1] - 1:19
**reach** [2] - 9:4, 11:8
**reached** [1] - 3:19
**reaches** [1] - 9:2
**reaching** [1] - 6:4
**ready** [1] - 20:16
**really** [3] - 14:4, 15:22, 15:23
**Realtime** [1] - 21:5
**reason** [1] - 8:11
**reasonable** [8] - 6:5, 6:8, 6:17, 7:6, 7:15, 9:3, 16:17, 19:22
**Reasons** [1] - 3:17
**reasons** [1] - 16:15
**receive** [2] - 2:13, 3:2
**recognize** [2] - 10:9, 12:1
**reconvene** [1] - 16:9
**record** [6] - 9:15, 10:15, 12:3, 13:11, 13:13, 18:19
**Recorded** [1] - 1:24
**refusal** [3] - 5:12, 7:12, 8:12
**refuse** [1] - 14:9
**refused** [2] - 3:4, 3:5
**regarding** [8] - 3:24, 7:12, 10:5, 10:13, 10:21, 10:22, 18:21, 19:15
**Registered** [1] - 21:6
**regulations** [1] - 21:11
**related** [6] - 2:23, 6:14, 7:13, 9:1, 12:5,

19:8
**relationship** [1] - 17:25
**relevant** [1] - 19:20
**remain** [1] - 20:6
**remainder** [1] - 17:13
**remained** [1] - 4:16
**remains** [2] - 4:2, 4:18
**remember** [1] - 14:21
**remotely** [1] - 13:4
**renew** [1] - 19:17
**repeatedly** [2] - 4:24, 5:2
**report** [3] - 11:10, 11:20, 16:19
**reported** [1] - 21:9
**REPORTER** [2] - 21:1, 21:18
**Reporter** [2] - 21:5, 21:6
**representation** [4] - 5:11, 9:11, 17:19, 17:23
**representative** [4] - 3:21, 7:10, 8:24
**represented** [2] - 10:6, 18:6
**request** [5] - 7:1, 9:6, 10:17, 19:15, 19:18
**requested** [1] - 3:7
**Requested** [1] - 20:17
**requests** [1] - 3:21
**require** [3] - 6:8, 7:15, 19:10
**rescheduled** [1] - 6:20
**research** [1] - 5:20
**resources** [2] - 6:18, 10:12
**respond** [2] - 4:13, 5:7
**response** [4] - 5:16, 5:17, 5:21, 6:1
**responses** [1] - 3:22
**rest** [1] - 20:2
**result** [1] - 9:7
**retreading** [1] - 15:16
**review** [4] - 2:19, 10:16, 12:4, 20:16
**reviewed** [1] - 6:14
**ridiculous** [1] - 9:11
**rights** [1] - 20:9
**risk** [1] - 15:20
**RMR** [1] - 21:18
**Rocky** [1] - 2:3
**ROCKY** [1] - 1:4
**room** [1] - 11:10
**ruled** [1] - 13:5
**ruling** [1] - 7:19
**running** [2] - 10:4, 14:2

**RUSSELL** [1] - 1:7

**S**

**saw** [1] - 13:8
**schedule** [6] - 6:20, 8:4, 14:2, 16:2, 19:19, 19:20
**scheduled** [4] - 2:3, 17:10, 17:12, 18:4
**scheduling** [2] - 16:22, 19:13
**second** [3] - 11:6, 11:7
**secure** [1] - 17:15
**see** [4] - 7:14, 11:17, 11:23, 13:24
**send** [2] - 3:3, 11:16
**sense** [3] - 13:15, 13:18, 13:23
**separated** [1] - 5:1
**September** [4] - 1:8, 5:10, 12:11, 12:12
**serious** [1] - 15:19
**service** [2] - 8:15, 8:18
**set** [3] - 12:4, 16:2, 19:19
**sexually** [2] - 4:9, 15:15
**shock** [1] - 12:17
**short** [1] - 12:19
**short-term** [1] - 12:19
**shortly** [1] - 3:16
**show** [1] - 15:17
**showed** [1] - 13:7
**showing** [1] - 15:10
**sick** [1] - 15:23
**sight** [1] - 5:5
**silent** [1] - 20:6
**singular** [1] - 8:5
**sit** [2] - 11:18, 15:18
**sitting** [1] - 2:17
**situation** [1] - 19:1
**skip** [1] - 14:16
**so-to-speak** [1] - 18:9
**solicited** [1] - 7:9
**someone** [1] - 9:19
**sometime** [1] - 16:8
**sometimes** [1] - 3:14
**soon** [1] - 5:6
**sooner** [1] - 5:21
**sorry** [3] - 11:25, 15:16, 17:11
**sort** [9] - 2:15, 6:4, 7:10, 7:19, 10:6, 12:19, 12:21, 15:16, 19:2
**souls** [1] - 10:13
**sounds** [1] - 3:18
**speaking** [1] - 4:24

**Special** [1] - 1:19
**specifically** [1] - 20:12
**staff** [1] - 4:5
**stand** [1] - 6:1
**start** [1] - 7:7
**started** [2] - 16:19, 16:24
**state** [1] - 10:4
**statements** [4] - 6:6, 10:21, 10:22, 17:14
**States** [4] - 2:2, 2:7, 21:6, 21:12
**STATES** [4] - 1:1, 1:3, 1:7, 1:12
**status** [1] - 2:15
**STATUS** [1] - 1:5
**stenographically** [1] - 21:9
**stenographically-reported** [1] - 21:9
**Stenography** [1] - 1:24
**still** [1] - 10:2
**Street** [2] - 1:13, 1:16
**sub** [1] - 19:15
**sub-curia** [1] - 19:15
**subject** [4] - 8:13, 13:6, 17:3, 18:2
**substantially** [1] - 16:25
**suffered** [1] - 20:7
**sufficient** [1] - 13:13
**suggested** [1] - 13:15
**suggesting** [2] - 9:4, 16:20
**suggestion** [3] - 12:18, 18:20, 19:3
**suicide** [2] - 4:19, 15:2
**system** [3] - 13:19, 15:3, 15:6

**T**

**table** [1] - 2:6
**TANG** [1] - 1:15
**Tang** [2] - 2:11
**term** [1] - 12:19
**terminate** [1] - 5:11
**test** [1] - 6:15
**testify** [3] - 4:23, 20:6, 20:11
**testifying** [1] - 10:19
**testimony** [10] - 7:8, 9:2, 11:14, 13:20, 16:6, 16:16, 17:2, 17:14, 20:1
**THE** [26] - 1:1, 1:1, 1:7, 1:11, 1:12, 1:14, 2:8, 2:12, 5:16, 6:2, 11:5, 11:7, 12:1,

12:16, 12:22, 14:23, 16:3, 16:14, 17:7, 17:11, 18:1, 18:8, 18:17, 19:4, 19:14, 20:15

**themselves** [1] - 6:22
**they've** [3] - 7:13, 10:20, 10:23
**thinking** [2] - 9:20, 13:2
**thinks** [1] - 15:12
**third** [1] - 12:18
**threshold** [4] - 6:5, 7:14, 9:2, 16:20
**throw** [2] - 14:14, 16:21
**Thursday** [9] - 9:21, 11:8, 11:18, 16:15, 16:16, 16:23, 16:24, 17:1, 17:2
**timeline** [1] - 8:4
**today** [10] - 2:18, 3:12, 3:15, 4:9, 5:19, 6:6, 6:7, 11:9, 13:3, 14:17
**together** [1] - 18:11
**tomorrow** [5] - 9:1, 11:10, 11:11, 14:9, 19:25
**totality** [1] - 7:20
**Tower** [1] - 1:16
**town** [1] - 6:21
**transcript** [3] - 20:17, 21:9, 21:11
**Transcript** [1] - 1:24
**TRANSCRIPT** [1] - 1:6
**Transcription** [1] - 1:24
**transpired** [1] - 5:10
**transport** [1] - 8:25
**transportation** [2] - 7:9, 10:21
**transported** [1] - 3:5
**trial** [20] - 2:5, 2:17, 2:23, 4:23, 6:11, 6:12, 6:18, 6:21, 12:12, 13:12, 13:25, 15:7, 16:1, 17:10, 17:11, 17:14, 18:4, 20:14
**true** [1] - 21:9
**trying** [1] - 15:5
**Tuesday** [5] - 1:8, 9:25, 11:10, 11:21, 16:7
**two** [7] - 3:11, 9:12, 11:4, 12:13, 13:11, 15:6, 15:8

## U

**U.S** [3] - 7:8, 10:10, 15:9
**U.S.C** [1] - 21:8
**unartful** [1] - 11:22
**unaware** [1] - 4:11
**under** [3] - 10:2, 10:3, 12:6
**undoubtedly** [1] - 9:16
**uniform** [1] - 4:19
**unique** [1] - 19:4
**unit** [2] - 4:3, 4:4
**United** [4] - 2:2, 2:6, 21:6, 21:12
**UNITED** [4] - 1:1, 1:3, 1:7, 1:12
**unnecessarily** [1] - 14:3
**up** [8] - 6:5, 6:6, 6:7, 10:1, 12:3, 12:6, 13:9, 19:19
**utterly** [1] - 7:23

## V

**van** [1] - 14:14
**various** [1] - 8:7
**verdict** [2] - 18:13, 19:8
**vetted** [1] - 9:17
**victims** [3] - 6:22, 8:7, 10:12
**video** [2] - 13:8, 15:10
**view** [1] - 13:13
**visit** [1] - 4:2
**visits** [1] - 4:10
**voluntary** [1] - 6:13

## W

**waived** [1] - 14:10
**wants** [1] - 15:7
**watch** [1] - 4:19
**watched** [1] - 15:10
**ways** [1] - 9:12
**wearing** [1] - 4:19
**Wednesday** [1] - 10:1
**week** [1] - 13:22
**weeks** [1] - 13:11
**weighs** [1] - 10:11
**wholly** [1] - 5:25
**willing** [1] - 8:9
**window** [2] - 4:18, 5:4
**wise** [1] - 19:13
**withdraw** [4] - 5:15, 5:23, 7:5, 9:6
**withdrawal** [2] - 9:10, 19:15

**witness** [1] - 8:5
**witnesses** [5] - 6:21, 13:11, 17:16, 18:11, 19:21
**woman** [1] - 3:9
**words** [1] - 13:16

## Y

**yesterday** [2] - 2:16, 18:21
**yourselves** [1] - 12:14

## §

**§** [1] - 21:8